UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WESTERN DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF THE DEAF, WESTERN MASSACHUSETTS ASSOCIATION OF THE DEAF AND HEARING IMPAIRED AND LEE NETTLES,<br><br>               Plaintiffs,<br><br>    v.<br><br>NETFLIX, INC., a corporation,<br>               Defendant. | CIVIL ACTION NO. 11-30168-MAP<br><br>FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF<br><br>**LEAVE TO FILE GRANTED ON JULY 8, 2011** |

## INTRODUCTION

1. The National Association of the Deaf ("NAD"), the Western Massachusetts Association of the Deaf and Hearing Impaired ("WMAD/HI"), and Lee Nettles bring this action against Defendant Netflix, Inc. ("Netflix") for its failure to provide equal access to the fastest growing entertainment venue in the country, the Netflix streaming website. With over 60% of the industry market share, Netflix is the leading provider of streamed television and movies on the Internet through its on-demand service, known as "Watch Instantly." Plaintiffs allege that Netflix has failed to provide equal access to its Watch Instantly service by refusing to make available closed captioned text for the deaf and hard of hearing—a feature that is necessary for such individuals to understand the audio portion of the streamed video.

2. Netflix's Watch Instantly streaming titles are available with the click of a mouse or remote control and are played through the Internet on one's computer or on television through a Netflix-ready device, including game consoles (e.g., the PlayStation®3 System, Wii Console,

and Xbox 360), Blu-Ray players, and the TiVo Digital Video Recorder ("DVR"). Unlimited access to Netflix's Watch Instantly service is available to the general public for just $7.99 per month.

3. Netflix's Watch Instantly site was recently named the "biggest source of Internet traffic in the US" according to the 2011 Sandvine Global Internet Phenomena Report. Sandvine also reports that streaming of video and audio now accounts for nearly 50 percent of peak time traffic in the U.S., with Netflix alone accounting for nearly 30 percent of peak time traffic.

4. Approximately 36 million Americans are deaf or hard of hearing. Many of these individuals require captioning to meaningfully access the audio component of television and video content. Just as buildings without ramps bar people who use wheelchairs, video content without captions excludes deaf and hard of hearing individuals. Closed captioning is a viewer activated system that displays text on, for instance, television programming, or DVD movies. This is different from open captioning or subtitles, which are burned into the video file and automatically displayed for everyone to see, such as subtitles in foreign language movies. With closed captioning, deaf and hard of hearing individuals have the opportunity to enjoy movies and television shows by reading the captioned text. With closed captioning, these individuals can also watch videos with hearing family members and friends.

5. Despite repeated requests by NAD and members of the deaf and hard of hearing community to Netflix to provide closed captioning on its Watch Instantly content, Netflix has provided captions on only a small portion of the overall titles available on the Watch Instantly service. The advent of streaming offers an opportunity for people to have access to thousands of movies and television shows at any time in their homes. That is why Netflix has over 20 million subscribers with the number growing every day. By not providing captioning, Netflix is closing

deaf and hard of hearing individuals out of this opportunity, increasing the sense of isolation and stigma that the Americans with Disabilities Act ("ADA") was meant to redress for individuals with disabilities.

6. The failure of Netflix to provide equal access to millions of deaf and hard of hearing individuals violates the mandate of the ADA to provide "full and equal enjoyment" of a public accommodation's goods, services, facilities, and privileges.  Places of public accommodation include, "place[s] of exhibition and entertainment," "place[s] of recreation," "sales or rental establishment[s]," and "service establishments." 28 C.F.R. § 36.201(a); 42 U.S.C. §12181(7).  Because the Netflix Watch Instantly website is a "place of public accommodation," denial of equal access to the movies and TV shows available to hearing customers violates the ADA.  Remedying that violation is critical to the ADA's goal of providing people with disabilities the same access that others take for granted.  Accordingly, Plaintiffs seek injunctive and declaratory relief to ensure that deaf and hard of hearing individuals have equal access to Netflix's Watch Instantly subscription packages.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8. Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because Defendant operates its nationwide streaming business on the Internet in this District, and has sufficient contacts to be subject to personal jurisdiction in this District.  A substantial part of the acts or omissions giving rise to Plaintiffs' claims has occurred in this District.

9.      Assignment to the Western Division is appropriate pursuant to Rule 40.1(D)(1)(c) of the Local Rules of the United States District Court for the District of Massachusetts because the only parties residing in this District reside in the Western Division.

**PARTIES**

10.     Plaintiff National Association of the Deaf ("NAD") is the nation's premier civil rights organization of, by, and for deaf and hard of hearing individuals.  NAD is organized as a non-profit corporation under the laws of the State of Maryland and has its national headquarters in Silver Spring, Maryland.  NAD membership includes individuals and associations from all fifty states and Washington, D.C., including its affiliate, the Massachusetts State Association of the Deaf.  NAD is also the United States member of the World Federation of the Deaf, which has over 120 national associations of deaf people as members.

11.     Plaintiff Western Massachusetts Association of the Deaf and Hearing Impaired ("WMAD/HI") is organized as a non-profit organization under the laws of the Commonwealth of Massachusetts and is headquartered in Springfield, Massachusetts.  Its mission is to advocate for the rights of and to serve the needs of deaf and hard of hearing individuals in Western Massachusetts, including advocating for increased access to community life through the provision of sign language interpreters and captioning.  WMAD/HI provides lists of interpreters to community agencies, has filed complaints about the relay services in Massachusetts, and has advocated for real time captioning on local news.

12.     Plaintiff Lee Nettles is a deaf individual and a member of WMAD/HI and NAD. Mr. Nettles is the Director of Deaf and Hard of Hearing Independent Living Services at the Stavros Center for Independent Living in Springfield, Massachusetts.  He resides in Westfield, Massachusetts with his wife, Diane.  He has never subscribed to Netflix because of its failure to

provide full and equal access through closed captioning.  Without access to Netflix, Mr. Nettles must resort to purchasing on-demand movies from other services that are more expensive and are available only on a cost per movie basis, rather than paying $7.99 per month for unlimited viewing through Watch Instantly.  If Netflix provided equal access to its Watch Instantly streaming titles, Mr. Nettles would subscribe to Netflix.

13. Defendant Netflix is a corporation incorporated in Delaware, with its principal place of business in California.  As also described above, Netflix operates a nationwide streaming business that offers its subscribers in this District and elsewhere a number of subscription packages, including Watch Instantly, which provides on-demand streaming titles on the Internet.  Netflix also operates a DVD rental business that sends rented DVDs of television programming and movies through postal mail.

### NETFLIX FAILS TO PROVIDE MEANINGFUL ACCESS TO ITS WATCH INSTANTLY STREAMING TITLES FOR INDIVIDUALS WHO ARE DEAF AND HARD OF HEARING.

14. Netflix was recently described in a New York Times article as the "only major player in the online-only video subscription business."  According to a recent survey conducted by a leading market research company, as of March 2011, Netflix had 61% of the market share of digital video services.

15. Although it started out as a physical DVD rental company and continues to offer DVDs for rent, Netflix has shifted its focus to online streamed video content through its Watch Instantly service.  As Netflix's CEO, Reed Hastings, was recently quoted in a New York Times blog: "We are now *primarily* a streaming video company delivering a wide selection of TV shows and films over the Internet." (Emphasis added.)

5

16. Netflix offers a subscription plan that allows members to access unlimited Watch Instantly Internet streaming titles for $7.99 per month. The overwhelming majority of the content on Watch Instantly streaming titles is not captioned and is therefore inaccessible to Plaintiffs NAD and WMAD/HI and their members, including Mr. Nettles.

17. Netflix began offering streamed content on or about January 2008. In June 2009, Neil Hunt, the Chief Product Officer at Netflix, published an entry on the Netflix blog stating that there were technological challenges to providing captions, but that he "expect[ed] to deliver subtitles or captions to Silverlight clients sometime in 2010."

18. In April 2010, Mr. Hunt reported that: "Although it's a limited library of content with subtitles available – about 100 titles – we [Netflix] now have released the technology and we will be working to fill in the library over time."

19. On February 24, 2011, Mr. Hunt announced that Netflix had expanded its Watch Instantly inventory to include 3,500 television and movie titles "representing about 30% of viewing" and that Netflix expected to provide captions for 80% of "viewing coverage" by the end of 2011. In addition, Mr. Hunt provided a link to a log-in page for members providing a list of Netflix's streaming titles inventory with captions. As of June 14, 2011, this website listed just 1,684 streaming titles available with captions on Watch Instantly. Consumers cannot determine the exact percentage of captioned content based on Netflix's website. Moreover, those titles that are captioned are hard to locate because captioned films are not categorized in the same manner as non-captioned films. The Netflix site recommends movies based on previous usage, lists new movies, and has many other categories to address viewer preferences. None of these categories is available on the page listing Watch Instantly titles with captions. Therefore, a deaf or hard of hearing subscriber must open each movie icon in any given category to determine if captions are

available. Since captions are generally not available, this exercise is time consuming and ineffective.

20. Netflix admits that its goal is not to provide equal access to the movies and TV shows available on "Watch Instantly." Instead, its goal is to provide captioning only on a certain percentage of its streaming video "viewing" or "usage." Clearly this popularity-based measure does not provide deaf and hard of hearing people equal access to the goods, services and privileges that Netflix offers to others. Deaf and hard of hearing individuals have the same diversity of tastes and preferences as other Netflix subscribers and cannot be limited to viewing only the most popular shows.

21. The deaf and hard of hearing community has expressed its concern about Netflix's failure to provide closed captioning in a number of forums. A petition on the activist website, Change.org, entitled "Netflix: Make Films Accessible for the Deaf & Hard of Hearing," demands closed captioning on Netflix's Watch Instantly service. As of June 14, 2011, this petition had 1,054 signatures. Further, there are various Facebook groups dedicated to this topic, including: "Netflix Watch-Instantly Needs Closed Captions!" (2,708 members as of June 14, 2011) and "Netflix MUST HAVE subtitles on streamed movies" (478 members as of June 14, 2011). The Facebook page "Must Caption Netflix" received 1,334 "likes" (a showing of support) as of June 14, 2011.

22. Several web-logs ("blogs") have expressed dissatisfaction with Netflix's failure to provide closed captioning. On "Deaf World as Eye See It," Amy Cohen Efron highlighted the absurdity of Netflix's failure to caption "Through Deaf Eyes," a PBS documentary that explores 200 years of deaf life in America. On the "Deaf Politics" blog, Allison Polk encouraged other

deaf subscribers to abandon Netflix, stating: "We love the entertainment Netflix provides, but not at the expense of our consumer rights."

23. NAD has made numerous requests to Netflix that it provide closed captioning on Watch Instantly streamed content.

24. On September 9, 2009, NAD's former Director of Law and Policy, Rosaline Crawford, requested that Netflix provide a captioned version of the streaming title, The Wizard of Oz, which Netflix intended to make available for free to the general public in commemoration of the 70th anniversary of the movie's premier. The streaming title aired on October 3, 2009, and Netflix neither responded nor provided captions in time for the free screening.

25. On October 4, 2009, Catherine Fisher, Director of Communications at Netflix responded to NAD by stating: "Netflix frequently communicates its commitment to provide closed captioning for the TV episodes and movies you can watch instantly," but that "[i]t was not simple for Netflix to instantly stream the Wizard of Oz this past weekend, otherwise we would have done it. Netflix developers continue to work on closed captioning and we will keep the deaf and hard of hearing community apprised of the progress." Three days later, Ms. Fisher declined NAD's request to meet.

26. On October 5, 2009, NAD posted a response on its website stating that the process of captioning was both "technically possible and relatively simple to achieve. The television version and the DVD version of the film [the Wizard of Oz] have already been captioned. Captions can be programmed into the Microsoft Silverlight application that Netflix uses for its Watch Instantly feature. Captions have been included in videos, programming, and movies made available for viewing online."

27. On February 9, 2011, Plaintiffs' counsel also requested that Netflix provide closed captioning on streaming titles on an equal basis for deaf and hard of hearing individuals, but the demand was ultimately rejected.

**INDIVIDUAL AND ASSOCIATIONAL PLAINTIFFS' STANDING**

28. Paragraphs 1-27 are each re-alleged and incorporated as if fully set forth herein.

29. **NAD:** NAD has standing to sue as an association on behalf of its deaf and hard of hearing members, as Defendant's unlawful conduct interferes with NAD members' rights to have full and equal access to society, a core goal of NAD. First, as described further below, NAD members Alan Gifford, Kelby Brick, and James Johnson would have standing to sue as individuals because they are injured by Netflix's failure to provide captions on Watch Instantly and would subscribe to Netflix if Watch Instantly provided closed captions. Second, advocating on behalf of its members on this issue is germane to NAD's mission of advocating for its members' rights to full and equal access to society. Finally, none of NAD's members will be required to participate in this action because it is for declaratory and injunctive relief, and does not seek individualized remedies.

30. Alan Gifford is one example of a NAD member who is deaf and is injured by Netflix's failure to provide captions on Watch Instantly. Mr. Gifford is also president of NAD's Massachusetts affiliate, MSAD. Mr. Gifford and his wife, who is also deaf, are parents to two hearing children who live at home. Mr. and Ms. Gifford's two hearing teenage sons asked their parents to subscribe to Netflix Watch Instantly and stated that their friends at school have it. Mr. Gifford and his wife refused to subscribe to Netflix because it provides limited captioning. They believe that as parents it is their responsibility to monitor what their hearing children watch on television. Without captions, they lack that ability. Moreover, without captions they cannot

watch programming as a family. Netflix's failure to provide Mr. Gifford with equal access to its Watch Instantly service has caused him harm on the basis of his disability. Mr. Gifford, like many other NAD members, would subscribe to Netflix if Watch Instantly was fully accessible.

31. Kelby Brick, a deaf individual and a resident of Maryland, is another example of a NAD member who is injured by Netflix's failure to provide captions on Watch Instantly. Mr. Brick works as Vice President of Regulatory & Strategic Policy at Purple Communications—the nation's premier communication service tailored to people who are deaf or hard of hearing—and is also a board member of the American Association of People with Disabilities. He has repeatedly criticized Netflix on his Twitter account for its failure to provide closed captioning.

32. After learning from his father, friends, and colleagues that Netflix fails to provide captions on the vast majority of their streaming content, Mr. Brick opted not to subscribe to Netflix. Netflix's failure to provide equal access to its Watch Instantly service has caused him harm on the basis of his disability. Because he is unable to access Netflix, he has invested in buying a DVR for his home and purchased Slingbox hardware and software which has allowed him to watch movies and shows on television, save them on the DVR, and then stream them to his computer or mobile phone when he is away from home—a time at which he prefers to watch such content. Were Netflix's Watch Instantly service fully accessible to him, he would not have had to make these investments and would be able to access Netflix's full Watch Instantly library as hearing subscribers are able to do. In Mr. Brick's own words: "It is frustrating to be unable to access a popular service in society. Netflix's denial of accessible services for me isolates me from family, friends, and colleagues in conversations regarding the latest social trends and issues. This isolation stigmatizes me and causes me unnecessary frustration. As a result, I am forced to spend additional funds elsewhere just to be able to participate in society as an equal

member." However, if Netflix decided to provide equal access to its Watch Instantly content, Mr. Brick would subscribe.

33. James Johnson, who currently lives in Maryland, and is deaf, is another example of an NAD member harmed by Netflix's failure to provide closed captioning on its streaming titles. Mr. Johnson's wife and child are also deaf. Mr. Johnson and his family have joined Netflix twice based on representations that closed captioning would be made available, but have cancelled their subscriptions both times due to lack of closed captioning. The last time Mr. Johnson had a subscription to Netflix was in December 2010. Mr. Johnson would like fully equal access to Netflix's Watch Instantly titles—a privilege that hearing subscribers take for granted. Mr. Johnson loves watching movies with his family and Netflix's failure to provide him with equal access to its Watch Instantly service has caused him harm on the basis of his disability. If Netflix were to provide equal access to its Watch Instantly content, Mr. Johnson and many other NAD members would subscribe.

34. Expanding access to Netflix for deaf and hard of hearing individuals is not only germane, but is central, to NAD's purpose. NAD has strongly advocated for access through captioning of audio and audiovisual material in all distribution methods, including Internet streaming. NAD provides guidance about effective captioning on its website and administers the Described and Captioned Media Program (DCMP) through a cooperative agreement with the U.S. Department of Education. The DCMP promotes equal access to communication and learning through described and captioned educational media. The DCMP provides services designed to support and improve the academic achievement of students who are blind, visually impaired, deaf, hard of hearing, or deaf-blind. The DCMP has a library of over 4,000 titles of described and captioned educational media available for loan to teachers, parents, and students

who are deaf, blind, hard of hearing, visually impaired, or deaf-blind. The DCMP also offers a clearinghouse of information related to education and accessibility, including captioning, description, laws pertaining to accessibility, and assistive technology.

35. NAD has received many complaints about Netflix directly from deaf and hard of hearing individuals, including from its members, from all over the country. Examples of these comments include:

> "I am frustrated with Netflix for not having captioning. I have a hearing grandson who wants to watch these streamed programs, but it means my deaf daughter and deaf husband are discriminated against…not allowed to view the same program, given the lack of captions. . .I hope this is rectified quickly."

> "I'm a Netflix subscriber and am VERY disappointed in the selection of closed captioned movies I can download instantly. . .I feel like I have a very small selection as opposed to what they really have in their movie library. I'd like to see more movies closed captioned."

> "I support the enforcement of closed captioned films provided by Netflix…It is a multimillion dollar corporation and they should be held to the same standards along with the broadcast television companies. The lack of the closed captions films provided by Netflix is a slap in the deaf communities' face."

> "I am unable to watch Netflix movies, unlike my hearing husband and children who can watch any movies. I cannot watch movies with my children and cannot know what they are listening to or the contents of the movies. . . ."

> ". . . I'm very upset that Netflix has not provided captions for their 'watch instantly movies' that stream online. I would support any legal actions against Netflix."

These comments are only a few of the many inquiries that NAD received from consumers across the country expressing their frustrations that Netflix does not provide access to its Watch Instantly programming. For these individuals, this Netflix feature is more aptly described as: "Watch Later (or Never) When/If Netflix Decides to Caption."

36. Defendant's unlawful conduct interferes with NAD's members' rights to "full and equal enjoyment" of the goods, services, facilities, and privileges it provides others. NAD's members have been injured by Netflix's failure to provide closed captioning.

37. **WMAD/HI**: WMAD/HI has standing to sue as an association on behalf of its deaf and hard of hearing members, as its members would have standing to sue as individuals, advocating on this issue is germane to its purpose, and none of its members will be required to participate in this action.

38. WMAD/HI President and member, Diane Nettles, is a deaf individual who has been harmed by Netflix's failure to provide closed captioning on its streaming titles. Also a member of NAD, Ms. Nettles resides in Westfield, Massachusetts. She is a Data Supervisor at the Connecticut Department of Public Health and has been Adjunct Faculty at Elms College, and at Holyoke Community College, where she teaches about deaf culture. Ms. Nettles regularly visits homes in Western Massachusetts in order to teach basic American Sign Language skills to families with young children who are deaf or hard of hearing. She has been harmed by her exclusion from Netflix, as she feels that it is unfair that she has inadequate access to Watch Instantly, which she believes to be the most competitively priced unlimited viewing option for streaming movies and TV programming. Ms. Nettles has never subscribed to Netflix because of its failure to provide closed captioning. If Netflix provided equal access to Watch Instantly, she and many members of WMAD/HI would subscribe.

39. This lawsuit is germane to WMAD/HI's organizational purpose. One of its purposes is to reduce communication barriers and to ensure that members have equal access to civic and social life. At a recent member meeting, WMAD/HI's members expressed frustration about the inaccessibility of the majority of Watch Instantly streaming titles. Like Lee and Diane

Nettles, many of WMAD/HI's members enjoy watching movies at home and would love to be able to access the convenience and spontaneity that Watch Instantly provides. WMAD/HI's members would like to be able to watch on-demand streaming titles through Watch Instantly and to have full and equal access to those titles. Like NAD, WMAD/HI has also worked generally to reduce the communication barriers faced by its members. A recent concern has been emergency warnings on TV about the tornado crisis. WMAD/HI has been advocating with local news stations to use real time captioning. WMAD/HI also advocates with health care and other community services to use interpreters and provides lists of interpreters to further this mission.

40. Finally, no WMAD/HI members would be required to participate in this action, which is for declaratory and injunctive relief and will not include individualized remedies.

41. **Mr. Nettles:** Plaintiff Lee Nettles has standing because he has suffered an injury that this lawsuit will redress. Mr. Nettles has not subscribed to Netflix because Netflix has failed to provide closed captioning on its streaming library. Mr. Nettles must pay more to watch movies and television shows at home with his wife, Diane, and does not have access to the unparalleled large selection of Watch Instantly titles that Netflix provides to hearing individuals. If Netflix were to provide closed captioning on its streaming library, Plaintiff's injury would be cured and he would subscribe to Netflix.

42. **Summary:** In sum, there are several ways in which the inaccessibility of Watch Instantly harms deaf and hard of hearing individuals, including the members of NAD and WMAD/HI, and Mr. Nettles. First, members of NAD and WMAD/HI, and Mr. Nettles, are denied full and equal access to the ever-growing Watch Instantly library. While hearing subscribers are able to access the full content of this library, the members of NAD and

WMAD/HI, and Mr. Nettles, would be unable to do so if they subscribed since most of the titles lack captions.

43.     Second, members of NAD and WMAD/HI, and Mr. Nettles, are harmed in being denied full access to the least expensive "Unlimited" subscription packages offered by Netflix, the Watch Instantly-only subscription that is available for $7.99 per month.  Third, members of NAD and WMAD/HI, and Mr. Nettles, are harmed in being denied the convenience of Watch Instantly that hearing Netflix subscribers take for granted.  Hearing Netflix subscribers with Watch Instantly subscriptions can access Watch Instantly content anytime and anywhere.  Further, it is possible to view Watch Instantly content "on the go," using one's laptop or smart-phone, whereas physical DVDs may be viewed only in places where there is a physical DVD player.  As video content increasingly shifts from physical DVDs to online streaming, this on-demand culture is becoming the norm.

44.     Last, and most importantly, the ADA was intended to remove barriers and bring people with disabilities into the mainstream.  While streaming provides more access to entertainment to the general public, it threatens to be yet another barrier to people who are deaf and hard of hearing.  Watching, sharing, and talking about movies is a great American pastime.  Plaintiffs and their members not only want to see the movies, but, like the rest of society, want to share the experience with their families, friends and co-workers.  The lack of captions intrudes on this ability in a way that increases the sense of isolation and stigma that the ADA was intended to eliminate.

45.     Under the ADA, Plaintiffs do not have to engage in the "futile gesture" of purchasing a subscription when they have actual knowledge that they will have inferior,

ineffective access to the services and privileges that Netflix provides subscribers. 42 USC § 12188(a).

## COUNT I

## (VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT)

46. Paragraphs 1-45 are each re-alleged and incorporated as if fully set forth herein.

47. Plaintiffs Lee Nettles and members of NAD and WMAD/HI are deaf and/or hard of hearing individuals who require captioning to have full and equal access to audio and audiovisual content and are, therefore, "individual[s] with a disability" as defined in 42 U.S.C. § 12102(1)-(2) because each has a hearing impairment that substantially limits one or more of their major life activities, including the major life activity of hearing.

48. Defendant Netflix operates a place of public accommodation as defined by Title III of the ADA, 42 U.S.C § 12181(7) ("place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishments").

49. Netflix has failed to make its Watch Instantly streaming service accessible to individuals who are deaf or hard of hearing by failing to provide closed captioning on the vast majority of its ever-growing Watch Instantly library, failing to make its recommendations available with a closed captioning filter, and failing to maintain captions on previously captioned movies and TV shows.

50. Title III of the ADA provides that "places of public accommodation" may not discriminate against people with disabilities. Specifically, it directs that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public

accommodation by any person who owns…or operates a place of public accommodation." 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a).

51. Discrimination under Title III includes the denial of an opportunity for the person who is deaf or hard of hearing to participate in programs or services, or providing a service that is not as effective as what is provided to others. 42 U.S.C. § 12182(b)(1)(A)(i-iii).

52. Discrimination specifically includes the failure to provide "effective communication" to deaf and hard of hearing individuals through auxiliary aids and services, such as captioning, pursuant to 42 U.S.C. §12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(c).

53. Discrimination also includes the failure to maintain accessible features of facilities and equipment that are required to be readily accessible to and usable by persons with disability. 28 C.F.R. §36.211.

54. Under the ADA, Plaintiffs do not have to engage in the "futile gesture" of purchasing a subscription when they have actual knowledge that they will have inferior, ineffective access to the services and privileges that Netflix provides subscribers. 42 USC § 12188(a)(1).

55. Modifying its policies, practices, and services by providing closed captions to make Watch Instantly content accessible to deaf and hard of hearing individuals would not fundamentally alter the nature of Netflix's home entertainment business, nor would it pose an undue burden to this flourishing company.

56. Netflix's conduct constitutes an ongoing and continuous violation of the law. Netflix has failed to take any prompt and equitable steps to remedy its discriminatory conduct. Unless restrained from doing so, Netflix will continue to so violate the law. Netflix's conduct has caused and will continue to cause Plaintiffs injury. Plaintiffs have no adequate remedy at

law for the injuries they suffer and will continue to suffer.  Thus, Plaintiffs are entitled to injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that this Court:

1. Declare that Defendant's failure to provide closed captions to its Watch Instantly content violates Title III of the Americans with Disabilities Act;

2. Issue an injunction requiring Netflix to provide effective communication through closed captioning on Watch Instantly content and to provide easy identification of captioned content.

3. Award costs and reasonable attorneys' fees; and

4. Award such other and further relief as the Court deems just and proper.

 

Respectfully submitted,

NATIONAL ASSOCIATION OF THE DEAF,
WESTERN MASSACHUSETTS ASSOCIATION OF
THE DEAF AND HEARING IMPAIRED, AND
LEE NETTLES,

By their Attorneys,

*/s/ Arlene Mayerson*

_____
Arlene Mayerson
Charlotte Lanvers
Shira Wakschlag
DISABILITY RIGHTS EDUCATION AND DEFENSE FUND, INC.
3075 Adeline Street, Suite 210
Berkeley, CA  94703
Telephone: (510) 644-2555
amayerson@dredf.org
clanvers@dredf.org
swakschlag@dredf.org

*/s/ Brad Seligman*
_____
Brad Seligman (*pro hac vice* pending)
Bill Lann Lee
Catha Worthman
Joshua Davidson
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
476 9th Street
Oakland, CA  94607-4048
Telephone: (510) 839-6824
bseligman@lewisfeinberg.com
blee@lewisfeinberg.com
cworthman@lewisfeinberg.com
jdavidson@lewisfeinberg.com


 */s/ Christine M. Netski*
_____
Christine M. Netski, BBO #546936
SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
101 Merrimac Street
Boston, MA  02114-4737
Telephone:  (617) 227-3030
netski@srbc.com

Dated: August 9, 2011


## CERTIFICATE OF SERVICE

I, Christine M. Netski, hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 9, 2011.

 */s/ Christine M. Netski*
 Christine M. Netski

#436193