# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

## WESTERN DIVISON

NATIONAL ASSOCIATION OF THE
DEAF, WESTERN MASSACHUSETTS
ASSOCIATION OF THE DEAF AND
HEARING IMPAIRED AND LEE
NETTLES,
               Plaintiffs,

    v.

NETFLIX, INC., a corporation,
               Defendant.

CIVIL ACTION NO. 11-30168-MAP

**PLAINTIFFS' OPPOSITION TO**

**MOTION TO DISMISS**

**[ORAL ARGUMENT REQUESTED]**

## TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND FACTS AND PROCEDURAL HISTORY ........................................... 3

III.  ARGUMENT ...................................................................................................... 4

    A.  The Exceptional Factors Necessary to Invoke Primary Jurisdiction Are Absent ......... 4

        1.  The Agency Determination Does Not Lie at the Heart of the Task Assigned to the FCC by Congress ................................................................................................ 5

        2.  The FCC's Expertise Is Not Required to Unravel the Facts  Because They Are Not Technical ..................................................................................................... 8

        3.  The FCC's Determination Would Not Materially Aid this Court ......................... 9

    B.  Plaintiffs Have Sufficiently Alleged Statutory and Constitutional Standing............. 10

        1.  Under the ADA, Plaintiffs Do Not Have to Subject Themselves to Discrimination in Order to Have Standing to Sue. ........................................................... 10

        2.  Plaintiffs Have Alleged Sufficient Injury in Fact. ................................................. 11

        3.  Plaintiff's Claim Is Ripe for Review. ................................................................. 13

    C.  This Case Belongs in this Court.............................................................................. 14

        1.  The First Filed Rule Does Not Apply Because the Cullen Action Is Not Duplicative of this Action. ..................................................................................... 15

        2.  Plaintiffs' Choice of Forum and the Interests of Justice Militate for Adjudication in this Court........................................................................................................ 18

IV.   CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page No.**

**FEDERAL CASES**

Am. Council of the Blind v. Astrue,
    U.S. Dist. LEXIS 86524 (N.D. Cal. 2008) ........................................................ 7

Arizona ex rel. Goddard v. Harkins Amusement-Enters,
    603 F.3d 666 (9th Cir. 2010) ....................................................................... 7

Assoc. Fisheries of Me. v. Evans,
    329 F. Supp. 2d 172 (D. Me. 2004) ............................................................. 16

AT&T. v. IMR Capital Corp.,
    888 F. Supp. 221 (D. Mass. 1995) ............................................................... 7

Aversa v. United States,
    99 F.3d 1200 (1st Cir. 1996) ...................................................................... 13

Ball v. AMC Entertainment, Inc.
    No. Civ. A.00-867 (D.D.C., May 3, 2004) ...................................................... 9

Bartlett v. Mut. Pharm. Co.,
    731 F. Supp. 2d 135 (D.N.H.  2010) ........................................................... 10

Brown v. MCI Worldcom Network Servs., Inc.,
    277 F.3d 1166 (9th Cir. 2002) ..................................................................... 7

Carey v. Hillsborough Cnty. Dep't of Corr.,
    (D.N.H. Mar. 6, 2006)................................................................................ 16

Carparts Distribution Center, Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.,
    37 F.2d 12 (1st Cir. 1994).................................................................. 13, 19

Chico Serv. Station, Inc. v. SOL P.R. Ltd.,
    633 F.3d 20 (1st Cir. 2011)......................................................................... 5

Cianbro Corp. v. Curran-Lavoie, Inc.,
    814 F.2d 7 (1st Cir. 1987)................................................................. 3, 16, 19

Coady v. Ashcraft & Gerel,
    223 F.3d 1 (1st Cir. 2000)................................................................... 16, 19

CTC Communs. Corp v. Bell Atl. Corp.,
    77 F. Supp. 2d 124 (D. Me. 1998) ............................................................... 5

DeVinney v. Maine Medical Center,
    1998 WL 271495 (D. Me. 1998) .................................................................. 9

Disabled Ams. for Equal Access, Inc. v. Ferries del Caribe, Inc.,
   405 F.3d 60 (2005) ..................................................................................... 2, 3, 11

Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.,
   239 F.R.D. 9 (D.D.C. 2006) ........................................................................... 9, 10

Dolan v. Utica Mut. Ins. Co.,
   630 F.Supp.305 (D. Mass. 1986) ......................................................................... 7

Dudley v. Hannaford Bros. Co.,
   333 F.3d 299 (1st Cir. 2003) ..................................................................... *passim*

Feldman v. Pro Football, Inc.,
   419 Fed. Appx. 381 (4th Cir. 2011) ..................................................................... 9

Friends of Merrymeeting Bay v. Miller Hydro Group,
   2011 (D. Me. July 14, 2011) ............................................................................... 8

Gulf Oil Corp. v. Gilbert,
   330 U.S. 501 (1947) ........................................................................................ 19

Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.,
   249 F. Supp. 2d 12 (D. Mass. 2002) ................................................................. 19

Int'l Bhd. of Teamsters v. United States,
   431 U.S. 234 (1977) ........................................................................................ 11

Kleinerman v. Luxtron Corp.,
   107 F. Supp. 2d 122 (D. Mass. 2000) ............................................................... 19

Los Angeles v. Lyons,
   461 U.S. 95 (1983) .......................................................................................... 14

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992) ............................................................................. 13, 14, 19

Mashpee Tribe v. New Seabury Corp.,
   592 F.2d 575 (1st Cir. 1979) ..................................................................... *passim*

Mass. v. Blackstone Valley Elec. Co.,
   67 F.3d 981 (1st Cir. 1995) ................................................................................. 6

McGlynn v. Credit Store, Inc.,
   234 B.R. 576 (D.R.I. 1999) .............................................................................. 19

MCI Telecom .Corp. v. Ameri-Tel,
   852 F. Supp. 659 (N.D. Ill. 1994) ....................................................................... 9

McInnis-Misenor v. Maine Medical Center,
    319 F.3d 63 (1st Cir. 2003) ................................................................. 17, 18

Nader v. Allegheny Airlines, Inc.,
    426 U.S. 290 (1976) ................................................................................ 10

Nat'l Tank Truck Carriers, Inc. v. Burke,
    608 F.2d 819 (1st Cir. 1979) .................................................................... 6

Nat'l Tank Truck Carriers, Inc. v. Burke,
    608 F.2d 819 (1st Cir. 1979) .................................................................... 6

New Seabury Corp.,
    592 F.2d 575 (1st Cir.  1979) ............................................................... 9, 11

New Hampshire Motor Transp. Ass'n v. Rowe,
    448 F.3d 66 (1st Cir. 2006) .................................................................... 16

Nowak v Tak How Investments, Ltd.,
    94 F. 3d 708 (1st Cir. 1996) ................................................................... 18

Parr v. L&L Drive Inn. Rest.,
    96 F. Supp. 2d 1065 (D. Hawai'i 2000) ............................................... 17, 18

Pickern v. Holiday Quality Foods, Inc.,
    293 F.3d 1133 (9th Cir. 2002) ................................................................ 14

Princess House, Inc. v. Lindsey,
    136 F.R.D 16 (D. Mass. 1991) ................................................................ 18

Rymes Heating Oils Inc. v. Springfield Terminal Ry. Co.,
    358 F.3d 82 (1st Cir. 2004) .................................................................... 6, 8

Scheinbart v. Certain-Teed Prods. Corp.,
    367 F. Supp. 707 (S.D.N.Y. 1973) .......................................................... 19

Scholz Design, Inc. v. Liquori,
    659 F. Supp.2d 275 (D. Mass. 2009) ....................................................... 1

Serlin v. Arthur Anderson,
    3 F.3d 221 (7th Cir. 1993) ..................................................................... 18

Smith v. Nat'l Steel & Shipbldg. Co.,
    125 F.3d 751 ........................................................................................... 4

Sorenson Commc'ns, Inc. v. FCC,
    567 F.3d 1215 (10th Cir. 2009) ................................................................ 7

TCG New York Inc. v. White Plains,
    305 F.3d 67 (2d Cir. 2002) ...................................................................... 5

Trafficante v. Metropolitan Life Ins. Co.,
    409 U.S. 205 (1972) ................................................................................................ 16

U.S. Pub. Interest Research Group v. Heritage Salmon, Inc.,
    2002 U.S. Dist. LEXIS 2706 (D. Me. 2002) ...................................................... 11

Warth v. Seldin,
    422 U.S. 490 (1975) ................................................................................................ 12

Weyer v. Twentieth Century Fox Film Corp.,
    198 F.3d 1104 (9th Cir. 2000) ............................................................................ 18

Wiley v. Gerber Prods. Co.,
    667 F. Supp. 2d 171 (D. Mass. 2009) .............................................................. 16

World Energy Alts., LLC v. Settlemyre Industries, Inc.,
    671 F. Supp. 2d 215 (D. Mass. 2009) .............................................................. 16

Young v. Kelley,
    1993 U.S. Dist. (W.D.N.Y. Sept. 30, 1993) ...................................................... 16

Zulauf v. Kentucky Educ. TV,
    28 F. Supp. 2d 1022 (E.D. Ky. 1998) .................................................................. 8

## FEDERAL STATUTES

28 U.S.C. § 1391 ................................................................................................................ 18

28 U.S.C. § 1404(a) .......................................................................................................... 15

42 U.S.C. 12111 (b) .......................................................................................................... 12

42 U.S.C. §12182(b)(2)(A)(iii) .......................................................................................... 1

42 U.S.C. § 12188(a)(1) .................................................................................................... 10

46 U.S.C. § 613 ................................................................................................................ 10

47 U.S.C. § 613(c)(2)(A) .................................................................................................... 2

47 U.S.C. § 613(j) ............................................................................................................... 5

47 U.S.C. § 613(c)(2)(D)(ii) ............................................................................................ 12

47 U.S.C. § 613(e) ............................................................................................................ 12

47 U.S.C. §613 ................................................................................................................... 5

28 U.S.C. 1404(a) ............................................................................................................ 18

42 U.S.C. § 12182(a) .................................................................................... 1, 8

42 U.S.C. § 12188 ......................................................................................... 1

42 U.S.C. § 12188(a)(1) ................................................................................ 14

42 USC § 12101(b)(1) ................................................................................... 1

47 U.S.C. § 151 ............................................................................................. 7

47 U.S.C. § 152 ............................................................................................. 5

47 U.S.C. § 613 ............................................................................................. 2

47 USC § 613(i) ............................................................................................ 5

552 U.S. 364 (2008) ...................................................................................... 16

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(1) ................................................................................ 15

Fed R. Civ. 12(b)(3) ..................................................................................... 18

Fed R. Civ. 26(f) ....................................................................................... 4, 20

**FEDERAL REGULATIONS**

28 C.F.R. § 36.201(a) ................................................................................. 1, 8

28 C.F.R § 36.303(b) .................................................................................... 2

28 CFR § 36.303 ........................................................................................... 1

**OTHER AUTHORITIES**

Cal. Gov't Code § 12926.1 ........................................................................... 17

Gelfo v. Lockheed Martin Corp.
    140 Cal. App. 4th 34 (2006) ..................................................................... 18

Juenger, Forum Shopping, Domestic and International,
    63 Tul. L. Rev. 553, 572 (1989). .............................................................. 18

2 Newberg on Class Actions § 6.6 ................................................................ 18

## I.    INTRODUCTION

Defendant Netflix, Inc. ("Netflix") has moved to dismiss or transfer this civil rights action, attempting to raise procedural and discretionary hurdles to keep this Court from reaching the merits of Plaintiffs' disability discrimination claim.  Netflix's Motion should be denied.[1]

Plaintiffs are the National Association of the Deaf ("NAD"), Western Massachusetts Association of the Deaf and Hard of Hearing ("WMAD/HI"), and Lee Nettles, a leader in the deaf and hard of hearing community in Western Massachusetts.  (FAC ¶¶ 10-12.)[2]  Plaintiffs seek injunctive and declaratory relief requiring Netflix to provide full and equal access to the streaming content of its popular "Watch Instantly" service, which offers movies and television programs on-demand over the internet.  (FAC ¶ 1.)  Netflix admits that it provides closed captions on only a limited portion of its streaming Watch Instantly library, although captioning is necessary for deaf and hard of hearing individuals to fully understand the audio content of video programming.  (FAC ¶¶ 19-20.)

Congress intended suits by private citizens, like this one, to be a primary mechanism for enforcing the anti-discrimination rights guaranteed by the ADA, along with oversight by the Department of Justice ("DOJ").  *See Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307 (1st Cir. 2003); 42 U.S.C. § 12188.  The ADA "provide[s] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 USC § 12101(b)(1).  In keeping with this purpose, Title III of the ADA requires that individuals with disabilities have "full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation."  42 U.S.C. § 12182(a).

---

[1] *See* Defendant's Motion to Dismiss First Amended Complaint (or, in the Alternative, Transfer to the Northern District of California), ECF No. 22, referred to herein as Motion or MTD.

[2] FAC refers to the First Amended Complaint, ECF No. 19.  The long-established standard for ruling on a motion to dismiss under Rule 12(b) provides that "a court must accept a complaint's well-pleaded facts as true and indulge all reasonable inferences in the plaintiff's favor."  *See, e.g., Scholz Design, Inc. v. Liquori*, 659 F. Supp.2d 275, 277 (D. Mass. 2009).

Despite the direct application of ADA principles and provisions to this case, Netflix argues that Plaintiffs are precluded from seeking redress under the ADA. Netflix's arguments are all fatally flawed. *First*, Netflix contends that the doctrine of primary jurisdiction requires referral to the Federal Communications Commission ("FCC"), based on the Twenty-First Century Communications and Video Accessibility Act of 2010 ("CVAA"), Pub. L. 111–260, 124 Stat. 2751, *codified at* 47 U.S.C. § 613. The exceptional circumstances necessary to invoke primary jurisdiction are absent, however. *See*, *e.g*. *Mashpee Tribe v. New Seabury Corp*., 592 F.2d 575, 581 (1st Cir. 1979). CVAA assigned the FCC a limited role to ensure that captions on televised programming continue when streamed to the internet. When its incomplete rulemaking process is final, CVAA will require captioning on, at most, a limited portion of Netflix's streaming library, as CVAA only affects programming shown on television *after* January 2012. *See* 47 U.S.C. § 613(c)(2)(A). Interpreting the ADA's requirements for closed captioning as applied to Netflix is not at the heart of the task assigned to the FCC, the FCC's technical expertise is not required for the Court to resolve Plaintiffs' claims, nor will FCC assistance materially aid the Court. *See Mashpee*, 592 F.2d at 581.

*Second,* Plaintiffs clearly have constitutional and statutory standing based on Netflix's admitted failure to provide full and equal access to its streaming content. They have suffered imminent injury, and their claim is ripe for review. *See*, *e.g*., *Disabled Ams. for Equal Access, Inc. v. Ferries del Caribe, Inc.*, 405 F.3d 60, 64 (2005); *Dudley*, 333 F.3d at 406.

*Finally*, Netflix oversteps by moving to dismiss or transfer Plaintiffs' case to the Northern District of California, because Netflix faces a different case there. (*See* ECF Nos. 14-1, 21-1, "*Cullen*".) Transfer is inappropriate because the claims, parties and remedies sought differ significantly between the two suits, while discretionary factors favor retention of this action. *See*, *e.g*., *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987).

## II.    BACKGROUND FACTS AND PROCEDURAL HISTORY

Netflix's Watch Instantly service is the "fastest growing entertainment venue in the country," with an estimated share of over 60% of the industry market, but it is not fully accessible to the over 36 million Americans who are deaf and hard of hearing.  (FAC ¶¶ 1, 4.) Netflix admits that the majority of its streaming content remains uncaptioned (FAC ¶¶ 18-20), and that it has no intention of providing full and equal access. (FAC ¶¶ 16, 20, 49; *see also* FAC ¶ 5 (stating that Netflix's ultimate goal is only to provide captions on 80% of its "most popular" programming); MTD at 1.).  In addition, deaf and hard of hearing individuals do not have the benefit of a Netflix customized subscription service which identifies customer preferences and makes recommendations.  (FAC ¶ 19.)  Deaf and hard of hearing individuals are thus denied equal access to Netflix's programming.

NAD, WMAD/HI, and the deaf and hard of hearing community have repeatedly demanded that Netflix caption more of its streaming titles.  (FAC ¶¶ 21, 35.)  Indeed, NAD began its attempt to persuade Netflix to offer greater captioning more than two years ago.  (FAC ¶¶ 23-26.)  On December 17, 2010, Netflix wrote an open demand letter calling on Netflix to "caption all of the videos on its Watch Instantly services now," declaring, "We want equal access."  (Mayerson Decl. ¶ 2, Exh. A.)  On February 9, 2011, NAD wrote to Netflix setting forth the ADA claim and proposing pre-suit settlement discussions.  (Mayerson Decl. ¶ 3; FAC ¶ 27.) On March 8, 2011, Plaintiffs' counsel and representatives of Netflix met for an informational exchange.  (Mayerson Decl., ¶ 3.)  NAD and Netflix continued communications, but ultimately were unable to reach settlement.  (*Id.* ¶ 3; FAC ¶ 27.)

While pre-suit discussions between Netflix and Plaintiffs were ongoing, *Cullen* was filed in the Northern District of California.  (*See* ECF No. 14-1, Complaint in *Cullen v. Netflix, Inc.*, No. 5:11-cv-01199 (N.D. Cal., filed Mar. 11, 2011).)  Cullen's suit is a self-described "routine

consumer fraud" action primarily raising marketing and advertising issues under California law; although his initial complaint also included an ADA claim, that claim—which was always "secondary"—has since been dropped.  (*See* Exh. C; ECF No. 21-1.)

This case, meanwhile, is proceeding apace.  Netflix's Motion is scheduled to be heard on November 8, 2011, and the parties have held a discovery planning conference under Federal Rule of Civil Procedure 26(f), consistent with their stipulated schedule.  (Mayerson Decl., ¶ 4.)

## III.    ARGUMENT

The ADA, like other civil rights legislation, relies on private suits in federal court for enforcement.  *See* 42 U.S.C. § 12188; *Dudley*, 333 F.3d at 307 (observing that Congress intended private litigation to play a crucial role in enforcing the ADA and other civil rights statutes); *see also Smith v. Nat'l Steel & Shipbldg. Co.*, 125 F.3d 751, 756 (9th Cir. 1997) (maintaining ADA suit in court over challenge it should be referred to NLRB because "preemption in this case would leave disabled union employees who are the victims of unlawful discrimination without recourse to the federal forum which Congress sought to provide").  Netflix seeks to keep Plaintiffs' case out of this Court—and out of any court—by raising the primary jurisdiction doctrine, contending that plaintiffs lack standing, and seeking transfer.  As set forth below, all of Netflix's arguments lack merit.

### A.  The Exceptional Factors Necessary to Invoke Primary Jurisdiction Are Absent.

The exceptional circumstances necessary to invoke primary jurisdiction are absent in this case.  *See Nat'l Tank Truck Carriers, Inc. v. Burke*, 608 F.2d 819, 821-22 (1st Cir. 1979); *Chico Serv. Station, Inc. v. SOL P.R. Ltd*., 633 F.3d 20, 31-32 (1st Cir. 2011); *CTC Comm'cs. Corp v. Bell Atl. Corp*., 77 F. Supp. 2d 124, 141 (D. Me. 1998).  The parties agree that in the First Circuit, courts use the following factors to weigh whether the doctrine of primary jurisdiction applies: (1) whether the agency determination lies at the heart of the task assigned the agency by

Congress; (2) whether agency expertise is required to unravel intricate, technical facts; and (3) whether, though perhaps not determinative, the agency determination would materially aid the court. *Rymes Heating Oils Inc. v. Springfield Terminal Ry. Co.*, 358 F.3d 82, 91 (1st Cir. 2004); *see also Mass. v. Blackstone Valley Elec. Co.*, 67 F.3d 981, 992 (1st Cir. 1995). Primary jurisdiction is a doctrine of "relatively narrow scope," and when a case involves a purely legal issue and "where the facts are undisputed, it will rarely be appropriate to dismiss on the basis of primary jurisdiction." *TCG New York Inc. v. White Plains*, 305 F.3d 67, 74-75 (2d Cir. 2002) (internal quotation marks and citations omitted) (declining to refer a dispute under the Telecommunications Act of 1996 to FCC).

### 1.    The Agency Determination Does Not Lie at the Heart of the Task Assigned to the FCC by Congress.

Netflix's assertion (MTD at 6) that the legal requirements regarding captioning its streaming content "fall[ ] squarely in the FCC's exclusive domain" is belied by the text of the jurisdictional section on which Defendant relies. CVAA grants FCC exclusive jurisdiction "with respect to any complaint *under this section*." 47 USC § 613(j) (emphasis added).[3] This provision simply means that all claims brought under CVAA itself must be submitted to the FCC. It does not apply to claims brought under the ADA. The discrimination claim in this case—whether Netflix is required to provide full and equal access to its streaming content by providing full captioning—is brought under the ADA, not CVAA. Congress did not assign FCC the task of implementing the ADA; among federal agencies, the DOJ has this responsibility. The FCC has traditionally enforced the law requiring that television shows be captioned. 47 U.S.C. § 613. In order to ensure that television captions that have been required for over two decades were not compromised as more television programming is streamed on the internet, Congress extended the

---

[3] This provision is numbered 47 U.S.C. § 613(j) rather than 47 U.S.C. § 613(i) due to a scrivener's error in the CVAA legislation.

FCC's jurisdiction to cover internet streaming, but only in so far as the programming is aired on television after 2012. *See* 47 U.S.C. § 613(c)(2)(A); 47 C.F.R. § 79 et seq.

The DOJ's administrative authority, in contrast to the FCC's limited authority, encompasses in its broad sweep precisely the issue at the heart of this case. DOJ's governing statute and regulations require—without exception—that deaf and hard of hearing individuals have "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a). Both the ADA and governing DOJ regulations provide specifically that a failure to ensure equal access because of the absence of auxiliary aids and services constitutes discrimination, and captioning is a listed auxiliary aid and service. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 CFR § 36.303 & pt. 36, App. B.

Moreover, Congress has specifically assigned to the federal courts the authority to resolve claims arising under the ADA and its regulations. *See* 42 U.S.C. § 12188; *see also Dudley*, 333 F.3d at 307 (explaining intent of Congress that private litigation would ensure compliance with the ADA). Courts are reluctant to forego jurisdiction when Congress has bestowed it. *See*, *e.g.*, *Smith*, 125 F.3d at 756. In *Smith*, defendants argued that ADA claims brought by members of a labor union were preempted by the National Labor Relations Act. *See id.* The Ninth Circuit, however, declined to refer the case to the NLRB, on the grounds that interpretation of the ADA is a "judicial function [that] exceeds the agency's expertise and authority," and "the careful balancing of [ ] two statutes should be left to the federal courts." *Id.* at 757. "Most important[ ]," *Smith* held, was to protect the claimants' "recourse to the federal forum which Congress sought to provide." *Id.* The same reasoning applies here.[4]

---

[4] Similarly, in a case under Section 504 of the Rehabilitation Act, seeking notices in alternative formats for blind recipients, a district court held the Social Security Administration did not have exclusive jurisdiction, even though the Social Security Act had a specific provision governing mailing of notices to blind recipients. The court recognized that the narrower SSA provision must be reconciled with the broad anti-discrimination mandate of Section 504. The court

Primary jurisdiction must also be rejected because the FCC could not provide full relief in this case, as CVAA only applies to a limited subset of the content of Netflix's streaming library, as described above. As *Rymes Heating Oils* stated, the "dismissal of the complaint may be appropriate when *all* of the relief that is sought in court can be obtained in an administrative forum." 358 F.3d at 91 n.9 (internal citations omitted) (emphasis added); *see also Dolan v. Utica Mut. Ins. Co.*, 630 F. Supp. 305, 308 (D. Mass. 1986) ("Where the administrative remedy is inadequate, normally it is not assumed that it was intended to be exclusive.").

Referral to the FCC is also inappropriate on the separate ground that the FCC's rulemaking is incomplete. *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 297 (1976). The First Circuit has held that "where [an] agency had not yet approved its regulations," the court must respect the "strong public interest in the prompt resolution of the case and not defer to administrative action of uncertain aid and uncertain speed." *Mashpee Tribe*, 592 F.2d at 581; *see also AT&T. v. IMR Capital Corp.*, 888 F. Supp. 221 (D. Mass. 1995).

A recent, analogous case is instructive. *See Arizona ex rel. Goddard v. Harkins Amusement Enters.*, 603 F.3d 666 (9th Cir. 2010). In *Goddard*, plaintiffs alleged violations of the ADA and the Arizonans with Disabilities Act against a movie theater chain that did not provide auxiliary services, including captioning. *Id.* at 668. When *Goddard* was remanded to the district court, the movie chain argued that the case should be stayed under the primary jurisdiction doctrine, pending the promulgation of DOJ regulations regarding captioning at movie theaters. (*See* Exh. E.)[5] The DOJ filed a Statement of Interest urging the court not to apply primary jurisdiction because the agency had no ready administrative adjudicatory process

---

reasoned "[t]hat Congress somehow intended to relieve the agency of its obligations to [recipients] under the Rehabilitation Act is far-fetched. Congress intended to improve the notice provided to blind recipients when it passed the special notice provision, not to limit such notice." *See Am. Council of the Blind v. Astrue*, 2008 U.S. Dist. LEXIS 86524 (N.D. Cal. 2008).

[5] *Goddard v. Harkins*, No. CV-07-00703-PHX-ROS, ECF No. 78 (Order of Feb. 8, 2011).

or remedy available to the plaintiffs.  (*Id.*)  The district court agreed, finding:  "there is no

administrative proceeding to which [the court] can refer the parties; the parties will not directly

participate in the DOJ's rulemaking; the parties will be forced to wait an indefinite duration for

the DOJ final rule; the DOJ is not capable of resolving the parties' entire dispute; and Courts

routinely decide ADA cases involving accommodations and undue burden."  (*Id.*).  The court

held that "[a]lthough the DOJ is responsible for issuing regulations for the ADA, this alone does

not invoke primary jurisdiction."  (*Id.*)  As in *Goddard*, there is no administrative proceeding

here to which to refer the parties and the FCC cannot resolve the parties' entire dispute.[6]

Netflix mistakenly relies on *Zulauf v. Kentucky Educ. TV*, 28 F. Supp. 2d 1022 (E.D. Ky.

1998).  Netflix ignores two critical distinctions, however.  First, in *Zulauf*, the FCC could

provide full relief because—unlike the CVAA—the relevant statute, the Video Programming

Accessibility Act of 1996 ("VPAA"), covered *all* of the content that the FCC was asked to

review.  Here, CVAA covers, at best, only a subset of the content Plaintiffs seek to caption—

post-January 2012 television programming—and FCC could at best provide only partial relief.

Second, in *Zulauf* and the other cases cited by Netflix—and unlike the instant case, *Mashpee*

*Tribe*, or *Godard*—the regulations at issue had already been promulgated and implemented for

some time when the litigation was brought.  *Zulauf,* 28 F. Supp. 2d 1023.

### 2.  The FCC's Expertise Is Not Required to Unravel the Facts Because They Are Not Technical.

Netflix's attempt to use the technical requirements of CVAA to defeat Plaintiffs' ADA

claim is unavailing.  This Court is being asked to interpret only the requirements of the ADA vis-

a-vis Netflix's streaming business.  The courts are well equipped to deal with communication

---

[6] DOJ has also issued proposed rules stating unequivocally that public accommodations include websites.  75 Fed. Reg. 43460, at 43463.  DOJ's having issued proposed rules further indicates the inapplicability of the primary jurisdiction argument, as set forth above.

access issues involving captions that arise under the ADA.[7]  Courts have declined to invoke the

primary jurisdiction doctrine where the matter was not "so technical as to be beyond the

understanding of judges or juries," even where some consultation with experts was required.  *See*

*Mashpee Tribe,* 592 F.2d at 580-81; *see also Disability Rights Council of Greater Wash. v.*

*Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9, 20 (D.D.C. 2006) (declining to apply primary

jurisdiction where agency expertise not required to analyze whether paratransit services satisfied

the requirements of the ADA), *Bartlett v. Mut. Pharm. Co*., 731 F. Supp. 2d 135, 153 n.13

(D.N.H. 2010) (explaining that interpretation of FDA regulations is within courts' competence).

As *Smith* stated, "[t]he determination of unlawful discriminatory . . . practices is hardly a

question beyond 'the conventional experience of judges,' nor can it be said to raise issue 'within

the special competence of the [agency].'" 125 F.3d at 756.

### 3.  The FCC's Determination Would Not Materially Aid this Court.

As stated above, there is no determination that the FCC can make that would aid this

Court, because the FCC does not enforce the ADA, has not issued its regulations, and the final

regulations will cover only a portion of Defendant's streaming library at most.  *See*, *e.g*., *Wash.*

*Metro. Area Transit Auth.*, 239 F.R.D. at 20.  Moreover, the CVAA technical issues raised by

Netflix are unlikely to affect Netflix as a secondary distributor responsible for passing through

televised content.[8]  However, there is nothing speculative about the application of the ADA to

Plaintiffs' claim.

---

[7] *See*, *e.g*., *DeVinney v. Maine Medical Center*, 1998 WL 271495, *9 (D. Me. 1998) (consent decree requiring hospital to provide captioned televisions in hospital rooms and to caption "all hospital-produced television advertising and programming and videos); *Feldman v. Pro Football, Inc.,* 419 Fed. Appx. 381, 390-391 (4th Cir. 2011) (affirming district court decision requiring the football stadium to provide captions as an auxiliary aid for aural content, including music to lyrics broadcast over a public address system in order to provide plaintiffs); *Ball v. AMC Entertainment, Inc.* No. Civ. A.00-867 (D.D.C., May 3, 2004) (approving class settlement alleging a failure to provide reasonable accommodations including captioning).

[8] CVAA will have a limited application on Netflix. The FCC has proposed that it will require Video Provider Owners ("VPOs") to send program files to Video Provider Distributors or Providers ("VPDs/VPPs") *with all required captions*, and, as contemplated by Section 202(b), to

### B. Plaintiffs Have Sufficiently Alleged Statutory and Constitutional Standing.

#### 1. Under the ADA, Plaintiffs Do Not Have to Subject Themselves to Discrimination to Have Standing to Sue.

Netflix contends that Plaintiffs lack standing because Mr. Nettles is not a current subscriber, and because Plaintiffs' complaint does not identify by name any current Netflix subscribers as members of NAD or WMAD.  Congress foreclosed these contentions, however, when it enacted 42 U.S.C. § 12188(a)(1)of the ADA, to provide that:

> Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by [Title III] does not intend to comply with its provisions.

Under this provision, Plaintiffs are not required to sign up for Netflix's service without adequate captioning in order to have standing to sue.  Plaintiffs have standing to sue under the ADA as "'disabled individual[s] who [are] currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA,'" and who are "'threatened with harm in the future because of existing . . .  noncompliance with the ADA.'"  *Disabled Ams. for Equal Access, Inc. v. Ferries del Caribe, Inc.*, 405 F.3d 60, 64 (2005) (quoting *Pickern v. Holiday Quality Foods, Inc.,* 293 F.3d 1133, 1138 (9th Cir. 2002)).  As the First Circuit has further explained, to require that "a disabled person must subject himself to repeated instances of discrimination in order to invoke the remedial framework of Title III of the ADA" would "turn[ ] the language of section 12188(a)(1) on its head."  *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 305 (1st Cir. 2003) (citing *Pickern*, 293 F.3d at 1136-37); *see also Int'l Bhd. of Teamsters v. United States*, 431 U.S. 234, 365 (1977) (explaining "futile gesture" doctrine).

---

require VPDs/VPPs to enable "the rendering or pass through" of all required captions to the end user.  46 U.S.C. § 613; 76 Fed. Reg. 59,963 (Sept. 28, 2011) (Proposed Rule).  In addition, the FCC proposes to refrain from specifying *any particular standard* for the interchange format or delivery format of IP-delivered video programming [on managed websites such as Netflix] at this time, recognizing that "even in the absence of a single standard for the interchange and delivery formats today, closed captions are already being provided on certain IP-delivered video programming."  46 U.S.C. § 613; 76 Fed. Reg. 59,963 (Sept. 28, 2011) (Proposed Rule).

Netflix nevertheless argues Plaintiffs do not meet the "futile gesture" requirements of the ADA, on the theory that they do not have "actual notice" of Netflix's existing non-compliance. (MTD at 13.)  Plaintiffs' actual knowledge cannot seriously be doubted because Netflix has *admitted* publicly that it has not captioned all its streaming titles, and has publicly refused to adopt a goal of making its streaming content fully accessible.  (MTD at 1; FAC at ¶¶ 19, 20.)  Netflix has made numerous public announcements of these facts.  (FAC ¶¶ 17- 20.)  Moreover, NAD plainly had actual notice because it followed up with pre-litigation demands for greater captioning, which Netflix rejected.  (Mayerson Decl. ¶¶ 2, 3; FAC ¶¶ 24-27.)

Further, Plaintiffs *have* alleged first-hand experience with Netflix's inadequate captioning of its Watch Instantly service.  NAD, for example, has received numerous complaints from its members and other individuals, including some who are Netflix subscribers.  (FAC ¶¶ 35.)  And, as Netflix admits (MTD at 10 n.4), NAD member Johnson joined Netflix twice based on its representations that closed captioning would be made more fully available, but he cancelled his subscriptions out of disappointment with the lack of accessible content.  (FAC ¶ 33.)  Netflix's assertion that Mr. Johnson's past exposure to discriminatory conduct is insufficient must be rejected in light of the ADA's explicit provision of standing to the "deterred plaintiff."  *See Dudley*, 333 F.3d at 306-07.  Likewise, the other Plaintiffs have actual knowledge as members of the deaf community where Netflix's failure to caption is notorious.  (FAC ¶¶ 21-22.)

### 2.  Plaintiffs Have Alleged Sufficient Injury in Fact.

Netflix also contends erroneously that Plaintiffs have not suffered sufficient "injury."  As set forth above, deterrence *itself* is a cognizable injury under the ADA.  As the First Circuit has held, "a disabled individual suffers an injury once he has 'become aware of discriminatory conditions existing at a public accommodation . . . and is thereby deterred from visiting or patronizing that accommodation.'"  *Dudley*, 333 F.3d at 306-07 (quoting *Pickern*, 293 F.3d at 1136-37).  Further, this same injury—an invasion of a legal right to be free from discrimination

11

on the basis of disability—constitutes a "concrete and particularized" injury under Article III.[9]
*See id.*; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (explaining Article
III's injury requirements); *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (explaining that "[t]he
actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating
legal rights, the invasion of which creates standing'"); *Disabled Ams.*, 405 F.3d at 64 (explaining
deterrence standing under the ADA and Article III); *Pickern*, 293 F.3d at 1137-38 (same).

Plaintiffs have alleged further injuries that Netflix's Motion simply ignores, including the
harm of being unable to access the full content of Netflix's library, and the harm of being denied
full access to Netflix's least expensive packages.  (FAC at ¶¶ 32, 42-43.)  For example, NAD
member Brick suffered concrete economic injury by being forced to purchase extra equipment to
access the services that Netflix offers to hearing subscribers.  (FAC at ¶ 32.)

Netflix also ignores Plaintiffs' allegations that its discriminatory conduct increases the
sense of isolation and stigma that the ADA is designed to redress.  *See Carparts Distrib. Ctr.,
Inc. v. Auto. Wholesalers Ass'n of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994) (quoting
ADA legislative history as to the statute's intent "to bring individuals with disabilities into the
economic and social mainstream of American life"); *Trafficante v. Metro. Life Ins. Co.*, 409 U.S.
205, 209-10, 212 (1972) (holding members of a minority group who had been stigmatized
suffered cognizable harms for purposes of standing).  For example, Mr. Brick has explained that
"Netflix's denial of accessible services for me isolates me from family, friends, and colleagues in
conversations regarding the latest social trends and issues."  (FAC ¶¶ 5, 32.)  Alan Gifford, also a

---

[9] Netflix discusses "injury" without specifying whether it is attacking constitutional or statutory
standing, or both.  Plaintiffs address both, as Netflix has moved to dismiss for lack of subject
matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and constitutional standing is jurisdictional.
Netflix does not contest that Plaintiffs have met the other requirements for constitutional
standing, including those for associational standing.  *See Lujan*, 504 U.S. at 560-61 (identifying
injury-in-fact, causation, and redressability as "irreducible minimum" of Art. III); *see also NH
Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 71 (1st Cir. 2006), *aff'd*, 552 U.S. 364 (2008)
(discussing requirements for associational standing).

NAD member, says he would not be able to monitor all the programs his hearing children watch on Netflix without full access to captioning.  (FAC ¶ 30.)

Netflix seems to argue that Plaintiffs' standing allegations are deficient because they do not allege "which videos lack captioning and what would constitute effective captioning." (MTD at 11.)  The injury in this case is the admitted failure to provide full and equal access through the provision of closed captions on the streaming library.  The names of titles that are not captioned are irrelevant.  Moreover, the Supreme Court has instructed that "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561.[10]

### 3.  Plaintiff's Claim Is Ripe for Review.

Relying principally on the inapposite case of *McInnis-Misenor v. Maine Medical Center*, 319 F.3d 63 (1st Cir. 2003), Netflix also erroneously contends this action is not "ripe," arguing that the claim is not fit for resolution and that Plaintiffs have not suffered adequate hardship. (MTD at 10.)  A claim is "ripe" for review where it is fit for judicial decision, as opposed to a claim that involves "uncertain and contingent events that may not occur as anticipated or may not occur at all," and where there is legitimate hardship, "an inquiry that typically turns upon whether the challenged action creates a direct and immediate dilemma for the parties."  *Id.* at 70 (citations and internal quotation marks omitted); *see also Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983).

Nothing in Plaintiffs' claim is hypothetical or contingent.  Like other cases where the courts have found standing to pursue injunctive relief, Plaintiffs have specifically and credibly alleged that they would make use of the public accommodation if it were accessible, specifically

---

[10] Where, as here, a challenge to the plaintiffs' standing is made as a facial challenge based on the sufficiency of the pleadings, a court "must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff."  *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir. 1996).

here, by signing up for Netflix.  *See*, *e*.*g*., *Disabled Ams*., 405 F.3d at 64-65 ("real and immediate

threat" of discrimination existed where plaintiff alleged that he intended to return to defendant's

place of public accommodation).  These allegations—to be taken as true on this motion to

dismiss—are credible and specific given Plaintiffs' interest in movies and film; their statements

that they want to watch Netflix with friends, family and colleagues; and the many members of

NAD and WMAD who have expressed their frustration about Netflix's failure to adequately

caption its content.  (FAC at ¶¶ 30, 32, 33, 35, 38); *see also*, *e*.*g*., *Parr v. L&L Drive Inn. Rest.*,

96 F. Supp. 2d 1065, 1079-80 (D. Haw. 2000) (finding standing to sue for discrimination in a

public accommodation where plaintiff was determined to have a "sincere intent to return" in the

"totality of the circumstances")  Nor do the FCC's pending regulations pose any barrier to the

Court's determination, as discussed above.

Plaintiffs have also adequately alleged hardship.  As in *Dudley*, a real and immediate

threat of ongoing harm exists:  the challenged discriminatory policy remains "firmly in place";

Plaintiffs will remain disabled; and, particularly at this stage of the case, there should be no

dispute based on their allegations that they would subscribe to Netflix in the future.  *See* 333

F.3d at 306; *see also Parr*, 96 F. Supp. 2d at 1079-80; *cf. McMinnis*, 319 F.3d at 72-3.[11]  In short,

Plaintiffs have standing and the claim is ripe for determination.[12]

### C.  This Case Belongs in this Court.

Not only do Plaintiffs have standing to sue in any federal court, their suit is proper in this

Court.  Erroneously contending that the present case is "duplicative" of *Cullen v. Netflix, Inc.*,

---

[11] This case is far from the facts of *McInnis*, in which a disabled plaintiff did not have standing to
sue a maternity hospital for a barrier in a particular ward, because it was too hypothetical to
assume the plaintiff might become pregnant again, or what the circumstances would be when she
was pregnant, or whether she would be assigned to the same ward.  *See* 319 F.3d at 72-73.

[12] If the Court disagrees with Plaintiffs that their allegations satisfy the standing requirements,
Plaintiffs respectfully request the opportunity to offer affidavits to provide further proof
regarding any issues the Court considers necessary.

No. 5:11-cv-0199 (filed Mar. 11, 2011, N.D. Cal.) ("*Cullen*"), Netflix has moved to dismiss on the basis of the "first filed rule," or, in the alternative, for transfer under 28 U.S.C. § 1404(a).  As venue is proper in this Court,[13] Netflix has overstepped by arguing for dismissal under Federal Rule of Civil Procedure 12(b)(3), and has cited no justification for dismissal under 12(b)(6).[14] The first-filed rule does not apply because *Cullen* is significantly different from Plaintiffs' case and discretionary factors favor retention.  Transfer is improper in light of the "strong presumption in favor of the plaintiffs' choice of forum."  *See Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

### 1. The First Filed Rule Does Not Apply Because the *Cullen* Action Is Not Duplicative of this Action.

*Cullen* is a self-proclaimed consumer fraud case brought under California law, while this action states a federal claim under Title III of the ADA.  The First Circuit has explained the first-filed rule as follows: "Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision."  *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987).

This Court and other courts in the First Circuit have held that suits must be "identical," or at least have "substantial overlap" for the first-filed doctrine to apply.  *See World Energy Alts., LLC v. Settlemyre Industries, Inc.*, 671 F. Supp. 2d 215, 218 (D. Mass. 2009) ("Because the 'first-filed rule' is only implicated when two competing suits are 'identical,'" it was not applicable where the parties were seeking different remedies); *McGlynn v. Credit Store, Inc.*, 234

---

[13] Netflix does not argue that venue is improper under 28 U.S.C. § 1391, or that it is not subject to personal jurisdiction here.

[14] Netflix cites inapposite cases where duplicative litigation was filed in the *same court* or where a claim was precluded as a result of an earlier class settlement.  *See Serlin v. Arthur Anderson*, 3 F.3d 221, 224 n.1 (7th Cir. 1993); *Carey v. Hillsborough Cnty. Dep't of Corr.*, No. 05-cv-442-PB, 2006 U.S. Dist. LEXIS 23515 (D.N.H. Mar. 6, 2006); *Young v. Kelley*, 1993 U.S. Dist. Lexis 13816 (W.D.N.Y. Sept. 30, 1993).

B.R. 576, 581 (D.R.I. 1999) (finding no substantial overlap where parties differed and "issues in one case are not necessarily dispositive of those in the other"). As Plaintiffs' case is "by no means identical" and lacks "substantial overlap" with *Cullen*, Plaintiffs' choice of forum should not be disturbed. *See World Energy Alts., LLC*, 671 F. Supp. 2d at 218; *McGlynn*, 234 B.R. at 581; *see also Assoc. Fisheries of Me. v. Evans*, 329 F. Supp. 172, 174 (D. Me. 2004).

Here, the actions are far from "identical" and do not "overlap" at all. The claims, parties, and relief sought all differ. First, Plaintiffs' action makes a single claim against Netflix by failing to make its streaming video service accessible to deaf and hard of hearing individuals through closed captioning in violation of Title III of the ADA. *Cullen*, in its Second Amended Complaint, states eight causes of action, *all* for violations of California statutes. (*See* ECF. No. 21-1.) *Cullen* states no federal claims, and most of its claims involve marketing and advertising; indeed, as *Cullen*'s attorney has explained, it is a "routine consumer fraud case." (*See* Exh. D at 6:22-24.)[15] *Cullen* is a far cry from this action, which does not make any state law claims, in no way deals with marketing and advertising, and is focused exclusively on federal disability law.

Second, the parties in the two actions are different. Plaintiffs NAD and WMAD/HI are organizations with a long history working to increase access for the deaf and hard of hearing, including on captioning issues. (FAC at ¶¶ 10, 11.) Plaintiff Nettles, whom Netflix's Motion does not mention, is a deaf Massachusetts resident, and a leader in the deaf community.[16] *Cullen*, by contrast, was filed in California by a single individual, now a Washington D.C. resident. (ECF No. 21-1 at ¶ 13.) Cullen was aware of NAD's demands that Netflix caption its streaming

---

[15] While Cullen's initial complaint included an ADA claim, he admitted it was "secondary," in an administrative filing seeking relief from local rules applicable to ADA Claims. (*See* Exh. C, 2:4-9.) He further said that he wanted to avoid "the secondary ADA-claim tail wag[ging] the California-law dog," and that it was possible he would "simply dismiss the ADA claim after being reassured another hearing-impaired individual would bring a stand-alone ADA action against Defendant." (*Id.* at 6:22-24.) Cullen has dropped his ADA claim. ( ECF No. 21-1.)

[16] The Presidents of WMAD/HI, Diane Nettles, and the Massachusetts affiliate of NAD (MSAD), Alan Gifford, are also residents of Massachusetts. (FAC ¶¶ 30-38.)

content and yet, filed suit on his own.  (*See* Exh. B.). That Cullen has pleaded his case as a

putative class action does not change the analysis regarding the identity of the parties, not least

because Netflix has indicated it will challenge class certification, which will not be decided until

the middle of next year at the earliest.  (Exh. D at 5:15-169:16.)[17]

Third, this action and *Cullen* seek different relief.  Cullen seeks actual, statutory, and

punitive damages, while this action seeks no damages.  (*Compare* FAC at Prayer *with* ECF No.

21-1 at 19-20.)  The numerous injunctive remedies sought in *Cullen*, unlike the focused demand

for injunctive and declaratory relief in this case, all relate to alleged misleading advertising and

unlawful business practices.  (*See id*.)  Netflix incorrectly contends that *Cullen* "wholly

subsumes every aspect of the NAD action."  (MTD at 16 & n.5.)  Success or failure in *Cullen*

will not determine the outcome here, however, as the ADA and California disability law are not

mutually co-extensive.  *See* Cal. Gov't Code § 12926.1 ("Although the federal act provides a

floor of protection, [California] law has always … afforded additional protections."); *accord*

*Gelfo v. Lockheed Martin Corp*. 140 Cal. App. 4th 34, 57 (2006) (quoting same).  Moreover, it is

possible Cullen will be resolved on the numerous other claims in that case, without the

discrimination issues being addressed at all.  Resolution of Plaintiffs' single federal

discrimination claim should not be held hostage to the plethora of claims in *Cullen*.

Finally, Netflix's accusation that Plaintiffs "virtually cop[ied]'" the allegations of the

*Cullen* case does not bear scrutiny.  As Netflix is well aware, Plaintiffs have challenged Netflix

on its inadequate captioning and tried to obtain reform, beginning almost two years before the

*Cullen* case was filed.  (FAC at ¶¶ 23-27.)  Indeed, the email cited in *Cullen*'s complaint that

Netflix claims makes this case a "copycat" is between Netflix and a Plaintiff in this case, NAD.

(ECF No. 21-1 at ¶¶ 20, 21.)

---

[17] *Wiley v. Gerber Prods. Co.*, 667 F. Supp. 2d 171, 172 (D. Mass. 2009), cited by Netflix, does
not apply because, unlike here, the claims were "nearly identical actions," and because both the
first-filed and second-filed case were brought as nationwide class actions.

### 2. Plaintiffs' Choice of Forum and the Interests of Justice Militate for Adjudication in this Court.

Even if the first-to-file rule were applicable, the Court should exercise its discretion to retain this case because the factors in 28 U.S.C. § 1404 relevant to a motion to transfer all weigh heavily against moving the case to the Northern District of California.[18]

The first factor is a plaintiff's choice of forum, which here weighs heavily against transfer. *See Coady,* 223 F. 3d at 11; *see also Holmes*, 249 F. Supp. 2d at 17 (D. Mass. 2002) (ruling against a transfer of venue and noting that "[w]here a plaintiff chooses his home forum, such a choice usually represents considerations of convenience rather than harassment of the defendant"). Plaintiffs suspect that Netflix is attempting to transfer Plaintiffs' suit because First Circuit case law favors their ADA claim. *See Carparts*, 37 F.2d at 19 (1st Cir. 1994). There is nothing improper in Plaintiffs' filing suit in a jurisdiction with favorable case law.[19] Although it does not admit this motivation in its Motion, Netflix seeks to transfer Plaintiffs' case to the Ninth Circuit, where the ADA claim would face an uphill battle.[20]

The balance of convenience, the second relevant factor, also favors maintaining the case here. *See*, *e.g*., *Coady*, 223 F.3d at 11; *Kleinerman*, 107 F. Supp. 2d at 125. Plaintiffs WMAD and Mr. Nettles are located in Massachusetts, while NAD is headquartered on the East Coast in Maryland. Witnesses from NAD including members of its Massachusetts affiliates, WMAD/HI,

---

[18] Contrary to Netflix's argument, the discretionary factors enumerated in § 1404 are relevant even when the first-filed rule comes into play. This approach is consistent with the recognized exception to the first-filed rule where the "balance of convenience" favors the second-filed action. *See*, *e.g*., *Cianbro*, 814 F.2d at 11; *Coady*, 223 F.3d at 11; *Kleinerman v. Luxtron Corp*., 107 F. Supp. 2d 122, 125 (D. Mass. 2000).

[19] *See Gulf Oil*, 330 U.S. at 508 (the "plaintiff's choice of forum should rarely be disturbed"); 2 Newberg on Class Actions § 6.6 (4th ed.) ("Of course, the plaintiffs should select a forum that may give them an advantage over one more convenient to the defendants."). One commentator suggests that "failure to select an advantageous forum may amount to malpractice." Friedrich K. Juenger, *Forum Shopping, Domestic and International*, 63 Tul. L. Rev. 553, 572 (1989).

[20] There is a split in the circuits as to whether a public accommodation must include a physical location. *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000). DOJ supports the position of the First Circuit, as expressed in *Carparts*. 27 Fed. Reg. at 43463.

and Mr. Nettles will likely all testify if this case goes to trial—and their testimony, while important in any circumstances, will be critical if Netflix continues to press its standing argument beyond the pleadings stage, as the factual nature of Plaintiffs' injuries and their desire to join Netflix may remain at issue.[21]

The interests of justice, an explicit factor in § 1404, also compel this action to proceed in this District. Netflix operates a global business and could reasonably foresee being sued in many jurisdictions. Netflix's purported inconvenience does not outweigh the choice of forum of two non-profits and an individual. While Netflix mentions the existence of documents in California, in this electronic age, documents that may be needed for discovery and other pertinent materials can be essentially reproduced in any location. *See Princess House, Inc. v. Lindsey*, 136 F.R.D 16, 21 (D. Mass. 1991).

Transfer to the Northern District of California would also be inefficient. *Cullen* has yet to advance beyond the filing of a Second Amended Complaint, with a motion to dismiss hearing scheduled after the motion to dismiss hearing in this case, and the parties have stated they are "cautiously optimistic" towards the possibility of settlement. *See* Exh. D, at 8:18-19, 9:14-15. If *Cullen* is dismissed or settled, there will be no case to which to transfer Plaintiff's claim. Transfer, at best, would result in a shot-gun marriage in which this ADA case would be heard with a case in which such a claim was spurned. On the other hand, this case is proceeding apace, with the parties having set a schedule with which they are complying for the filing of a discovery plan under Federal Rule of Civil Procedure 26(f) as well as a Joint Case Management Statement. (*See* Mayerson Decl. ¶ 4; ECF No. 20 (Joint Stipulation and Motion).)

Finally, Netflix argues that counsel's location in California justifies transfer, but, as several courts have observed (including in a case cited by Netflix), the convenience of counsel is

---

[21] *See Lujan,* 504 U.S. at 561 (explaining that plaintiffs must support standing allegations with appropriate evidence at summary judgment and trial, if at issue.)

not relevant in deciding where to locate a suit.  *See*, *e.g*., *Scheinbart v. Certain-Teed Prods. Corp.*, 367 F. Supp. 707, 710 (S.D.N.Y. 1973).

## IV.    CONCLUSION

For all the foregoing reasons, Netflix's Motion should be denied.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Local Rule 7.1(D), Plaintiffs hereby request a hearing on Defendant Netflix, Inc.'s Motion to Dismiss First Amended Complaint (or, in the Alternative, Transfer to the Northern District of California), ECF No. 22, filed with the Court on September 12, 2011. Pursuant to electronic order of the Court entered on September 12, 2011, a hearing is set for November 8, 2011.

October 3, 2011                            Respectfully Submitted,

NATIONAL ASSOCIATION OF THE DEAF,
WESTERN MASSACHUSETTS ASSOCIATION OF
THE DEAF AND HEARING IMPAIRED, AND
LEE NETTLES,

By:                            _____/s/ *Arlene Mayerson*____
Arlene Mayerson
Charlotte Lanvers
Shira Wakschlag
DISABILITY RIGHTS EDUCATION AND DEFENSE
FUND, INC.
3075 Adeline Street, Suite 210
Berkeley, CA  94703
Telephone: (510) 644-2555
amayerson@dredf.org
clanvers@dredf.org
swakschlag@dredf.org

_____/s/ *Catha Worthman*____
Bill Lann Lee
Brad Seligman
Catha Worthman
Joshua Davidson
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
476 9th Street

Oakland, CA  94607-4048
Telephone: (510) 839-6824
bseligman@lewisfeinberg.com
blee@lewisfeinberg.com
cworthman@lewisfeinberg.com
jdavidson@lewisfeinberg.com

Christine M. Netski, BBO #546936
SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
101 Merrimac Street
Boston, MA  02114-4737
Telephone:  (617) 227-3030
netski@srbc.com

*Attorneys for Plaintiffs**

* Attorneys for Plaintiffs would like to thank law students Stephen Kiehl and Justine Moreau for their contributions to this memorandum.

## CERTIFICATE OF SERVICE

I, Laura Holtan, hereby certify that a copy of the foregoing document has been served upon all opposing counsel of record, by ECF on this 3rd day of October, 2011.

*/s/ Laura Holtan*

Laura Holtan
Legal Assistant
Lewis, Feinberg, Lee, Renaker
& Jackson, PC