# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

### SPRINGFIELD DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF THE DEAF, WESTERN MASSACHUSETTS ASSOCIATION OF THE DEAF AND HEARING IMPAIRED, and LEE NETTLES, <br><br> Plaintiffs, <br><br> v. <br><br> NETFLIX, INC., <br><br> Defendant. | Civil Action No. 3:11-cv-30168 |

**NETFLIX, INC.'S NOTICE OF MOTION AND
MOTION FOR JUDGMENT ON THE PLEADINGS;
<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

**[ORAL ARGUMENT REQUESTED]**

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..................................................................... vii

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1 ............................... viii

REQUEST FOR ORAL ARGUMENT ........................................................................ ix

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

I.     INTRODUCTION ............................................................................................ 1

II.    RELEVANT ALLEGATIONS AND BACKGROUND ................................... 3

III.   PLAINTIFFS DO NOT ALLEGE "CONTROL" UNDER THE ADA ............ 6

       A.     Applicable Law ..................................................................................... 6

       B.     Plaintiffs Do Not Allege Facts Showing Netflix Controls Captions ..... 7

IV.    PLAINTIFFS DO NOT ALLEGE A "PLACE OF PUBLIC
       ACCOMMODATION" UNDER THE ADA .................................................... 9

       A.     The Issue Is Not Whether a Website Is a "Physical Place." ................. 9

       B.     Websites and Video Programming Are Not Within the "Exhaustive"
              Enumerated Lists of "Places of Public Accommodation." ................. 10

       C.     Subsequent History Confirms the Exclusion "Was Intentional." ........ 12

V.     EVEN IF PLAINTIFFS' CLAIM CAME WITHIN THE ADA'S POTENTIAL
       SCOPE, IT CANNOT BE RECONCILED WITH THE CVAA AND FCC
       REGULATIONS ............................................................................................. 13

       A.     Applicable Law ................................................................................... 13

       B.     The CVAA Carves Out Streaming Video Captioning From the ADA ...... 15

              1.     Congress intended the CVAA and Regulations to address
                     captioning of all streaming video programming ..................... 15

              2.     Plaintiffs' interpretation of the ADA conflicts with the CVAA ..... 16

       C.     Plaintiffs' Own Statements Support Netflix On the CVAA's Scope ......... 18

VI.    PLAINTIFFS' CLAIM IS MOOT .................................................................. 19

VII.   CONCLUSION ............................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott v. Town of Salem,*
No. 05-cv-127,
2006 U.S. Dist. LEXIS 4338 (D.N.H. Feb. 2, 2006) .................................................11

*Agee v. Paramount,*
59 F.3d 317 (2d. Cir. 1995)............................................................................................8

*Barton v. Clancy,*
632 F.3d 9 (1st Cir. 2011)............................................................................................10

*Brown v. 1995 Tenet ParaAmerica Bicycle Challenge,*
959 F. Supp. 496 (N.D. Ill. 1997) .................................................................................7

*Carparts Dist. Ctr. v. Automobile Wholesaler's Ass'n,*
37 F.3d 12 (1st Cir. 1994)........................................................................................9, 10

*Castro-Soto v. Holder,*
596 F.3d 68 (1st Cir. 2010)....................................................................................10, 11

*Coddington v. Adelphi Univ.,*
45 F. Supp. 2d 211 (E.D.N.Y. 1999) .............................................................................7

*Cortez v. Nat'l Basketball Ass'n,*
960 F. Supp. 113 (W.D. Tex. 1997)...............................................................................7

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
539 U.S. 23 (2003)........................................................................................13, 14, 15

*Dixon v. Shamrock Fin. Corp.,*
522 F.3d 76 (1st Cir. 2008)......................................................................................7, 9

*Doe v. Mut. of Omaha Ins. Co.,*
179 F.3d 557 (7th Cir. 1999) ......................................................................................12

*Ford v. Schering-Plough Corp.,*
145 F.3d 601 (3d Cir. 1998).........................................................................................10

*GE HFS Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh,*
520 F. Supp. 2d 213 (D. Mass. 2007) .........................................................................19

*Gilliam v. American Broadcasting Co.,*
538 F.2d 14 (2d Cir. 1976)............................................................................................8

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**CASES (CONT'D)**

*Greenless v. Almond*,
   277 F.3d 601 (1st Cir. 2002) .......................................................................13, 14, 15

*Guckenberger v. Boston Univ.*,
   957 F. Supp. 306 (D. Mass. 1997) ..........................................................................7

*InterGen Naamloze Vennootschap v. Grina*,
   344 F.3d 134 (1st Cir. 2003) ................................................................................19

*Iverson v. Comsage, Inc.*,
   132 F. Supp. 2d 52 (D. Mass. 2001) ....................................................................10

*Iwata v. Intel Corp.*,
   349 F. Supp. 2d 135 (D. Mass. 2004) ..................................................................10

*Jankey v. Twentieth Century Fox Film Corp.*,
   14 F. Supp. 2d 1174 (C.D. Cal. 1998),
    *aff'd*, 212 F.3d 1159 (9th Cir. 2000) ...................................................................10

*Kepner v. United States*,
   195 U.S. 100 (1904) .............................................................................................13

*Lopez v. Massachusetts*,
   588 F.3d 69 (1st Cir. 2009) ..................................................................................10

*Nat. Resources Def. Council, Inc. v. Envt'l Prot. Agency*,
   824 F.2d 1258 (1st Cir. 1987) ..............................................................................13

*Neff v. American Dairy Queen Corp.*,
   58 F.3d 1063 (5th Cir. 1995),
    *cert. denied*, 516 U.S. 1045 (1996) ...................................................................6, 7

*Oakville Dev. Corp. v. Fed. Deposit Ins. Co.*,
   986 F.2d 611 (1st Cir. 1993) ................................................................................19

*Parker v. Metro. Life Ins. Co.*,
   121 F.3d 1006 (6th Cir. 1997) ..............................................................................10

*Pickern v. Pier 1 Imps. (U.S.), Inc.*,
   457 F.3d 963 (9th Cir. 2006) ..............................................................................6, 7

*Sprietsma v. Mercury Marine*,
   537 U.S. 51 (2002) ...............................................................................................16

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

CASES (CONT'D)

*Stewart v. Abend*,
    495 U.S. 207 (1990)..................................................................................8

*Stewart v. Smith*,
    673 F.2d 485 (D.C. Cir. 1982)..................................................................13

*Wattleton v. Doe*,
    No. 10-11969, 2010 U.S. Dist. LEXIS 137541 (D. Mass. Dec. 14, 2010)...........................11

*Weyer v. Twentieth Century Fox Film Corp.*,
    198 F.3d 1104 (9th Cir. 2000) ..................................................................10

*WGN Continental Broadcasting Co. v. United Video, Inc.*,
    693 F.2d 622 (7th Cir. 1982) ..................................................................8

*Zulauf v. Kentucky Educational Television*,
    28 F. Supp. 2d 1022 (E.D. Ky. 1998) ..................................................14, 15, 17

STATUTES

ADA Amendments Act of 2008, Pub. L. 110-325 (Sept. 25, 2008)|
    § 2................................................................................................12

Twenty-First Century Communicationss and Video Accessibility Act of 2010,
    Pub. L. No. 111-260, 124 Stat. 2751 (Oct. 8, 2010)
    § 201(a) ..................................................................................4, 17
    § 202(b) ...............................................................................3, 4, 15
    § 202(f)......................................................................................17

17 USC
    § 1201(a) ......................................................................................8

42 USC
    § 12181(7)...................................................................................11
    § 12182(a) ...............................................................................6, 9

47 USC
    § 613(a)(2)(A) .............................................................................16
    § 613(b).....................................................................................15
    § 613(c)(2)(D)(iii) .........................................................................16
    § 613(c)(2)(D)(iv) .........................................................................16

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

**STATUTES (CONT'D)**

47 USC (cont'd)
§ 613(c)(2)(D)(v) ............................................................................16
§ 613(c) ..........................................................................................15
§ 613(c)(2)(A) ..................................................................................3
§ 613(c)(2)(D)(ii) ......................................................................16, 18
§ 613(d) ..........................................................................................15
§ 613(j) ............................................................................................17

**REGULATIONS**

FCC, *Report and Order: In the Matter of Closed Captioning of Internet Protocol-
Delivered Video Programming:  Implementation of the Twenty-First Century
Communications and Video Accessibility Act of 2010*, FCC 12-9 (Jan. 13, 2012),
summarized and pub'd at 77 Fed. Reg. 19,480 (Mar. 30, 2012) ................1, 4, 5, 6, 16, 17, 18

28 CFR
§ 36.104............................................................................................11

47 CFR
§ 79.4..................................................................................................1
§ 79.4(f)............................................................................................17

**LEGISLATIVE AND REGULATORY HISTORY**

DOJ, Adv. Notice of Proposed Rulemaking, *Nondiscrimination on the Basis of
Disability; Accessibility of Web Information and Services of State and Local
Government Entities and Public Accommodations*,
75 Fed. Reg. 43,460 (July 26, 2010) ....................................................12

FCC, Notice of Proposed Rulemaking, *Closed Captioning of Internet Protocol-Delivered
Video Programming: Implementation of the Twenty-First Century Comm'ns and
Video Access. Act of 2010*, 76 Fed. Reg. 59,963 (Sept. 28, 2011)............................5

FCC Public Notice, *Notice of Effective Date of New IP Closed Captioning Rules*,
DA 12-505 (Mar. 30, 2012) ....................................................................6

FCC Public Notice, *Video Programming and Emergency Access Advisory Comm.
Announcement of Members*, DA 10-2320 (Dec. 7, 2010)............................4

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

LEGISLATIVE AND REGULATORY HISTORY (CONT'D)

FCC Public Comments in Response to Notice of Proposed Rulemaking ,
  *Comments of Google, Inc.* (Oct. 18, 2011) .......................................................5, 17
  *Comments of NAD et al.* (Nov. 1, 2011) ..............................................................5
  *Reply Comments of NAD et al.* (Nov. 1, 2011) ............................................5, 18, 19

House Comm. on Energy and Commerce, Conf. Rep.,
  H. Rep. 11-563 (July 26, 2010)............................................................................3, 15

Senate Comm. on Commerce, Science and Transp. Conf. Rep.
  S. Rep. No. 111-386 (Dec. 22, 2010)..................................................................3, 15

Fed. Reg. Unified Agenda 1190-AA63,
  http://federalregister.gov/r/1190-AA63 (Fall 2011) ................................................12

TREATISES

Norman J. Singer & J.D. Shambie Singer, *Southerland's Statutes and Statutory
  Construction* (7th ed. 2008)
  § 51:2 .......................................................................................................................13

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on June 11, 2012, at 10:00 a.m., or as soon thereafter as this matter may be heard before The Honorable Michael A. Ponsor in the Hampden Courtroom, located at 300 State Street, Springfield, Massachusetts 01105, defendant Netflix, Inc. ("Netflix") will, and hereby does, move for an order dismissing with prejudice the entire First Amended Complaint (the "FAC")—premised entirely on violation of Americans with Disabilities Act (the "ADA")—under Federal Rule of Civil Procedure 12(c) on the following independent grounds:

1.     Plaintiffs fail to allege Netflix has specific control over captions Plaintiffs seek;

2.     Plaintiffs fail to allege the existence of an actionable "place of public accommodation";

3.     Plaintiffs' interpretation of the ADA is precluded by the Twenty-First Century Communications and Video Accessibility Act (the "CVAA") and implementing regulations, which exclude captioning of streaming video programming from the ADA's scope; and

4.     Plaintiffs' claim is moot.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Request for Judicial Notice filed herewith, all other pleadings and papers on file herein, and such other argument and evidence as may be presented.

May 1, 2012                    NETFLIX, INC., by its counsel,

By:    _____/s/ David F. McDowell_____
          David F. McDowell (*pro hac vice*)

MORRISON & FOERSTER LLP
David F. McDowell (CA Bar No. 125806) (*pro hac vice*)
Jacob M. Harper (CA Bar No. 259463) (*pro hac vice*)
555 West Fifth Street, Suite 3500
Los Angeles, California  90013-1024
Telephone:     213-892-5200
Facsimile:      213-892-5454

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1</u>

Pursuant to Local Rule 7.1(a)(2), counsel met and conferred on April 30, 2012, in a good

faith attempt to resolve or narrow the issues raised in this Motion.

May 1, 2012                    NETFLIX, INC., by its counsel,

By:  _____/s/ David F. McDowell_____
     David F. McDowell (*pro hac vice*)

     MORRISON & FOERSTER LLP
     David F. McDowell (CA Bar No. 125806) (*pro hac vice*)
     Jacob M. Harper (CA Bar No. 259463) (*pro hac vice*)
     555 West Fifth Street, Suite 3500
     Los Angeles, California  90013-1024
     Telephone:    213-892-5200
     Facsimile:     213-892-5454

## <u>REQUEST FOR ORAL ARGUMENT</u>

Netflix hereby requests oral argument on the Motion submitted herewith.

May 1, 2012              NETFLIX, INC., by its counsel,

                        By: _____/s/ David F. McDowell_____
                             David F. McDowell (*pro hac vice*)

                             MORRISON & FOERSTER LLP
                             David F. McDowell (CA Bar No. 125806) (*pro hac vice*)
                             Jacob M. Harper (CA Bar No. 259463) (*pro hac vice*)
                             555 West Fifth Street, Suite 3500
                             Los Angeles, California  90013-1024
                             Telephone:     213-892-5200
                             Facsimile:     213-892-5454

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I.      **INTRODUCTION.**

By bringing this action under the Americans with Disabilities Act, Plaintiffs attempt to force a square peg into a round hole.  Plaintiffs, two organizations and an individual led by the National Association of the Deaf, seek an extraordinary, overreaching, and unprecedented reinterpretation of the ADA, thrusting that statute into a realm that its language, legislative history, and regulations do not support:  closed captioning of streaming video programming. Captioning of video programming is not like dropping a ramp over a lawn; issues of copyright ownership, control, practical burdens, and economic reality greatly complicate the process in ways the ADA does not and cannot address.

The peg that fits is the Twenty-First Century Communications and Video Accessibility Act (the "Act" or "CVAA").[1]  The Act directed the Federal Communications Commission ("FCC")—with the help of a committee of industry and consumer group representatives (including NAD)—to find a way of captioning streaming content while properly wrestling with these complications.  The FCC did so, and that effort culminated in the FCC's CVAA regulations (the "Regulations"),[2] a well-rounded system that guarantees accessibility to streaming video while balancing the other considerations ignored by the ADA, as Congress intended.

_____

[1] Request for Judicial Notice ("RJN"), Ex. A, Twenty-First Century Comm'ns and Video Access. Act of 2010, Pub. L. No. 111-260, 124 Stat. 2751, codified at 47 USC § 613 (Oct. 8, 2010).

[2] RJN Ex. B, FCC, *Report and Order: In the Matter of Closed Captioning of Internet Protocol-Delivered Video Programming:  Implementation of the Twenty-First Century Communications and Video Accessibility Act of 2010*, FCC 12-9 (Jan. 13, 2012) (codified in relevant part at 47 CFR §§79.4 et seq.), summarized and pub'd at 77 Fed. Reg. 19,480 (Mar. 30, 2012) ("This is a summary of the Commission's *Report and Order,* FCC 12–9").

Plaintiffs hope the ADA will give them more than that balance can bear.  As the newly minted regulations make clear, their ill-fitting interpretation of the ADA fails as a matter of law.

**_First_**, Plaintiffs do not state an ADA claim because Plaintiffs fail to meet their burden to show Netflix has "sufficient control over the modification"—captioning—that Plaintiffs seek. Plaintiffs' interpretation, which wholly ignores the critical issue of whether Netflix even has the legal right to caption all the video programming Plaintiffs' seek, would have Netflix create infringing derivative works that conflict with the video owners' copyrights.  Without the requisite control, the ADA does not apply.

**_Second_**, Plaintiffs' claims do not involve a "place of public accommodation."  To the contrary, the ADA's text, regulations, and legislative history all show Congress and the Department of Justice ("DOJ") affirmatively rejected the tenuous interpretation Plaintiffs propose here:  that the ADA applies to video programming or websites—particularly in light of the on-point CVAA.

**_Third_**, even if, *arguendo*, this action facially came within the realm of the ADA, the CVAA "carves out" closed captioning of streaming video programming from the ADA's scope in this context.  Addressing the technical, practical, economic, and legal limitations the ADA ignores, the CVAA and regulations assign primary captioning responsibilities to programming owners, not distributors like Netflix; impose a two-year grace period for compliance to allow involved parties to work through initial practical difficulties; address captioning problems through a comprehensive case-by-case complaint mechanism; and "protect[] from liability" good faith captioning efforts.  Brushing aside that measured approach, Plaintiffs' irreconcilable interpretation of the ADA would impose captioning responsibilities *directly on Netflix*, do so *immediately*, through a *prohibited private right of action* outside the exclusive complaint

procedures, and *despite exemptions from liability*.  Plaintiffs' interpretation simply does not withstand scrutiny in light of the CVAA and new Regulations.

   **_Fourth_**, the case is moot anyway, as the CVAA's effective date—April 30, 2012—has now passed, and the Regulations are now in effect.

   For these reasons, Plaintiffs' claim fails as a matter of law.

   **II.    RELEVANT ALLEGATIONS AND BACKGROUND.**

   ***Early Captioning Efforts (2008–2009).***  Plaintiffs allege that in January 2008, Netflix began offering video programming over the Internet to "Watch Instantly" Netflix subscribers (ECF No. 19, 1st Am. Compl. ["FAC"], ¶¶ 16, 17.)  Netflix began voluntarily offering closed captioning on an increasing number of video programming titles, and stated that "we will be working to fill in the library over time." (*Id.* ¶¶ 17–19, citation omitted.)  Netflix explained, though, that technical challenges and practical considerations prevented immediate captioning of all streaming video programming.  (*Id.*)  Notwithstanding the problems, members of the deaf and hard of hearing community complained about the pace of captioning of content supposedly accessed by Netflix subscribers.  (*Id.* ¶¶ 20–27.)

   ***Congress Addresses Captioning Through the CVAA (2010).***  In October 2010, Congress enacted the CVAA, directing the FCC to "revise its regulations to require the provision of closed captioning on video programming delivered using Internet protocol."  (Ex. A, CVAA § 202(b), 124 Stat. at 2770, codified at 47 USC § 613(c)(2)(A).)  The CVAA serves two purposes.  First, it ensures that "individuals with disabilities are able to fully utilize communications services and equipment and better access video programming."  (RJN Ex. C, Senate Comm. on Commerce, Science and Transp., Conf. Rep. ["Senate Report"], S. Rep. No. 111-386, at 1 (Dec. 22, 2010).)  Second, given the technical and practical issues of the type cited by Netflix, the CVAA prohibits "application of [closed captioning] regulations [that] would be economically burdensome."  (RJN

Ex. D, House Comm. on Energy and Commerce, Conf. Rep., ["House Report"] H. Rep. 11-563, at 30 (July 26, 2010).)

Congress assigned the FCC responsibility for drafting captioning regulations, and required that it consult with the CVAA-created Video Programming Accessibility Advisory Committee (the "Advisory Committee") to meet the statute's dual goals.  (RJN Ex. A, CVAA § 201(a)–(b), 124 Stat. at 2764–65.)  NAD is a prominent member Advisory Committee; Netflix is not.  (RJN Ex. E, FCC Public Not., Video Programming and Emergency Access Advisory Comm. Announcement of Members, DA 10-2320 (Dec. 7, 2010) ["Advisory Committee Roster"] at 2–3.  The NAD, the FCC and the Advisory Committee were to spend 12 months drafting the regulations, with a deadline of January 2012.  (Ex. A § 202(b), 124 Stat. at 2770–71.)

***This Lawsuit (June 2011).***  On June 16, 2011—months after the FCC, Advisory Committee, and NAD began their meetings, but well before the CVAA-set January 2012 deadline to finish the regulations—NAD and Plaintiffs filed this action, alleging Netflix violated the ADA by failing to caption video programming delivered to Netflix subscribers through "Watch Instantly," a streaming video website.  (ECF No. 1, 19 ["FAC"] ¶¶ 1–6, 14–27, 46–56.)[3] Plaintiffs do not state facts describing what programming lacks captioning, whether Netflix controls (or can control) the alleged lack of captions, or even whether any plaintiff actually viewed a lack of captions.  That paucity of factual allegations notwithstanding, Plaintiffs seek a declaration that "Defendant's failure to provide closed captions to its Watch Instantly" violates the ADA, and an injunction requiring Netflix "to provide effective communication through closed captioning on Watch Instantly content."  (ECF No. 19, FAC, Prayer for Relief ¶¶ 1, 2.)

---

[3] After Netflix filed its initial motion to dismiss, Plaintiffs filed the operative complaint, the First Amended Complaint, on August 9, 2011.  (ECF No. 19.)

*CVAA Notice and Comment Period, and Stay in This Case (Sept.–Nov. 2011).*   On September 12, Netflix filed a motion to dismiss, stay or transfer, in part asking the Court to allow the FCC to complete its rulemaking procedures under the CVAA.  (ECF No. 22.)

On September 28, the FCC issued a Notice of Proposed Rulemaking requesting public comment on, *inter alia*, the scope of the statute, the technical and economic feasibility of captioning, practicability of deadlines, and standards for regulating captioning.  (RJN Ex. F, FCC, Not. of Prop. Rulemaking, *Closed Captioning of Internet Protocol-Delivered Video Programming:  Implementation of the Twenty-First Century Comm'ns and Video Access. Act of 2010* ["FCC Notice of Proposed Rulemaking"], 76 Fed. Reg. 59,963 (Sept. 28, 2011).)

On October 18 and November 1, NAD and others filed public comments in response. (*See, e.g.*, RJN Ex. G, Public Comments in Response to FCC Notice of Proposed Rulemaking, *Comments of NAD et al.*  (Oct. 18, 2011) ["NAD Comments"]; Ex. H, Public Comments in Response to FCC Notice of Proposed Rulemaking , *Reply Comments of NAD et al.* (Nov. 1, 2011) ["NAD Reply Comments"]; Ex. I, Public Comments in Response to FCC Notice of Proposed Rulemaking , *Comments of Google, Inc.* (Oct. 18, 2011) ["Google Comments"].)  In those public comments, NAD interpreted the CVAA broadly to encompass all video programming displayed over the Internet, including all programming that "has been previously been [*sic*] 'published or exhibited on television with captions' at any time prior to or simultaneously with the Internet delivery."  (RJN Ex. G, NAD Comments, at 5; *see id.* Ex. H, decrying "limits" on CVAA's scope.)

NAD's representations to the FCC contrast sharply with its primary argument in this litigation:  that the CVAA "covers, at best, only a subset of the content Plaintiffs seek to caption—post-January 2012 television programming."  (ECF No. 26, "Corrected Opp'n," 8.)

On November 8, the Court granted a stay of the litigation to permit the FCC to complete its regulations.  (ECF No. 32, at 2.)

***Publication of Final Regulations and Stay (Jan. 2012).***  On January 13, 2012, the FCC issued its Final Report and Order (summarized and published in the Federal Register on March 30, 2012).  (RJN Ex. B, Regulations.)  Among other things, the Regulations defined captioning responsibilities for distributors, set deadlines and grace periods for compliance, prohibited "private rights of action," and established a mandatory complaint procedure for captioning inadequacies.  (*See generally id.*: *see also infra* Part V.B.2.)  Without these limitations, the FCC concluded captioning would become "overly burdensome" and "may cause [distributors] to refrain from posting videos online."  (RJN Ex. B, Regulations ¶ 17.)

***Effective Date (April 30, 2012).***  The FCC set the effective date of the Regulations at April 30, 2012.  (RJN, Ex. J, FCC Public Not., *Notice of Effective Date of New IP Closed Captioning Rules*, DA 12-505 (Mar. 30, 2012) ["Effective Date Notice"] at 1.)

### III.   PLAINTIFFS DO NOT ALLEGE "CONTROL" UNDER THE ADA.

#### A.   Applicable Law.

Plaintiffs contend Netflix violated the ADA by failing to provide closed captioning on streaming video programming made available to Netflix subscribers.  (FAC ¶ 49; *see id.* ¶ 4 ["Just as buildings without ramps bar people who use wheelchairs, video content without captions excludes deaf and hard of hearing individuals"].)  But to plead a violation of the ADA, Plaintiffs must show Netflix "owns, leases (or leases to), or operates" the programming that Netflix allegedly failed to caption.  42 USC § 12182(a).  Plaintiffs fail to do so.

The First Circuit has not addressed the meaning of "own[], lease[], or operate[]."  This District has followed the Fifth and Ninth Circuits, which define the relevant inquiry as "whether [the defendant] ***specifically controls the modification*** of the [things at issue] to improve their

accessibility to the disabled." *Neff v. American Dairy Queen Corp.*, 58 F.3d 1063, 1066, 1067–170 (5th Cir. 1995), *cert. denied*, 516 U.S. 1045 (1996)) (affirming dismissal of ADA claim; explaining "operate" implies "control") (emphasis added); *Pickern v. Pier 1 Imps. (U.S.), Inc.*, 457 F.3d 963, 964, 965, 966–67 (9th Cir. 2006) (affirming dismissal of ADA claim alleging defendant failed to place ramp over lawn defendant did not own because defendants "do not manage the strip of grass, mow it, or maintain it in any manner"; following *Neff* ); *see Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 322–23 (D. Mass. 1997) (granting motion to dismiss ADA action against defendant who lacked "the authority, control, or discretion that is necessary for one to be deemed an 'operator' of a place of public accommodation"; following *Neff* and *Pickern*).   Thus, where the defendant does not control the "ramp"—the means of access—it cannot be held liable under the ADA. *Pickern*, 457 at 963–67; *see also Coddington v. Adelphi Univ.*, 45 F. Supp. 2d 211, 217 (E.D.N.Y. 1999) (noting ADA applies only to "individuals who have the power to facilitate any necessary accommodation.").

Courts here and elsewhere repeatedly grant motions to dismiss where, as here, a plaintiff fails to allege defendant exercises sufficient "control" to adopt the requested modification. *E.g.*, *Guckenberger*, 957 F. Supp. at 322 (D. Mass. 1997) (granting motion to dismiss Title III claims because defendant did not exercise "control" over the sought-after modification); *Coddington*, 45 F. Supp. 2d at 213–218 (same)[4]; *Cortez v. Nat'l Basketball Ass'n*, 960 F. Supp. 113, 117 (W.D. Tex. 1997) (same); *Brown v. 1995 Tenet ParaAmerica Bicycle Challenge*, 959 F. Supp. 496, 499 n.1 (N.D. Ill. 1997) (same).   This motion should also be granted.

---

[4] The decision erroneously states the court granted a "motion for summary judgment," *id.* at 218, but the rest of the opinion clarifies it concerned a motion to dismiss, *id.* at 213–14.

**B.**     **Plaintiffs Do Not Allege Facts Showing Netflix Controls Captions.**

Plaintiffs cannot credibly allege Netflix sufficiently controls the captioning to make it liable under the ADA.  As the threshold, Plaintiffs merely speculate that, because Netflix maintains a website through which subscribers can view the programming, Netflix has the ability to modify all the content available for viewing.  (FAC ¶ 6.)  Such speculation does not suffice. *See Dixon v. Shamrock Fin. Corp.*, 522 F.3d 76, 79 (1st Cir. 2008) (affirming dismissal for failure to "'raise a right to relief above the speculative level,'" and rejecting plaintiff's "'unsupported conclusions or interpretations of law.'") (*quoting Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)).

No legal basis supports Plaintiffs' speculative theory because programming distributors like Netflix lack the legal right to engage in captioning.  That ownership and control belongs to the programming *owners*, who alone hold the exclusive rights necessary to caption content, including reproduction rights, adaptation rights, distribution rights, and public performance rights to copy and modify audiovisual works.  To caption video programming is to create a derivative work, which is "infringing" if done without the underlying copyright owner's permission.  *Stewart v. Abend*, 495 U.S. 207, 223, 235 (1990) (noting Copyright Act "requires consent by the author of the pre-existing work before the derivative work may be produced"); *see Agee v. Paramount*, 59 F.3d 317, 324 (2d. Cir. 1995) (explaining that Paramount infringed plaintiff's reproduction rights at the moment it put portions of his recording on tape to make a segment for another medium; *WGN Continental Broadcasting Co. v. United Video, Inc.*, 693 F.2d 622 (7th Cir. 1982) (holding that unauthorized "teletexting" of broadcasts, like unauthorized "subtitles," infringe broadcaster copyrights); *Gilliam v. American Broadcasting Co.*, 538 F.2d 14, 21 (2d Cir. 1976) (holding "unauthorized editing of the underlying [movie]"

edits to movie violated owner's copyrights; "the ability of the copyright holder to control his work remains paramount in our copyright law.").

In addition, captioning may also require Netflix to decrypt digital rights management protections that accompany video files, a separate violation of the Digital Millennium Copyright Act, which prohibits "circumvent[ing] a technological measure that effectively controls access to a work protected" by copyright, including by "decrypt[ing] an encrypted work." 17 USC § 1201(a).

In this context, the ADA's "control" requirement ensures that a defendant is not placed in the precarious position of providing an accommodation that would interfere with the rights of others.  (The CVAA addresses these concerns by assigning primary captioning responsibilities to programming *owners*, *see infra* Part V.B.2.)  As a result, Plaintiffs' claim fails.

## IV.   PLAINTIFFS DO NOT ALLEGE A "PLACE OF PUBLIC ACCOMMODATION" UNDER THE ADA

### A.   The Issue Is Not Whether a Website Is a "Physical Place."

Even if, *arguendo*, Netflix had sufficient control over the material to be captioned, the ADA imposes on Plaintiffs the additional burden to show that a "place of public accommodation" is at issue.  42 USC § 12182(a).  Plaintiffs instead make the threadbare conclusory assertion that "the Netflix Watch Instantly website is a 'place of public accommodation'" without actual factual allegations or legal basis.  (FAC ¶ 6); *cf. Dixon*, 522 F.3d at 79 ("unsupported conclusions or interpretations of law" inappropriate).  The ADA does not support Plaintiffs' theory.

At the outset, this is *not* simply about whether Netflix's streaming video is a "physical place," the only relevant issue in *Carparts Distribution Center v. Automobile Wholesaler's Association*, 37 F.3d 12, 20 (1st Cir. 1994).  In *Carparts*, the court addressed whether the district

9

court correctly concluded that a health insurance plan could not constitute a "place of public accommodation" simply because a plan was not a "physical" place. *Id.* at 18–19.  Finding the statutory language "general and ambiguous" and the available legislative and regulatory history similarly unhelpful, *Carparts* came to the narrow conclusion that a place of public accommodation "might, in some circumstances," include things that are not "actual, physical structures." *Id.* at 19 (emphasis added).  Because "the case must be remanded on other grounds," noted the court, it directed the district court also to determine whether those such circumstances were present in the health plan in that case. *Id.*

The First Circuit has subsequently noted *Carparts* stands for that narrow proposition and nothing more, and has distinguished it more than once as involving "an unusual set of facts, and a particular procedural posture." *Barton v. Clancy*, 632 F.3d 9, 19 (1st Cir. 2011); *Lopez v. Massachusetts*, 588 F.3d 69, 88 (1st Cir. 2009) (same); *see also Iwata v. Intel Corp.*, 349 F. Supp. 2d 135, 145 (D. Mass. 2004) ("[*Carparts*] acknowledged the possibility that the public accommodations provisions of Title III *might* apply to health benefit plans, at least in some circumstances.") (emphasis added).  Other circuits have questioned its viability outright.[5]

In any event, *Carparts* is not nearly as broad as Plaintiffs contend, and provides no support for the notion that video programming or websites are places of public accommodation.

### B.     Websites and Video Programming Are Not Within the "Exhaustive" Enumerated Lists of "Places of Public Accommodation."

Independent of whether a place of public accommodation includes "non-physical" locations, the statute does not include anything like websites or streaming video programming

---

[5] *See, e.g.*, *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000) (holding that an insurer administering a disability plan is not a place of public accommodation; "the authority underlying *Carparts* has been largely repudiated"); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998) (noting *Carparts* failed to construe statute correctly); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) ("a public accommodation is a physical place").

among the ADA's two statutory and regulatory lists defining "place of public accommodation", which are "exhaustive, not merely exemplary or illustrative." *Jankey v. Twentieth Century Fox Film Corp.*, 14 F. Supp. 2d 1174, 1178 (C.D. Cal. 1998), *aff'd*, 212 F.3d 1159, 1161 (9th Cir. 2000) (applying *Carparts*, 37 F.3d at 20).

The First Circuit interprets silence from an exhaustive list to mean "this exclusion was intentional." *Castro-Soto v. Holder*, 596 F.3d 68, 73 n.5 (1st Cir. 2010) (applying *expressio unius est exclusio alterius* canon to find challenged conduct did not come within scope of regulations under immigration statute); *see Iverson v. Comsage, Inc.*, 132 F. Supp. 2d 52, 55 (D. Mass. 2001) (applying *expressio unius* canon to ADA; "The incorporation of one statutory provision to the exclusion of another must be presumed intentional.")

Here, none of the 12 enumerated categories of "place[s] of public accommodation," 42 USC § 12181(7)—hotels; restaurants; theaters; auditoria; retail centers; personal service providers; public transportation terminals; museums and libraries; parks and zoos; schools; social service establishments; and recreation centers—include websites or video programming. The same is true of the implementing regulations, codified at 28 CFR § 36.104. Section 36.104 defines place of public accommodation, in relevant part, as "a facility operated by a private entity whose operations . . . fall within one of the [categories enumerated by § 12182(7)." *Id.* "Facility," in turn, is defined as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located." *Id.* Again, the Internet or videos are not listed "place[s] of public accommodation."

Because the "place" at issue here does not fall within any of the enumerated categories, it does not come within the ADA's scope. *E.g.*, *Wattleton v. Doe*, No. 10-11969, 2010 U.S. Dist.

LEXIS 137541, at *4 (D. Mass. Dec. 14, 2010) (granting motion to dismiss ADA claim against

prison because "Title III does not include the Bureau of Prisons, or any other federal entity,

among its exhaustive list of public accommodations"); *Abbott v. Town of Salem*, No. 05-cv-127,

2006 U.S. Dist. LEXIS 4338, at *7–10 (D.N.H. Feb. 2, 2006) (granting motion to dismiss

because defendant "operates a security service[,] not [] a place of public accommodation").

### C.     Subsequent History Confirms the Exclusion "Was Intentional."

Congress's and the DOJ's intentional decisions not to expand those lists to include the

conduct here confirms the exclusion of websites and video programming from 42 USC

§ 12181(7) and 28 CFR § 36.104 "was intentional."  *Castro-Soto*, 596 F.3d at 73.

The DOJ has repeatedly failed to include websites and video programming in final

regulations implementing the ADA.  In 2008, the DOJ issued a Notice of Proposed Rulemaking

to add closed captions to the list of accommodations required by the ADA, but ultimately

decided *not* to issue those regulations, citing "significant setbacks" to businesses resulting from

the recent recession, rapid technological development, and considerations that would "make any

regulatory requirements for captioning . . . more difficult . . . to implement."  Fed. Reg. Unified

Agenda 1190-AA63, http://federalregister.gov/r/1190-AA63 (Fall 2011).  In 2010, the DOJ

issued another Notice of Proposed Rule Making that would have applied the ADA to the

Internet, *but the DOJ declined to adopt those proposed regulations*[6] (presumably because the

CVAA was well on its way to becoming law).  And while the failure to complete those

regulations is telling, the regulations they have merely proposed have no legal weight.  *See Doe*

---

[6] DOJ, Proposed Rule, *Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations*, 75 Fed. Reg. 43,460 (July 26, 2010).

*v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 563 (7th Cir. 1999) (incomplete agency statements cannot "claim much democratic legitimacy to set over against the intent of Congress").

Congress has also declined to update the statute to include websites and video programming among the enumerated categories of "place[s] of public accommodation," despite making several amendments to the ADA since 1990.  *E.g.*, ADA Amendments Act of 2008, § 2, Pub. L. 110-325 (Sept. 25, 2008) (expanding set of individuals covered by the ADA). Instead, Congress elected to place regulation of captioning of Internet-based content within the direct and exclusive realm of the CVAA and FCC.  (*See infra* Part V.B.1.)  The Court should decline Plaintiffs' invitation to legislate a new addition to the ADA's "exhaustive" lists.

**V.   EVEN IF PLAINTIFFS' CLAIM CAME WITHIN THE ADA'S POTENTIAL SCOPE, IT CANNOT BE RECONCILED WITH THE CVAA AND FCC REGULATIONS.**

**A.   Applicable Law.**

Even if, *arguendo*, Plaintiffs' potentially raised a facial ADA claim, Plaintiffs' interpretation of the ADA would conflict with the CVAA, which specifically addresses the conduct (accessibility to streaming video) and remedy (closed captioning) at issue.

It is long-settled "that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling." *Kepner v. United States*, 195 U.S. 100, 125 (1904) (citations omitted); *Nat. Resources Def. Council, Inc. v. U.S. Envt'l. Prot. Agenc*y, 824 F.2d 1258, 1278 (1st Cir. 1987) ("the most recent and more specific congressional pronouncement will prevail over a prior, more generalized statute."); 2B Norman J. Singer & J.D. Shambie Singer, *Southerland's Statutes and Statutory Construction* § 51:2 (7th ed. 2008) ("If there is an irreconcilable conflict between a new provision and prior statutes, the new provision will control as it is the later expression of the

legislature."). Simply put, "[a] statutory interpretation that renders another statute superfluous is [] to be avoided." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 35 (2003).

Thus, the First Circuit will harmonize conflicting statutes by interpreting the later statute to "*carve out*" a specific area "from the reach of" the older, more general one. *Greenless v. Almond*, 277 F.3d 601, 608–09 (1st Cir. 2002); *see Stewart v. Smith*, 673 F.2d 485, 492 (D.C. Cir. 1982) ("When one statute speaks in general terms while the other is specific, conflicting provisions may be reconciled by carving out an exception from the more general enactment for the more specific statute."). Thus, the later statute "can be deemed an exception to the general rule enunciated in the other statute." 2B Singer, *Southerland's Statutory Construction* § 51:2.

The Supreme Court and First Circuit routinely dismiss claims premised on statutes where the subject matter has been implicitly carved out by a later statute. *See, e.g.*, *Dastar Corp.*, 539 U.S. at 33–35 (dismissing claims; carving out "misrepresentation of origin of noncopyrighted works" from scope of the Lanham Act, which facially covers "false designation of origin," because the claim would have rendered "superfluous" the later Visual Artists Rights Act, "which addresses that subject specifically"); *Greenless*, 277 F.3d at 604, 605, 609 n.8 (dismissing claims; carving out entitlement to federal money from the scope of prior tobacco settlement statute, which facially entitled victims to all "remainder" proceeds remaining after reimbursement to "states").

These principles were applied to carve out closed captioning of television programming from the scope of the ADA in *Zulauf v. Kentucky Educational Television*, 28 F. Supp. 2d 1022 (E.D. Ky. 1998). There, a deaf television viewer claimed a television station's lack of closed captioning violated the ADA. *Id.* at 1023. The Video Programming Accessibility Act of 1996 ("VPAA"), however, was "the latest and most specific statute addressing a broadcaster's duty to

14

provide closed captioning for its video programming." *Id.* at 1023.  Under the VPAA, "Congress

directed the [FCC] to establish appropriate deadlines for the closed captioning of video

programming, taking into account the realities of the marketplace . . . . Consistent with its

mandate, the FCC adopted rules implementing the VPAA. " *Id.* at 1023.  Because the later and

more specific statute "controls the earlier and more general one," the court dismissed the action.

*Id.*at 1024 ("If the Court ruled any other way, . . . [the VPAA] would be rendered meaningless

because every plaintiff would circumvent [it] by suing under the ADA.")

Here, as in *Dastar*, *Greenless*, and *Zulauf*, the specific and recent statute (the CVAA)

carves certain conduct (closed captioning of streaming video programming) from the scope of

the older and more general statute (the ADA).

**B.    The CVAA Carves Out Streaming Video Captioning From the ADA.**

**1.    Congress intended the CVAA and Regulations to address captioning of all streaming video programming.**

Even if the ADA potentially applied on its face to Plaintiffs' claims, Congress intended

the CVAA and FCC to carve captioning of streaming video programming from the ADA's

scope.

This intended carve out is clear from the CVAA's purpose.  Congress intended the

CVAA to ensure that "individuals with disabilities are able to fully utilize communications

services and equipment and better access video programming."  (Ex. C, Senate Report, S. Rep.

No. 111-386, at 1; *see* Ex. B, Regulations ¶ 1 ("The rules we adopt here will better enable

individuals who are deaf or hard of hearing to view IP-delivered video programming, as

Congress intended.").)  The CVAA also accounts for the technical and economic issues involved

in this form of access, because of which Congress prohibited "application of [captioning]

regulations [that] would be economically burdensome."  (RJN Ex.C, Senate Report, S. Rep. No.

111-386, at 1, 13; *see id.* Ex. D, House Report, H. Rep. 11-563, at 15, 30 (same).  Otherwise,

"overly burdensome standards may cause [distributors] to refrain from posting videos online."

(RJN Ex. B, Regulations ¶ 17, applying 47 USC § 613(d).)

The carve-out is also clear from the CVAA's scope.  The CVAA applies to all streaming

video programming produced at any time, including anything that will have been exhibited on

television "prior to" or "after" the effective date (April 30, 2012). *see* RJN Ex. A, CVAA

§ 202(b), 124 Stat. at 2767 (codified at 47 USC § 613(c)) (incorporating § 613(b) and requiring

the FCC to regulate according to its standards).  As NAD itself previously maintained when it

promoted a broad interpretation of the CVAA (*infra* Part V.C), any video programming content

that "'*has been displayed on television*'" or *will have been* displayed on television with captions

"after the effective date" comes within the broad scope of the Regulations.  (RJN Ex.G, NAD

Comments at 8, quoting 56 Cong. Rec. H6007 (2010) (statement of Rep. Boucher).)  The CVAA

also covers programming not necessarily displayed on television—*e.g.*, live programming (RJN

Ex. B, Regulations ¶¶ 55–56); near-live programming (*id.* ¶¶ 57–58); video clips (*id.* ¶¶ 44–47);

foreign programming (*id.* ¶ 50) and home video programming (*id.* ¶¶ 42, 60).  In some of these

cases, captioning is inappropriate currently because of the risk of "creat[ing] many difficulties."

(*E.g.*, *id.* ¶ 50, discussing foreign programming); *see also Sprietsma v. Mercury Marine*, 537

U.S. 51, 66 (2002) (noting agency's election not to regulate may be "authoritative []

determination that [] area is best left unregulated").

> **2.      Plaintiffs' interpretation of the ADA conflicts with the CVAA.**

Plaintiffs' conception of the ADA is irreconcilable with the CVAA.

***Irreconcilable Conflict With Allocation of Responsibilities.***  Under the CVAA, video

content *owners* (*e.g.*, movie studios)—*not* distributors like Netflix—initially have primary

responsibility for captioning.  *See* 47 USC § 613(a)(2)(A), (c)(2)(D)(iii)–(v) (directing FCC to

allocate captioning responsibilities).  The FCC thoroughly considered the myriad economic, technical, practical, and "substantial copyright infringement concerns" posed by captioning streaming content during the notice and comment period, and concluded that video content owners are "farther up in the distribution chain" and more efficiently can caption content.  (Ex. B, Regulations, ¶¶ 21–24.)  "Given their unique position as the [creators and owners] of video programming and its copyright, [owners] are ideally situated to create and distribute required closed captioned files, and to do so efficiently by distributing the video file and closed captioning simultaneously."  (RJN Ex. I, Google Comments, at 7, responding to FCC request for "comment on any copyright concerns implicated [by captioning]," RJN Ex. F, ¶ 19.)  Plaintiffs' requested relief—to make a *distributor* guarantee captioning—would upend this allocation.

*Irreconcilable Conflict With Grace Periods and Deadlines.*  Plaintiffs demand immediate captioning, but the CVAA and Regulations provide a two-year grace period and schedule of compliance deadlines to provide owners and distributors a "reasonable period of time to develop processes or methods" to caption programming, given the many "costs and complexities" of captioning.  (RJN, Ex. B, Regulations,. ¶¶ 34, 51 n. 218; *id.* ¶¶ 51–60 [describing deadlines]; *see* RJN Ex. A, CVAA § 201(a), (f) (requiring compliance deadlines to minimize "economic[] burden[s]").  Plaintiffs urge this Court to impose the manifestly unreasonable captioning requirements outside these deadlines.

*Irreconcilable Conflict With "Prohibit[ion] on Private Rights of Action."*  "Private rights of action" concerning captioning under the CVAA are "prohibited."  47 USC § 613(j); 47 CFR § 79.4(f).  Thus, the Regulations create an extensive "complaint procedure" through which streaming video viewers alert the FCC or video distributors can resolve captioning issues. (RJN Ex. B, Regulations ¶¶ 75–91.)  Viewers have 60 days to file a complaint with the FCC,

after which time the FCC will investigate the complaint and, if necessary, "employ the full range of sanctions available" against noncompliant entities.  (*Id.* ¶¶ 76, 78, 80–82, 86.)  Even NAD argued that a "robust, consumer-driven complaint and enforcement mechanism is necessary" under the CVAA (RJN Ex. G, NAD Comments, at 20), but here, as in *Zulauf*, Plaintiffs would "render[] [the mechanism] meaningless because every plaintiff would circumvent this provision by suing under the ADA."  *Zulauf*, 28 F. Supp. 2d at 1024.

***Irreconcilable Conflict With Exemptions From Liability.***  The CVAA *precludes* liability where the FCC determines the captioning regulations "would be economically burdensome." 47 USC § 613(c)(2)(D)(ii).  Thus, Regulations provide categorical "safe harbors" which entities are expressly "***protected from liability***," including where entities (a) make "good faith efforts" to identify and content and render "pass-through" of captions, (b) employ industry standards for captioning content, (c) employ "alternative means of compliance," or (d) make only "*de minimis*" failures to caption.  (Ex. B, Regulations, ¶¶ 16, 72–74; *see* ¶¶ 124–126 ("we adopt the [SMPTE-TT standard] format . . . as a safe harbor interchange and delivery format").)  Plaintiffs would have the ADA *compel* a finding of liability against Netflix, even where Netflix's "good faith efforts" or compliance with industry standards or "alternative means" would excuse it.

Given these considerations, the CVAA has meaning only if it applies to closed captioning of streaming video content to the exclusion of the ADA, as Congress intended.

### C.    Plaintiffs' Own Statements About the CVAA's Scope Support Netflix's Position.

Plaintiffs have tried to sidestep the CVAA by claiming it "covers, at best, only a subset of the content Plaintiffs seek to caption—post-January 2012 television programming."  (ECF No. 26 at 8.)  Yet, as late as October 2011, when it was advocating for an expanded interpretation of the CVAA, NAD represented in its public comments to the FCC precisely the opposite position.

In that filing, NAD responded to the comments of other industry groups that urged the FCC to interpret the CVAA as Plaintiffs do here—that any video programming published "prior to" the effective date of the Regulations would not come within the Regulations' scope.  (RJN Ex. H, NAD Reply Comments, 6.)  NAD rejected that position, explaining that

> Such a limitation would effectively deny consumers who are deaf or hard of hearing access to the vast back catalog of television shows and movies that have been published or exhibited on television with captions over the past decade and are now offered online via services such as Netflix, Hulu, and Amazon. . . . The legislative history does not support the proposition that Congress intended such a result.

(*Id.* at 6 n.9.)  Instead, said NAD, the CVAA applies whenever video programming was displayed with captions "*at any time prior to or simultaneously with* the Internet delivery."  (*Id.* 4–6.)  Plaintiffs' change of position is troubling.

They cannot represent that the CVAA applies broadly before the FCC, then say it applies only to a "small subset" of "post-2012 programming" here.  The Court should hold Plaintiffs to their previous position, put a stop to their "intentional self-contradiction," and prevent them from "obtaining unfair advantage" of the parallel forums.  *GE HFS Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 520 F. Supp. 2d 213, 223 (D. Mass. 2007) (citations omitted); *see InterGen Naamloze Vennootschap v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003) (applying estoppel to "a claim that is inconsistent with a position taken by that litigant [] in a prior legal proceeding").

### VI.    PLAINTIFFS' CLAIM IS MOOT.

Plaintiffs have proceeded on the theory that injunctive relief is necessary because the CVAA did not cover captioning before the "effective date."  (*See, e.g.*, Nov. 8, 2011 Tr. at 17.) The effective date (April 30) has now come and gone, the Court "cannot provide effectual

relief," and Plaintiffs' claim is moot.  *Oakville Dev. Corp. v. Fed. Deposit Ins. Corp.*, 986 F.2d

611, 613 (1st Cir. 1993) (ordering dismissal where court could not provide further relief).

## VII.   CONCLUSION.

For the foregoing reasons, Netflix respectfully requests this action be dismissed.

May 1, 2012

NETFLIX, INC., by its counsel,

By:        /s/ David F. McDowell

       David F. McDowell (*pro hac vice*)

1168016

       MORRISON & FOERSTER LLP
       David F. McDowell (CA Bar No. 125806) (*pro hac vice*)
       Jacob M. Harper (CA Bar No. 259463) (*pro hac vice*)
       555 West Fifth Street, Suite 3500
       Los Angeles, California  90013-1024
       Telephone:      213-892-5200
       Facsimile:      213-892-5454

**[PROPOSED] ORDER**

Defendant Netflix, Inc.'s Motion for Judgment on the Pleadings as to the First Amended Complaint of plaintiffs National Association of the Deaf; Western Massachusetts Association of the Deaf and Hearing Impaired; and Lee Nettles came on regularly for hearing on Tuesday, June 11, 2012, at 10:00 a.m. in the Hampden Courtroom of the above-entitled court.

After considering the moving, opposition, and reply papers, arguments of counsel and all other matters presented to the Court, IT IS HEREBY ORDERED THAT the motion is ALLOWED, this Action is DISMISSED WITH PREJUDICE, and JUDGMENT IS ENTERED in favor of defendant and against plaintiffs.

IT IS SO ORDERED, DECREED, and ADJUDGED.


By: _____
                          Hon. Michael A. Ponsor, U.S. District Judge

## <u>CERTIFICATE OF SERVICE</u>

I, David F. McDowell, hereby certify that a copy of the foregoing documents has been served upon all opposing counsel of record by ECF on this 1st day of May, 2012.

/s/ David F. McDowell
David F. McDowell