**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

**SPRINGFIELD DIVISION**

| | |
|---|---|
| NATIONAL ASSOCIATION OF THE DEAF, WESTERN MASSACHUSETTS ASSOCIATION OF THE DEAF AND HEARING IMPAIRED, and LEE NETTLES,<br><br>Plaintiffs,<br><br>v.<br><br>NETFLIX, INC.,<br><br>Defendant. | Civil Action No. 3:11-cv-30168 |

**OPPOSITION TO PLAINTIFFS'**
**<u>MOTION TO COMPEL</u>**

**[ORAL ARGUMENT REQUESTED]**

# TABLE OF CONTENTS

**Page**


REQUEST FOR ORAL ARGUMENT .... VII

MEMORANDUM OF POINTS AND AUTHORITIES .... 1

I. INTRODUCTION .... 1

II. RESPONSE TO "APPLICABLE LEGAL STANDARDS" .... 3

III. RESPONSE REGARDING BACKGROUND OF THIS ACTION AND DISCOVERY .... 4

IV. RESPONSES REGARDING "THE CONTESTED REQUESTS, RESPONSES, AND OBJECTIONS, WITH PLAINTIFFS' ARGUMENTS AS TO EACH." .... 7

- A. Responses to "Requests Seeking Irrelevant and Overly Burdensome Information." .... 7
  - 1. Request No. 20 .... 7
    - a. Text of Request .... 7
    - b. Text of Netflix's Response Objections to Request .... 7
    - c. Text of Plaintiffs' Argument .... 8
    - d. Netflix's Response Argument .... 9
  - 2. Request No. 21 .... 10
    - a. Text of Request .... 10
    - b. Text of Response and Objections to Request .... 11
    - c. Plaintiffs' Argument .... 11
    - d. Netflix's Response Argument .... 12
  - 3. Request No. 25 .... 13
    - a. Text of Request .... 13
    - b. Text of Response and Objections to Request .... 14
    - c. Plaintiffs' Argument .... 15
    - d. Netflix's Response Argument .... 16
  - 4. Request No. 26 .... 18
    - a. Text of Request .... 18
    - b. Text of Response and Objections to Request .... 18
    - c. Plaintiffs' Argument .... 19
    - d. Netflix's Response Argument .... 19
  - 5. Request No. 27 .... 19
    - a. Text of Request .... 19

**TABLE OF CONTENTS**

**Page**


b. Text of Response and Objections to Request .... 20
c. Plaintiffs' Argument .... 20
d. Netflix's Response Argument .... 21
6. Request No. 33 .... 21
a. Text of Request .... 21
b. Text of Response and Objections to Request .... 21
c. Plaintiffs' Argument .... 22
d. Netflix's Response Argument .... 22
7. Request No. 35 .... 23
a. Text of Request .... 23
b. Text of Response and Objections to Request .... 23
c. Plaintiffs' Argument .... 24
d. Netflix's Response Argument .... 24
8. Request No. 36 .... 25
a. Text of Request .... 25
b. Text of Response and Objections to Request .... 26
c. Plaintiffs' Argument .... 26
d. Netflix's Response Argument .... 26
9. Request No. 38 .... 26
a. Text of Request .... 27
b. Text of Response and Objections to Request .... 27
c. Plaintiffs' Argument .... 27
d. Netflix's Response Argument .... 28
B. Responses to Section Entitled "Requests to Which Netflix Has Agreed to Produce Documents." .... 29
1. Request No. 7 .... 29
a. Text of Request .... 29
b. Text of Response and Objections to Request .... 30
c. Plaintiffs' Argument .... 30
d. Netflix's Response Argument .... 31
2. Request No. 10 .... 32
a. Text of Request .... 32

**TABLE OF CONTENTS**

**Page**


b. Text of Response and Objections to Request .......... 32
c. Plaintiffs' Argument .......... 33
d. Netflix's Response Argument .......... 34
3. Request No. 11 .......... 36
a. Text of Request .......... 36
b. Text of Response and Objections to Request .......... 36
c. Plaintiffs' Argument .......... 37
d. Netflix's Response Argument .......... 37
4. Request No. 12 .......... 39
a. Text of Request .......... 39
b. Text of Response and Objections to Request .......... 39
c. Plaintiffs' Argument .......... 40
d. Netflix's Response Argument .......... 41
5. Request No. 16 .......... 43
a. Text of Request .......... 43
b. Text of Response and Objections to Request .......... 43
c. Plaintiffs' Argument .......... 44
d. Netflix's Response Argument .......... 44
6. Request No. 23 .......... 46
a. Text of Request .......... 46
b. Text of Response and Objections to Request .......... 46
c. Plaintiffs' Argument .......... 47
d. Netflix's Response Argument .......... 47
7. Request No. 29 .......... 49
a. Text of Request .......... 49
b. Text of Response and Objections to Request .......... 49
c. Plaintiffs' Argument .......... 50
d. Netflix's Response Argument .......... 50
8. Request No. 30 .......... 51
a. Text of Request .......... 51
b. Text of Response and Objections to Request .......... 51
c. Plaintiffs' Argument .......... 52

**TABLE OF CONTENTS**

**Page**


d. Netflix's Response Argument ..... 53

9. Request No. 34 ..... 53

a. Text of Request ..... 53

b. Text of Response and Objections to Request ..... 53

c. Plaintiffs' Argument ..... 54

d. Netflix's Response Argument ..... 54

10. Request No. 37 ..... 55

a. Text of Request ..... 55

b. Text of Response and Objections to Request ..... 55

c. Plaintiffs' Argument ..... 56

d. Netflix's Response Argument ..... 56

C. Response to Plaintiffs' Request for Attorneys' Fees ..... 58

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allocco Recycling, Ltd. v. Doherty*,
220 F.R.D. 407 (S.D.N.Y. 2004)....................17

*Ares-Serono, Inc. v. Organon Int'l B.V.*,
151 F.R.D. 215 (D. Mass. 1993)....................*passim*

*Cullen v. Netflix, Inc.*,
N.D. Cal. No. 5:11-cv-01199....................1

*GTE Products Corp. v. Gee*,
112 F.R.D. 169 (D. Mass. 1986)....................*passim*

*In re Bank of Am. Wage & Hour Employment Practices Litig.*,
275 F.R.D. 534 (D. Kan. 2011)....................51

*In re Heparin Prods. Liab. Litig.*,
273 F.R.D. 399 (N.D. Ohio 2011)....................12

*In re Subpoena to Witzel*,
531 F.3d 113 (1st Cir. 2008)....................*passim*

*Jackson v. AFSCME Local 196*,
246 F.R.D. 410 (D. Conn. 2007)....................50

*N.O. v. Callahan*,
110 F.R.D. 637 (D. Mass. 1986)....................17

*Pioneer Res. Corp. v. Nami Res. Co., LLC*,
2006 U.S. Dist. LEXIS 38005 (E.D. Ky. June 8, 2006)....................12

*Rivera v. DHL Global Forwarding*,
272 F.R.D. 50 (D.P.R. 2011)....................51

*Schartz v. Unified Sch. Dist. No. 512*,
1996 U.S. Dist. LEXIS 19123 (D. Kan. Dec. 18, 1996)....................51

*Velazquez v. City of Chicopee*,
226 F.R.D. 31 (D. Mass. 2004)....................17

*Watley v. Russell A. Farrow, Inc.*,
2010 U.S. Dist. LEXIS 96014 (E.D. Mich. Sept. 15, 2010)....................12

## TABLE OF AUTHORITIES (CONT'D)

**PAGE(S)**

**STATUTES**

18 U.S.C. § 2710(a)(3), (b)(1)....................55

Twenty-First Century Communications and Video Accessibility Act of 2010 ....................5

**OTHER AUTHORITIES**

77 Fed. Reg. 19480, 19482 ....................16

Fed. R. Civ. P.
Rule 26(b)....................3
Rule 26(b)(1)....................passim
Rule 26(c)(1)(G)....................4
Rule 26(f) ....................1, 5
Rule 37(a)(4)(A)....................58

## REQUEST FOR ORAL ARGUMENT

Netflix hereby requests oral argument on the Opposition submitted herewith.

July 3, 2012

NETFLIX, INC., by its counsel,

By: /s/ Jacob Harper
Jacob Harper (*pro hac vice*)

MORRISON & FOERSTER LLP
David F. McDowell (CA Bar No. 125806) (*pro hac vice*)
Jacob M. Harper (CA Bar No. 259463) (*pro hac vice*)
555 West Fifth Street, Suite 3500
Los Angeles, California 90013-1024

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

Plaintiffs' motion to compel is problem of Plaintiffs' own making. The issue emphatically is not, as Plaintiffs' motion suggests, that Netflix did not "respond" to Plaintiffs' discovery. (*Cf.* Mot. at 1–3.) Netflix timely provided responses and specific objections over two months ago.

This main issue is, as Netflix detailed in those responses, that virtually all Plaintiffs' discovery requests called for the disclosure of highly confidential, competitively sensitive information regarding its entire streaming video programming business, including (*inter alia*) Netflix's business models and business practices, all Netflix's streaming and captioning technology, future business plans, Netflix's interactions with third-party video content owners and device manufacturers, confidential agreements with those third-parties, those third-parties' own highly confidential information, and non-public financials. (The confidential nature of this information is discussed in detail in the 11-page Declaration of Kevin McEntee ["McEntee Decl."] filed herewith.)

With hope of moving discovery forward while protecting its sensitive information from disclosure, Netflix anticipated that Plaintiffs would stipulate to entry of the Northern District of California's model protective order concerning highly confidential information (the "Sensitive Information Exemplar"). After all, the parties agreed to use a Northern District of California model protective order during the parties' Rule 26(f) conference in September 2011, and courts routinely enter stipulated protective orders based on the Northern District of California's Sensitive Information Exemplar. In fact, courts using the Sensitive Information Exemplar include the court in *Cullen v. Netflix, Inc.*, N.D. Cal. No. 5:11-cv-01199, the parallel suit alleging, as here, that Netflix violated anti-discrimination statutes by providing inadequate

closed captioning on streaming videos accessible on Netflix's website. Plaintiffs, however, have since refused to enter such and order without extraordinary changes that would impose unacceptable burdens on Netflix. Netflix has been unable to produce confidential documents without entry of such an order.[1]

Confidentiality, however, is not the only problem with Plaintiffs' requests.

First, even with the protective order, many of Plaintiffs' discovery requests are overbroad and seek "all" documents concerning irrelevant but highly confidential information that appears tailored to harass Netflix, not lead to the discovery of admissible information. This case involves a single claim under the Americans with Disabilities Act for prospective injunctive relief; it does not seek damages for alleged past harm, nor are past issues relevant. Even if a protective order is entered, Plaintiffs still bear the burden to show the information they seek is relevant, but they fail to do so here.

Second, Plaintiffs' requests raise broad privacy concerns. Although Plaintiffs stated during the meet-and-confer process that they are not seeking private subscriber information, Plaintiffs continue to seek information concerning individuals who happen also to hold memberships with the National Association of the Deaf and Western Massachusetts Association of the Deaf/Hearing Impaired. Plaintiffs have been unable to cite any authority, and Netflix is aware of none, holding that associations can waive privacy objections on behalf of members.

Third, Plaintiffs also seek documents between Netflix and government agencies, the content of which are subject to the deliberative process privilege, which protects from disclosure communications contained in communications with and between government

[1] Because it is clear Plaintiffs will not agree to the standard two-tier order, Netflix is moving for its entry in a separate motion for protective order. Upon entry of this order, Netflix will be able to produce documents as agreed.

agencies. Although the government agencies hold the privilege, Plaintiffs have not cited any authority for the notion that a private party may waive the privilege on the agency's behalf.

Fourth, Netflix raised additional objections that Plaintiffs appear to have addressed, though Netflix reserves its objections to the extent disputes remain. For example, Plaintiffs stated that Netflix could use its own interpretations of Plaintiffs' terms to avoid vagueness issues, agreed to narrow the time period from June 2007 to the present, stated they are not seeking privileged documents, and agreed they would not seek source code. Netflix notes below, however, that Plaintiffs' requests still raise issues with respect to certain requests, and Netflix reserves its objections where applicable.

For the reasons explained herein, Plaintiffs' motion to compel should be denied.

## II. RESPONSE TO "APPLICABLE LEGAL STANDARDS"

As a threshold matter, Plaintiffs make several misstatements of the "applicable legal standards. (Mot. at 1–2.) These require correction.

Discovery is proper only as to information that relevant to any party's "claim or defense," Fed. R. Civ. P. 26(b)—not, as Plaintiffs contend, anything related to the "'subject matter of the action'" (Mot. at 2, citation omitted). To the contrary, a "party seeking broader discovery 'of any matter relevant to the subject matter involved in the action,' is required to show good cause to support the request." *In re Subpoena to Witzel*, 531 F.3d 113, 118 (1st Cir. 2008) (explaining that "[i]n 2000, Rule 26(b)(1) was amended to distinguish between discovery regarding matters that are relevant to a party's claim or defense and discovery of a broader scope encompassing 'any matter relevant to the subject matter involved in the action.'") (quoting Rule 26(b)(1)). Plaintiffs miss this distinction and, as explained below, do not satisfy either standard. *See Witzel*, 531 F.3d at 118 (declining to consider discovery

requests concerning only "subject matter" of litigation where, as here, Plaintiffs fail to address obligation to show good cause).

Confidential information is afforded additional protection from disclosure. *See* Fed. R. Civ. P. 26(c)(1)(G) ("trade secret or other confidential research, development, or commercial information [must] not be revealed or [may] be revealed only in a specified way"). As such, Plaintiffs' burden to show relevance increases where, as here, the documents Plaintiffs seek include confidential or highly confidential information. *See GTE Products Corp. v. Gee*, 112 F.R.D. 169, 172 (D. Mass. 1986) (balancing risk of competitive injury against need for information); *cf. Ares-Serono, Inc. v. Organon Int'l B.V.*, 151 F.R.D. 215, 219–220 (D. Mass. 1993) (noting that court "must exercise its discretion in order to avoid unnecessary disclosure of trade secrets or other confidential business information"). Under this standard, the greater the interest in protecting the information from disclosure, the greater Plaintiffs' burden to show the relevance of that information. Plaintiffs wholly ignore this concept in their motion.[2]

Plaintiffs other cases concern special employment discrimination cases where

To the extent Plaintiffs raise additional cases in their arguments regarding specific document requests, Netflix addresses them in its responsive arguments below.

## III. RESPONSE REGARDING BACKGROUND OF THIS ACTION AND DISCOVERY.

This action concerns Plaintiffs' allegations that Netflix fails to provide sufficient closed captioning on its "Watch Instantly" streaming video programming website, and thereby violates Title III of the Americans with Disabilities Act ("ADA"). (ECF No. 19, FAC ¶ 1.) Plaintiffs seek only prospective-only relief for injunction barring future acts of alleged discrimination under the Americans with Disabilities Act. (*Id.*, Prayer for Relief.) Plaintiffs

[2] In addition, Plaintiffs' contention that objections "not specifically voiced are waived" (Mot. at 2) is misplaced here, where Netflix raised its objections timely and specifically.

do not seek money damages for past harm (*id.*), which is not available under the ADA in any event.

On September 26, 2011, the parties held their Rule 26(f) conference. (Declaration of Jacob Harper in Support of (1) Opposition to Motion to Compel and (2) Motion for Protective Order ["Harper Decl."] ¶ 2 & Ex. A.) During that conference, the parties agreed they would stipulate to entry of a model protective order from the Northern District of California. (*Id.* ¶ 2.) Before the parties entered such a stipulation, the Court issued a stay of litigation pending regulations under the Twenty-First Century Communications and Video Accessibility Act of 2010 by the Federal Communications Commission ("FCC"). (*Id.* ¶ 3.) The stay lasted approximately four months. (*Id*.)

On March 22, 2012, Plaintiffs served the document requests at issue here. (Harper Decl. ¶ 4 & Ex. B.) Netflix's responses were initially due April 26, 2012, but to accommodate the Court's April 25 scheduling conference, the parties agreed to a 5-day extension to May 1, 2012. (*Id.* ¶ 5.) That day, Netflix served its Responses and Objections to Plaintiffs' First Set of Requests for Production of Documents. (*Id*.) In addition to asserting detailed objections to each discovery request, Netflix made good faith attempts to narrow the categories of documents to proposals that are less objectionable and more palatable. (*Id.*)[3]

Netflix stated in its objections, however, that it could not provide the documents without entry of the protective order to which Plaintiffs represented they would agree. (Harper Decl. ¶ 6.)

On May 4, Plaintiffs proposed that Netflix enter into the Northern District of California's model protective order governing low-level "confidential" information ("Low-Level Protection Exemplar"). (Harper Decl. ¶ 7 & Ex. D.)

[3] Those categories are discussed below where relevant to the document requests Plaintiffs raise here.

On May 9, Netflix proposed the use Northern District of California's Sensitive Information Exemplar, attached specific examples of other orders based on it, and requested that Plaintiffs respond whether that order was acceptable. (Harper Decl. ¶ 8 & Ex. E.) On May 14, having received no objections, Netflix sent Plaintiffs a redline of the Sensitive Information Exemplar. (*Id.* ¶ 9 & Ex. F.) Plaintiffs replied that they would agree to the lower level protections of the standard confidentiality provisions but not to the two-tier protections of the standard order Netflix proposed. (*Id.* ¶ 10 & Ex. G.) On May 18, Netflix sent Plaintiffs a four-page letter detailing the necessity of the protections afforded by the Sensitive Information Exemplar. (*Id.* ¶ 11 & Ex. H.)

Meanwhile, on May 22, Plaintiffs sent a letter concerning Plaintiffs Requests for Production, and a separate letter stating that Plaintiffs "will not agree" to entry of the Sensitive Information Exemplar. (Harper Decl. ¶ 12 & Ex. I.)

Netflix responded by letter of May 29. (Harper Decl. ¶ 13 & Ex. J.) There, Netflix corrected a number of misstatements in Plaintiffs' May 22 letter, including a misreading of the Local Rules, the misrepresentation that Netflix did not "respond" to Plaintiffs' discovery requests, and misconstruction of Netflix's objections. (*Id*. Ex. J.) Netflix also specifically addressed common objections concerning confidentiality, privacy, time period, vagueness and ambiguity, privilege, and relevance and overbreadth. (*Id*.) In addition, Netflix asked again whether Plaintiffs would reconsider their position that they "would not agree" to a two-tier order, including by explaining that the voluntary enforcement mechanisms on which Plaintiffs rely are insufficient to control the extremely sensitive and valuable information of which Plaintiffs seek disclosure. (*Id*.)

The parties participated in calls on June 4, June 5, and June 7. (Harper Decl. ¶ 15.) Plaintiffs refused to agree to terms for a protective order, and would not agree to narrow their

requests in any manner Netflix proposed. (*Id.*) Plaintiffs did agree, however, that terms would be construed according to Netflix's understanding in order to obviate Netflix's ambiguity concerns; the time period would be narrowed to June 2007 through the present; and that privileged documents or documents encompassing private information were not within the scope of the requests. (*Id.*) Also on June 7, Plaintiffs sent a final redlined proposal making changes to the Sensitive Information Exemplar, which changes largely eviscerated the point of the protective order and imposed undue burdens on Netflix. (*Id.* ¶ 17 & Ex. K.)

Netflix agreed to produce non-confidential documents on June 20, but the Court entered a stay at the June 11 hearing. (Harper Decl. ¶ 18.) After the stay ended, Netflix produced non-confidential documents on June 29. (*Id.*)

Meanwhile, the parties have been unable to come to an agreement on Netflix's confidentiality and other concerns. (Harper Decl. ¶ 19.)

## IV. RESPONSES REGARDING "THE CONTESTED REQUESTS, RESPONSES, AND OBJECTIONS, WITH PLAINTIFFS' ARGUMENTS AS TO EACH."

### A. Responses to "Requests Seeking Irrelevant and Overly Burdensome Information."

#### 1. Request No. 20

##### a. Text of Request

Documents describing Netflix's business model for streaming, including but not limited to Netflix's use of the long tail, and $1 million prize.

##### b. Text of Netflix's Response Objections to Request

Netflix incorporates by reference its Preliminary Statement and General Objections as fully set forth herein. Netflix specifically objects to the term "documents," "streaming," and "Netflix" as vague, ambiguous, and indefinite for the reason explained in General Objection ¶¶ 5(c), (e) & (d). Furthermore, Netflix objects to the phrases "business model", "long tail", and "$1 million prize", as vague, ambiguous, and indefinite, as well as extraordinarily overbroad and harassing. This Request is also

overly broad and unduly burdensome because it seeks information not relevant to this action and not likely to lead to the discovery of admissible evidence. Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or competitively sensitive information. Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection. Netflix objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix objects that the Request is grossly overbroad and unduly burdensome because it is not limited to a discrete time period.

**c. Text of Plaintiffs' Argument**

Plaintiffs' Request is relevant and not overbroad and Netflix has not described any way in which it is unduly burdensome. As Plaintiffs clarified in their May 22 letter and in the parties' discovery conference, Plaintiffs have asked for documents sufficient to describe Netflix's business model, including but not limited to elements of that business model including the long tail and the $1 million prize (a prize that Netflix awarded for improvement to its recommendations system, *See* http://www.netflixprize.com/). Plaintiffs request information describing what the long tail is, and how Netflix's use of it has changed over time; as well as information describing the $1 million prize that Netflix offered for improving its recommendation system, and what that prize was awarded for.

The information sought is relevant to Plaintiffs' demand to caption all of Netflix's streaming video content, regardless of its popularity, and to Plaintiffs' demand that the recommendations system be made fully accessible. Netflix's initial disclosures indicate that a relevant topic is "streaming video business plans." *See* Exh. H. Plaintiffs' Request is related to this topic. Further, the Request seeks information relevant to Netflix's defense that it would constitute a fundamental alteration of its activities to provide closed captioning of its streaming content. *See* Answer at 10th Aff. Defense, ECF No. 34. Plaintiffs thus require an understanding of Netflix's business model.

The remaining objections can be briefly addressed: Netflix dropped its objections to ambiguity in the parties' discovery

> conference. Privilege and work product protection may limit production as appropriate under the Federal Rules and Netflix can provide a log of such information as required by Rule 26(b)(5), but it does not appear to be a basis for withholding all responsive documents. Netflix has not identified any basis for its objection that the Request calls for information that would implicate the privacy of any individual; Plaintiffs have stated that they are not seeking such information, which should obviate Netflix's concerns under the Video Privacy Protection Act (VPAA), 18 U.S.C. § 2710. To the extent that protection is warranted for confidential business information under the terms of a protective order, such an order is being negotiated. The time period objection has no basis as Plaintiffs had previously instructed that the relevant time period was January 2006 to the present, and have agreed with Netflix to limit that to June 2007 to the present.

**d. Netflix's Response Argument**

*Relevance and Confidentiality*. Plaintiffs make this broad request as purportedly relevant to the "topic" of "business plans," but the Federal Rules provide discovery only onto matters bearing on the "claims and defenses" of a party. Fed. R. Civ. P. 26(b)(1). At best, Plaintiffs seem to suggest the *subject matter* of streaming business models might be tangentially related to this litigation, but Plaintiffs make no showing, let alone "good cause," to justify seeking expansive discovery into this broad subject matter, as they must. *Witzel*, 531 F.3d at 118 (declining to consider discovery requests concerning only "subject matter" of litigation where, as here, Plaintiffs fail to address obligation to show good cause).

In addition, Plaintiffs' burden is particularly high where, as here, information Plaintiffs seek highly confidential information whose disclosure would cause competitive harm to Netflix. (McEntee Decl. ¶¶ 6–25); *Gee*, 112 F.R.D. at 172 (balancing risk of competitive injury against need for information); *see Ares-Serono, Inc.*, 151 F.R.D. at 219–220 (noting that court "must exercise its discretion in order to avoid unnecessary disclosure of trade secrets or other confidential business information"). Plaintiffs, notably, do not challenge the highly confidential nature of "business model" information.

Even if, *arguendo*, Plaintiffs satisfied their burden to show that documents describing "business models for streaming" was relevant, Plaintiffs make no showing regarding how an unspecified "long tail" or "$1 million prize" is related to that business model. Plaintiffs attempt to justify this request based on Netflix's Initial Disclosures has no bearing here because those Initial Disclosures say nothing about the "long tail" or "$1 million prize." Plaintiffs simply fail to make *any* showing, let alone good cause, why information about these additional topics are discoverable in this litigation.

At the very least, Plaintiffs should narrow the scope of this request to information regarding captioning of streaming video programming, which is the basis for this lawsuit—not all "streaming."

*Ambiguity*. Although Netflix accepts Plaintiffs' proposal that Netflix may construe Plaintiffs' requests consistent with Netflix's general understanding, Netflix has not "dropped" its ambiguity objections, as it remains unclear what Plaintiff means, for example, by "long tail."

*Time Period.* Although Netflix welcomes Plaintiffs' narrowing of the general time period to June 2007 to the present, Netflix does not agree that "business plans" in place before the present have any bearing on this action for injunctive relief to regarding Netflix's current captioning efforts.

*Privacy and Privilege*. Netflix accepts Plaintiffs proposal that Plaintiffs will not seek documents implicating privacy concerns. Plaintiffs also stated that they would not seek privileged documents.

**2. Request No. 21**

**a. Text of Request**

> All documents that describe the budget, revenues, and expenditures related to the acquisition of streaming content.

**b. Text of Response and Objections to Request**

Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix specifically objects to the defined terms "documents" and "streaming content" as vague, ambiguous, and indefinite for the reasons explained in General Objection ¶¶ 5(e), (i) & (l). Netflix further objects that that the phrase "describe the budget, revenues, and expenditures related to the acquisition of streaming content" is vague, ambiguous, and indefinite. This Request is overly broad and harassing because it seeks information far beyond the scope of this action. Netflix further objects that the Request seeks information that is not relevant and not reasonably tailored to lead to the discovery of admissible evidence. Netflix objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or competitively sensitive information. Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection. Netflix objects that the Request is grossly overbroad and unduly burdensome because it is not limited to a discrete time period. Netflix further objects to this request as, at least partially, cumulative and duplicative of Request No. 22.

**c. Plaintiffs' Argument**

This Request seeks relevant information and is not overbroad. Netflix has stated in its Answer that it provides captioning to the extent technologically and economically feasible, and has also asserted an undue burden defense. *See* Answer at 5th, 6th, 7th, 9th, 10th, and 11th Aff. Defenses, ECF No. 34. The undue burden defense requires a showing of "significant difficulty or expense," and may be considered in the context of an examination of the overall financial resources of the "site" involved in the action (in this case, the streaming website, Watch Instantly), the impact of the action upon the operation of the "site," and the overall financial resources of any parent corporation or entity. *See* 28 C.F.R. § 36.104. The information requested goes directly to this defense, and to testing Netflix's assertion as to the economic feasibility or infeasibility of captioning.

> The remainder of Netflix's objections is quickly addressed: Netflix has dropped its ambiguity objections. As for privacy objections, Netflix has not identified any basis for its objection that this Request seeks information implicating the privacy of any individual, and Plaintiffs are not seeking any such information. To the extent Netflix has confidential business information, a protective order is being negotiated. Privilege and work product concerns should be dealt with as required under the federal rules and are not grounds for withholding all documents. Plaintiffs and Netflix have agreed to a relevant time period, from June 2007 to the Present. If the documents that would be produced are entirely duplicative of those in response to Request No. 22, Netflix should say so, but Plaintiffs do not perceive the requests to overlap.

**d. Netflix's Response Argument**

*Relevance, Overbreadth, Harassment, and Confidentiality.* This action concerns Netflix's efforts to *caption* streaming content, not the much broader topic Plaintiffs seek here: documents relating to financial information of Netflix's entire streaming content business. Request No. 21, however, is not tailored to obtain discoverable evidence; it is broadly designed to access what amounts to Netflix's entire budget. This overly broad request for what amounts to all Netflix's financial records for a substantial portion of its business is not appropriate. *See, e.g., In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 409 (N.D. Ohio 2011) ("Requests seeking 'all financial reports' or 'all documents concerning financial condition or market performance' are overly broad."); *Watley v. Russell A. Farrow, Inc.*, 2010 U.S. Dist. LEXIS 96014, at *4 (E.D. Mich. Sept. 15, 2010) (denying motion to compel "all financial records" as overly broad); *Pioneer Res. Corp. v. Nami Res. Co.*, LLC, 2006 U.S. Dist. LEXIS 38005 (E.D. Ky. June 8, 2006) (denying motion to compel broad requests for documents showing "overall financial condition").

In addition, Plaintiffs fail to tie these broad requests for all budget information to the "claims and defenses" of a party. Fed. R. Civ. P. 26(b)(1). Plaintiffs' statement that costs of "*captioning*" relates to Netflix's affirmative defenses is much different from, and much

narrower than, Plaintiff's the overly broad scope request for all documents related to budget, revenue, and expenditures for Netflix's entire streaming business. Plaintiffs' justification based on captioning is far from the good cause required to satisfy this claim. *Witzel*, 531 F.3d at 118 (declining to consider discovery requests concerning only "subject matter" of litigation where, as here, Plaintiffs fail to address obligation to show good cause).

Plaintiffs also cannot justify such the broad request for obviously highly confidential information whose disclosure would cause competitive harm to Netflix. (McEntee Decl. ¶ 6–25); *Gee*, 112 F.R.D. at 172; *see Ares-Serono, Inc.*, 151 F.R.D. at 219–220. Plaintiffs do not and cannot challenge the fact that such budget information is highly confidential.

*Time Period.* Although Netflix welcomes Plaintiffs' narrowing of the general time period to June 2007 to the present, Netflix does not agree that budgeting for the entire time period has any bearing on this action for injunctive relief to regarding Netflix's current captioning efforts. Netflix's budgets in 2007 have nothing to do with the prospective injunctive relief Plaintiffs seek here.

*Ambiguity*. Although Netflix accepts Plaintiffs' proposal that Netflix may construe Plaintiffs' requests consistent with Netflix's general understanding, Netflix has not "dropped" its ambiguity objections.

*Privacy and Privilege*. Netflix accepts Plaintiffs proposal that Plaintiffs will not seek documents implicating privacy concerns. Plaintiffs also stated that they would not seek privileged documents.

**3. Request No. 25**

**a. Text of Request**

> All documents identifying programming that Netflix has or will acquire, and that Netflix is creating or will create, that it expects will be subject to the requirements of CVAA and CVAA implementing regulations (FCC Report and Order, MB Docket

No. 11-154 ("FCC Report and Order," adopted Jan. 12, 2012)), within 18 months after the date of publication in the Federal Register of those regulations, specifically and separately identifying that programming that Netflix has or will acquire, and is creating or will create, that it expects will be subject to 47 C.F.R. § 79.4(b)(1), (2), and (3), as outlined at page 83 of the FCC Report and Order.

**b. Text of Response and Objections to Request**

Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix specifically objects to the term "documents" and "Netflix" as vague, ambiguous, and indefinite for the reason explained in General Objection ¶¶ 5(c) & (i). Netflix further objects that the phrases "programming that Netflix has or will acquire," "that Netflix is creating or will create," "that it expects will be subject to the requirements of CVAA and CVAA implementing regulations" and "specifically and separately identifying that programming that Netflix has or will acquire, and is creating or will create, that it expects" are vague, ambiguous, and indefinite, and render this Request overly broad and unduly burdensome. Netflix objects to this Request because it potentially encompasses documents protected by the deliberative process privilege and similar government privileges. The Request is overly broad and unduly burdensome for the additional reason that it presupposes Netflix can predict the future, or the Federal Communication Commission's judgments, about what "programming" may or may not be "subject to the requirements of CVAA and CVAA regulations." Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection. Netflix objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or competitively sensitive information. Netflix further objects to this request as, at least partially, cumulative and duplicative of Request No. 26.

**c. Plaintiffs' Argument**

Discovery as to Netflix's anticipated compliance with the CVAA is relevant and not overbroad because Netflix has stated in its answer that compliance with CVAA exculpates it from liability under the ADA. This Request is also relevant because the parties have disputed the extent of the content Netflix has or plans to acquire or create that is subject to the CVAA and its implementing regulations, and an understanding of what Netflix captioning Netflix considers to be required will influence the scope of the remedy sought and potentially required in this case. Netflix has failed to identify any basis for its "unduly burdensome" objection and thus its objection on this ground is waived.

Netflix has dropped its ambiguity objections to this request as Plaintiffs have clarified that there is no request for Netflix to "predict the future" and that they are requesting information as to Netflix's planned compliance with the CVAA, for which the regulations are now final. Other remaining objections can be quickly addressed: Plaintiffs are not aware of any authority providing Netflix with a right to claim the deliberative process privilege, which protects "'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *see also Williams v. City of Boston*, 213 F.R.D. 99, 101 (D. Mass. 2003) (quoting same). Netflix has not identified any basis for the privilege to apply to Netflix, either in general or specifically in response to this request. Privilege and work product concerns should be dealt with as required under the Federal Rules and are not grounds for withholding all documents. Fed. R. Civ. P. 26(b)(5).

Netflix has not identified any basis for its objection that this Request implicates individual privacy concerns, and Plaintiffs have clarified that they are not seeking any such information. To the extent Netflix is concerned about protecting confidential business information, a protective order is being negotiated. Plaintiffs and Netflix have agreed to a relevant time period, from June 2007 to the Present. If the documents that would be produced are entirely duplicative of those in response to Request No. 26, Netflix should say so, but Plaintiffs do not perceive the requests to overlap.

**d. Netflix's Response Argument**

*Relevance, Overbreadth, Burden, and Confidentiality*. Plaintiffs seek "all" documents identifying programming Netflix has or will acquire for its streaming video programming.

First, information about Netflix's current and future video programming implicates highly confidential business information, disclosure of which could cause competitive harm without proper protections. (McEntee Decl. ¶ 6–25, 31–35); *Gee*, 112 F.R.D. at 172 (court must tailor discovery rulings to account for risks resulting from disclosure of information); *see Ares-Serono, Inc.*, 151 F.R.D. at 219–220 (same). Plaintiffs do not and cannot challenge that information regarding Netflix's current and future content is highly confidential, and it may not be disclosed absent adequate protections.

Second, to the extent Plaintiffs are asking Netflix to create documents identifying programming subject to regulations, this Request is extremely burdensome. According to Plaintiffs' interpretation of the FCC's regulations governing streaming video captioning, captioning is required only on video programming that was previously displayed on television with captions. (*E.g.*, Pls' Opp'n re Netflix's MJOP, ECF No. 46, at 15.) The FCC, however, recognized in its regulations that such a task is oppressively burdensome for video programming distributors (who would not necessarily know of have an efficient way to determine whether programming content was ever displayed on television with captions), and much better suited is more appropriate for video programming content owns, who are more likely to have such information. *See* FCC, Closed Captioning of Internet Protocol-Delivered Video Programming: Implementation of the Twenty-First Century Communications and Video Accessibility Act of 2010, 77 Fed. Reg. 19480, 19482 (Mar. 30, 2012) (explaining that programming owners are better positioned than programming providers to identify and

caption video programming). As such, Plaintiffs' request seems more tailored to causing extraordinary burden than obtaining relevant evidence.

*Attorney-Client / Attorney Work-Product Privilege*. The attorney-client privilege or attorney work-product privileges would clearly apply to documents created by or communicated with counsel concerning Netflix's compliance with federal law and regulations. It is unclear from Plaintiffs' response whether they intend to seek privileged documents, though Netflix assumes they do not, as they indicated during the meet-and-confer process.

*Deliberative Process Privilege*. To the extent Plaintiffs seek documents concerning communications with federal agencies (such as the Federal Communications Commission), those documents are protected by the deliberative process privilege, which protects communications both between agencies and, as relevant here, between a federal agency and a private party. *Velazquez v. City of Chicopee*, 226 F.R.D. 31 (D. Mass. 2004) ("The deliberative process privilege has been repeatedly recognized in the First Circuit and the District of Massachusetts . . . [to] intragovernmental memoranda containing opinions or recommendations of policy-making rather than purely factual import"); *N.O. v. Callahan*, 110 F.R.D. 637, 641–42 (D. Mass. 1986) ("The federal courts have long recognized the deliberative process privilege with respect to certain intra-governmental federal deliberations"); *see Allocco Recycling, Ltd. v. Doherty*, 220 F.R.D. 407 (S.D.N.Y. 2004) (applying privilege to intergovernmental documents prepared by non-agency private consultant).

While Plaintiffs acknowledge that the privilege is held by the government, Plaintiffs cite no authority, and Netflix is aware of none, holding that a private party may waive the privilege on behalf of the government. Thus, to the extent communications between Netflix

and the FCC are responsive to Plaintiffs' request (assuming, *arguendo*, the Request is valid), Plaintiffs must obtain the agency's waiver of the privilege before Netflix can disclose its contents.

*Time Period.* Although Netflix welcomes Plaintiffs' narrowing of the general time period to June 2007 to the present, Netflix does not agree that any past predictions about content that might be subject to CVAA regulations are relevant. At most, the time period should be limited from the date of final promulgation of the regulations (March 30, 2012) to the present.

*Ambiguity*. Although Netflix accepts Plaintiffs' proposal that Netflix may construe Plaintiffs' requests consistent with Netflix's general understanding, Netflix has not "dropped" its ambiguity objections.

*Privacy*. Netflix accepts Plaintiffs proposal that Plaintiffs will not seek documents implicating privacy concerns.

**4. Request No. 26**

**a. Text of Request**

> All documents identifying programming that Netflix has or will acquire, and that Netflix is creating or will create, that it expects will be subject to 47 C.F.R. § 79.4(b)(4), as outlined at page 83 of the FCC Report and Order.

**b. Text of Response and Objections to Request**

> Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix specifically objects to the term "documents" and "Netflix" as vague, ambiguous, and indefinite for the reason explained in General Objection ¶¶ 5(c) & (i). Netflix further objects that the phrases "programming that Netflix has or will acquire," "that Netflix is creating or will create," and "that it expects will be subject to 47 C.F.R. § 79.4(b)(4)" are vague, ambiguous, and indefinite, and render this Request overly broad and unduly burdensome. The Request is extraordinarily overly broad, unduly burdensome, and harassing because, among other things, (1) it presupposes Netflix can predict the future, or the Federal

Communication Commission's judgments, about what "programming" may or may not be subject to the requirements of the CVAA and regulation, and (2) requires Netflix to collect all documents identifying such material. Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection. Netflix objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or competitively sensitive information. Netflix further objects to this request as, at least partially, cumulative and duplicative of Request No. 25.

**c. Plaintiffs' Argument**

This request is relevant and unobjectionable for the reasons set forth above in response to Request No. 25. The specific information requested is, however, different than the information sought in response to Request No. 25, as Request No. 26 seeks information regarding that material that is *already* in Netflix's library, and/or which Netflix has plans to acquire that it has determined will be subject to 47 C.F.R. §79.4(b)(4), which covers "All programming that is already in the video programming distributor's or provider's library before it is shown on television with captions."

**d. Netflix's Response Argument**

Netflix's arguments in response to Request No. 25—concerning *Relevance, Overbreadth, Burden, and Confidentiality*; *Attorney-Client / Attorney Work-Product Privilege*; *Deliberative Process Privilege*; *Time Period*; *Ambiguity*; and *Privacy*—apply with equal force to Request No. 26.

**5. Request No. 27**

**a. Text of Request**

All documents identifying any programming that Netflix has or will acquire, and that Netflix is creating or will create, that it

contends and/or believes is exempt from the CVAA and the implementing regulations contained in the FCC Report and Order.

**b. Text of Response and Objections to Request**

Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix specifically objects to the term “documents” and “Netflix” as vague, ambiguous, and indefinite for the reason explained in General Objection ¶¶ 5(c) & (i). Netflix further objects that the phrases “programming that Netflix has or will acquire,” “that Netflix is creating or will create,” and “that it contends and/or believes is exempt from the CVAA and the implementing regulations contained in the FCC Report and Order” are vague, ambiguous, and indefinite, and render this Request overly broad and unduly burdensome. The Request is overly broad and unduly burdensome for the additional reason that it presupposes Netflix can predict the future, or the Federal Communication Commission’s judgments, about what “programming” may or may not be subject to the CVAA. Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection. Netflix objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or competitively sensitive information. Netflix further objects to this request as, at least partially, cumulative and duplicative of Request No. 25 and 26.

**c. Plaintiffs’ Argument**

This Request is relevant and unobjectionable for the reasons set forth above in Plaintiffs’ argument re: Request Nos. 25 and 26. This Request does not overlap with Requests Nos. 25 and 26, because Request No. 27 seeks information in Netflix’s possession, custody or control that indicates the content Netflix has determined is not subject to the CVAA.

**d. Netflix's Response Argument**

Netflix's arguments in response to Request Nos. 25 and 26—concerning *Relevance, Overbreadth, Burden, and Confidentiality*; *Attorney-Client / Attorney Work-Product Privilege*; *Deliberative Process Privilege*; *Time Period*; *Ambiguity*; and *Privacy*—apply with equal force to Request No. 27.

**6. Request No. 33**

**a. Text of Request**

> Documents identifying the size of Netflix's total subscriber base, and the percent of that subscriber base with access to Watch Instantly.

**b. Text of Response and Objections to Request**

> Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix specifically objects to the term "documents" and "Netflix" as vague, ambiguous, and indefinite for the reason explained in General Objection ¶¶ 5(c) & (i). Netflix further objects because the phrases "size of Netflix's total subscriber base" and "percent of that subscriber base with access to Watch Instantly" are vague, ambiguous, and indefinite, and render the Request overly broad and unduly burdensome. Netflix further objects to this Request as seeking irrelevant information, as not reasonably tailored to lead to the discovery of admissible evidence. Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection.
>
> Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or competitively sensitive information. Netflix objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix objects that the Request is grossly overbroad and unduly burdensome because it is not limited to a discrete time period.

**c. Plaintiffs' Argument**

> Netflix has stated that it stands on its objection that this Request is irrelevant, and has dropped other objections. *See* Exh. G. This information is relevant to determine the universe of subscribers potentially affected by Plaintiffs' claim, and is thus relevant to determine the scope of Netflix's failure to provide equal access, or not, as well as to determining remedy. It may also be relevant as a basic fact to test Netflix's assertion that it has captioned to the extent technologically and economically feasible. *See* Answer at 5th, 6th, 7th, 9th, 10th, and 11th Aff. Defenses, ECF No. 34.

**d. Netflix's Response Argument**

*Relevance and Confidentiality*. Plaintiffs fail to state how the size of Netflix's "subscriber base" is relevant to "claims and defenses." Fed. R. Civ. P. 26(b)(1). Plaintiffs also state subscriber size is relevant to the "scope of Netflix's failure to provide access" and to test the "assertion that [Netflix] has captioned to the extent . . . feasible," but Plaintiffs do not explain how the total number of subscribers could possibly be relevant to that information.

Again, Plaintiffs suggest only that this request is, at best, related to a broad *subject matter*—streaming content writ large—not to any claim or defense concerning what is at issue here: whether a *subset* of total subscribers (deaf and hard of hearing individuals) have access to Netflix's streaming content. Plaintiffs' broad request for "all" documents concerning *all* Netflix subscribers goes far beyond the anything relevant to the claims and defenses here, and is not supported by good cause. *Witzel*, 531 F.3d at 118.

These concerns are exacerbated by the competitively sensitive nature of the subscriber information Plaintiffs seek here. (McEntee Decl. ¶ 14–19); *Gee*, 112 F.R.D. at 172 (balancing risk of competitive injury against need for information); *see Ares-Serono, Inc.*, 151 F.R.D. at 219–220 (noting that court "must exercise its discretion in order to avoid unnecessary disclosure of trade secrets or other confidential business information").

*Other Objections Were Not "Dropped."* Netflix did not "drop" other objections, and Plaintiffs apparently misread their own letter in support of that statement. (*Compare* Worthman Decl. Ex G, stating only that "Netflix stands on its objections that this requests irrelevant information," not that Netflix "dropped" objections.)

*Ambiguity*. Although Netflix accepts Plaintiffs' proposal that Netflix may construe Plaintiffs' requests consistent with Netflix's general understanding, it remains unclear what Plaintiff means by "percent of subscriber base with access to Watch Instantly."

*Time Period.* Although Netflix welcomes Plaintiffs' narrowing of the general time period to June 2007 to the present, Netflix does not agree that the size of Netflix's past subscriber base size is relevant to Plaintiffs' request to stop allegedly continuing wrongs.

*Privacy and Privilege*. Netflix accepts Plaintiffs' general proposal that they will not seek documents implicating privacy concerns.

**7. Request No. 35**

**a. Text of Request**

> Documents identifying all DVD titles owned by Netflix that are captioned.

**b. Text of Response and Objections to Request**

> Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix specifically objects to the defined terms "Netflix," "documents" and "captions" as vague, ambiguous, and indefinite for the reasons explained in General Objection ¶¶ 5(c), (d), (i) & (l). Netflix further objects because the phrase "all DVD titles owned by Netflix that are captioned" is vague, ambiguous, and indefinite, and renders the Request overly broad and unduly burdensome. Netflix further objects to this Request as seeking information (regarding "DVD titles") that is irrelevant to this action (concerning closed captioning of Internet protocol-based video programming). Netflix further objects to this Request as overly broad, unduly burdensome, and harassing to the extent it requires Netflix to dig through every single DVD title it possesses to determine whether it contains captioning. Netflix further objects to this Request to the extent that it seeks the

> disclosure of proprietary, confidential or competitively sensitive information. Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection. Netflix objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix objects that the Request is grossly overbroad and unduly burdensome because it is not limited to a discrete time period.

#### c. Plaintiffs' Argument

> Netflix has dropped its objections except to relevance and overbreadth. Plaintiffs clarify that they do not request Netflix to "dig through" each DVD to identify whether each is captioned, but request documents already in Netflix's possession that identify captioned content. Plaintiffs understand that such a list exists as Netflix is able to inform subscribers who order a DVD whether or not that DVD title has closed captioning or subtitles. This information is relevant to assess Netflix's claims re: the technological and economic infeasibility of captioning its streaming content, and the costs and burdens of captioning for Netflix's streaming content, as well as to liability issues including the maintenance of accessible features requirement under the ADA. *See* 28 C.F.R. § 36.211 (requiring that "A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities by the Act or this part.").

#### d. Netflix's Response Argument

*Relevance, Overbreadth, and Confidentiality*. Information about whether DVDs in Netflix's possession contain captioning have nothing to do with the "claims and defenses" at issue here, which concern captioning on Netflix's streaming content. Fed. R. Civ. P. 26(b)(1). Whether a title on DVD contains captioning has absolutely nothing to do with the costs and processes of providing captioning onto streaming video content, which involves complicated processes unrelated to DVDs. (McEntee Decl. ¶– 2–7.) While DVD and

streaming may related to a broad *subject matter*—captioning in the abstract— Plaintiffs' broad request for documents identifying "all" DVDs with captioning is not supported by good cause. *Witzel*, 531 F.3d at 118. These concerns are exacerbated by the competitively sensitive nature of the Netflix's catalogues. (McEntee Decl. ¶¶ 14–19, 20–24); *Gee*, 112 F.R.D. at 172 (balancing risk of competitive injury against need for information); *Ares-Serono, Inc.*, 151 F.R.D. at 219–220 ).

*Other Objections Were Not "Dropped."* Again, Netflix did not "drop" other objections, and Plaintiffs apparently misread their own letter in support of that statement. (*Compare* Worthman Decl. Ex G, stating only that "Netflix stands on its objections that this requests irrelevant information," not that Netflix "dropped" objections.)

*Ambiguity.* Although Netflix accepts Plaintiffs' proposal that Netflix may construe Plaintiffs' requests consistent with Netflix's general understanding, much of the Request remains unclear. For example, when Plaintiffs ask for documents concerning "DVD titles owned by Netflix," it is unclear whether Plaintiffs mean the copyrights to the title, or the physical disk itself.

*Time Period.* Although Netflix welcomes Plaintiffs' narrowing of the general time period to June 2007 to the present, Netflix does not agree that the size of Netflix's past subscriber base size is relevant to Plaintiffs' request to stop allegedly continuing wrongs.

*Privacy and Privilege*. Netflix accepts Plaintiffs' general proposal that they will not seek documents implicating privacy and privilege concerns.

**8. Request No. 36**

**a. Text of Request**

> Documents identifying all DVD titles with subtitles (excluding foreign films with subtitles).

**b. Text of Response and Objections to Request**

> Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix specifically objects to the defined terms "Netflix," "documents" and "subtitles" as vague, ambiguous, and indefinite for the reasons explained in General Objection ¶¶ 5(c), (d), (i) & (l). Netflix further objects because the phrases "all DVD titles with subtitles" and "foreign films with subtitles" are vague, ambiguous, and indefinite, and render the Request overly broad and unduly burdensome. Netflix further objects to this Request as seeking information (regarding "DVD titles") that is irrelevant to this action (concerning closed captioning of Internet protocol-basedvideo programming). Netflix further objects to this Request as overly broad, unduly burdensome, and harassing to the extent it requires Netflix to dig through every single DVD title it possesses to determine whether it contains subtitles. Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or competitively sensitive information. Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection. Netflix objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix objects that the Request is grossly overbroad and unduly burdensome because it is not limited to a discrete time period.

**c. Plaintiffs' Argument**

> This response is relevant and unobjectionable for the reasons set forth above in Plaintiffs' Argument re: Request No. 35.

**d. Netflix's Response Argument**

Netflix's arguments in response to Request No. 35—concerning *Relevance, Overbreadth, and Confidentiality*; *Other Objections*; *Time Period*; *Ambiguity*; and *Privacy and Privilege*—apply with equal force to Request No. 36.

**9. Request No. 38**

**a. Text of Request**

Documents describing the process by which all caption vendors are selected by Netflix, including but not limited to the persons involved in the selection process and the criteria by which such vendors are evaluated.

**b. Text of Response and Objections to Request**

Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix specifically objects to the defined terms “Netflix,” “documents,” “persons,” and “caption” as vague, ambiguous, and indefinite for the reasons explained in General Objection ¶¶ 5(c), (d), (i), (j) & (l). Netflix further objects because the phrases “caption vendors selected by Netflix,” “persons involved in the selection process,” and “the criteria by which such vendors are evaluated” are vague, ambiguous, and indefinite, and render the Request overly broad and unduly burdensome. Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or competitively sensitive information. Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection. Netflix objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix objects that the Request is grossly overbroad and unduly burdensome because it is not limited to a discrete time period.

**c. Plaintiffs’ Argument**

Netflix has stated that it “stands on its objections.” Plaintiffs assume that Netflix is not standing on its ambiguity objections, as it has dropped these elsewhere and they are unsupportable. To the extent Netflix objects based on the confidentiality of the requested information, a protective order is being negotiated. Privilege and work product concerns should be dealt with as required under the Federal Rules and are not grounds for withholding all documents.

As for privacy objections, Netflix has not identified any basis for them to apply here as the requested information does not concern the privacy of any individual, and to the extent Netflix is

concerned about protecting confidential business information, a protective order is being negotiated. Plaintiffs and Netflix have agreed to a relevant time period, from June 2007 to the Present.

To the extent Netflix's objections are based on relevance and/or overbreadth, Plaintiffs note that Netflix has identified in its initial disclosures that "third parties involved in closed captioning of streaming videos," is a relevant topic, as well as documents regarding "the rendering of closed captioning of streaming videos." *See* Exh. H. The information requested here is consistent with these admittedly relevant topics, and is relevant to assess Netflix's defense that it has provided captioning where economically and technologically feasible, and to Netflix's contention that it is unable to provide captioning on video programming that does not already come with captions due to copyright concerns, an argument it has raised in its Motion for Judgment on the Pleadings.6 Plaintiffs are unclear how the information sought for this clearly relevant topic is overbroad or unduly burdensome, and Netflix has not proposed any narrowing.

**d. Netflix's Response Argument**

*Ambiguity*. Again, Netflix did not "drop" any ambiguity objections. Here, Plaintiffs' proposal that Netflix construe requests consistent with Netflix's general understanding of terms used in the Requests does not clarify the ambiguity inherent in, for example, "caption vendors." Throughout meet and confer and in their motion, Plaintiffs have not clarified the meaning of such terms, even though Netflix explicitly called out their problems in its Responses.

*Relevance and Confidentiality*. While third parties involved in captioning videos may be relevant to "claims and defenses" in this action, Fed. R. Civ. P. 26(b)(1), the specific information Plaintiffs seek here—criteria about hose vendors are selected, and names of individuals who help select those vendors—are not relevant, nor are they listed in Netflix's Initial Disclosures. Plaintiffs also do not explain how third-party vendors assisting Netflix in captioning programming involved in captioning are relevant to "copyright concerns" cited above.

In addition, the fact that Plaintiffs seek information that is "consistent" with other narrower topics (such as third parties noted in Netflix's Initial Disclosures) does nothing more than assert that the two topics may concern some form of the same "subject matter": third party vendors. But, as noted, Plaintiffs do not show "good cause" to justify seeking expansive discovery into Netflix's criteria for selecting third party captioning vendors where, as here, Plaintiffs fail to show they are relevant to any claim or defense herein. *Witzel*, 531 F.3d at 118. That the information sought is highly confidential information further militates against compelling Netflix to produce such information without the good cause Plaintiffs fail to provide here. (McEntee Decl. ¶¶ 14–24); *Gee*, 112 F.R.D. at 172; *Ares-Serono, Inc.*, 151 F.R.D. at 219–220. Indeed, Plaintiffs concede that the information is confidential (see above), but make no additional effort to show that the relevance of this information is so great as to justify the risk to Netflix's and third-parties' competitiveness. The fact that a protective order was "being negotiated" does not change this.

*Time Period.* Again, Netflix does not agree that documents concerning captioning practices before the present have any bearing on this action for injunctive relief to regarding Netflix's current captioning efforts.

*Privacy and Privilege*. Netflix stands on its privacy objection to the extent the Request seek private information about third-parties, for whom Netflix cannot waive any privileges. And obviously, privilege is not the only reason for Netflix's decision to object.

## B. Responses to Section Entitled "Requests to Which Netflix Has Agreed to Produce Documents."

### 1. Request No. 7

#### a. Text of Request

> All technology studies or evaluations referring to captioning of streaming content, whether created by Netflix or by third parties.

**b. Text of Response and Objections to Request**

Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix objects to the terms "referring to" and "captioning" as vague, ambiguous, and indefinite for the reasons explained in General Objections ¶¶ 5(d) & (k). Furthermore, Netflix further objects to the phrases "technology studies or evaluations referring to captioning of streaming content" and "technology studies or evaluations" as vague, ambiguous, and indefinite. Netflix also objections to this Request as vague, indefinite, overly broad and unduly burdensome because it seeks documents "created by" unnamed third parties over whom Netflix does not have control. Given the extraordinary breadth of this Request, Netflix further objects to this request as seeking documents not relevant and not reasonably likely to lead to the discovery of admissible evidence. Netflix further objects that "manuals" or "standards" encompasses highly confidential trade secret information (such as, but not limited to, confidential coding information) that is not relevant to this case and not likely to lead to the discovery of relevant information. Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection. Netflix objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or competitively sensitive information. Netflix objects that the Request is grossly overbroad and unduly burdensome because it is not limited to a discrete time period. Netflix further objects to this request as, at least partially, cumulative and duplicative of Request Nos. 6, 16, and 32.

**c. Plaintiffs' Argument**

Netflix stated that it would limit its response to this Request to what it was providing in its initial disclosures, and was not sure whether that would encompass all the documents sought by this request. Worthman Decl. ¶ 11. Plaintiffs request that Netflix provide all responsive documents and clarify whether it is responding to the request in full or not; any objections not already made are waived. Fed. R. Civ. P. 34. The requested information is clearly relevant because Netflix has asserted that

> technology has been a major barrier to captioning all of its content, and it is thus also relevant to Netflix's undue burden defense.

**d. Netflix's Response Argument**

*What Netflix Agreed to Produce.* In its Initial Disclosures, Netflix agreed to produce documents sufficient to show, *inter alia*, Netflix's "challenges to providing captions or subtitles" (provided a sufficient protective order is entered), but did not agree to produce "all technology studies" or "all evaluations" by Netflix or third-parties. (Harper Decl. Ex. A.) Netflix believes this offers the appropriate compromise for this Request.

*Relevance, Overbreadth, and Confidentiality.* Beyond those documents, Plaintiffs' request for "all technology studies" and all "evaluations" is extremely overbroad and would not provide Plaintiffs anything more than the documents on which Netflix would rely for its affirmative defense. In addition, the proprietary studies Plaintiffs seek are, without real dispute, highly confidential proprietary documents of either Netflix or "third-parties." (McEntee Decl. ¶¶ 9–10, 11–13, 14–19.) Thus, Plaintiffs' burden to show the relevance of these materials is particularly high, but Plaintiffs' scant three sentences above does nothing to justify Plaintiffs' massive fishing expedition for all technology studies. *See Gee*, 112 F.R.D. at 172 (balancing risk of competitive injury against need for information); *see Ares-Serono, Inc.*, 151 F.R.D. at 219–220 (same). Even if Plaintiffs made a sufficient showing, Netflix cannot divulge its own highly confidential information, much less that of third-parties, without ample protections. (McEntee Decl. ¶¶ 26–35.) Netflix's proposal—documents sufficient to show challenges to providing captions or subtitles, upon entry of a two-tier protective order—is more than sufficient to show difficulties in captioning.

*Other Objections Are Not "Waived."* Plaintiffs' comment that objections not made are "waived" is confounding. Netflix clearly listed its many objections above.

*Ambiguity*. Netflix accepts Plaintiffs' proposal that Netflix may construe Plaintiffs' requests consistent with Netflix's general understanding. Netflix stands on its objections as to ambiguity because it remains unclear what exactly Plaintiffs seek regarding "technology studies" and "evaluations."

*Time Period.* Netflix welcomes Plaintiffs' narrowing of the general time period to June 2007 to the present, but Netflix does not agree that all documents since that time are relevant to this action for injunctive relief to regarding Netflix's current captioning efforts.

*Privacy and Privilege*. Netflix accepts Plaintiffs' previous proposal that Plaintiffs will not seek documents implicating privacy concerns. Plaintiffs also stated that they would not seek privileged documents.

**2. Request No. 10**

**a. Text of Request**

> All communications or notes of communications with any Persons referring to captioning of streaming content.

**b. Text of Response and Objections to Request**

> Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix specifically objects to the defined terms "communications," "Persons," "referring to," "captioning" and "streaming content" as vague, ambiguous, and indefinite for the reason explained in General Objections ¶¶ 5(d), (e) (h), (j) & (k). Netflix further objects that the term "communications or notes of communications with any Persons referring to captioning of streaming content." Netflix further objects that the Request is overly broad, unduly burdensome, and not likely to lead to the discovery of admissible evidence because it seeks "all" communications with "any" unnamed person that may "refer" in any way to Plaintiffs' amorphous concept of "captioning of streaming content." Netflix objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such

individuals. Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or competitively sensitive information. Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection. Netflix objects that the Request is grossly overbroad and unduly burdensome because it is not limited to a discrete time period. Netflix further objects to this request as, at least partially, cumulative and duplicative of Request Nos. 1, 12, and 15.

**c. Plaintiffs' Argument**

Netflix has stated this Request calls for too many communications and has proposed limiting the request to communications between Netflix and Plaintiffs, only. Plaintiffs do not accept the proposed re-definition, and Netflix was unwilling to discuss any other proposed narrowing or to explain further how this request was burdensome. Exh. G. Netflix has waived the right to offer further objections including with regard to how this Request is purportedly unduly burdensome. Fed. R. Civ. P. 34.

Plaintiffs' Request is relevant because the single issue in this case concerns captioning of Netflix's streaming content. In its Answer, Netflix claims it has captioned Internet-based streaming video content to the extent economically or technologically feasible, while claiming a number of defenses related to technological difficulties with captioning, that captioning would cause a fundamental alteration of its activities, that it does provide auxiliary aids and services to hearing-impaired individuals, and that it would cause Netflix an undue burden to provide all captioning sought by Plaintiffs. Answer at 9th, 10th, and 11th Aff. Defenses. Analysis of the requested communications will provide Plaintiffs further information about the merits of Netflix's defenses and about the nature of injunctive relief Plaintiffs will require to ensure accessibility, while also identifying people within Netflix that have further information relevant to Plaintiffs' single claim and to those defenses. The requested information is expected to inform further discovery and is thus calculated to lead to the discovery of relevant evidence.

Plaintiffs have already narrowed this request, as follows: 1) Plaintiffs agreed to all defined terms in Local Rule 26, thus obviating any objections to defined terms "communications," "persons," or "referring to" (for which Plaintiffs would substitute "concerning" as defined in the Local Rules); 2) As is true for all

> other requests, Plaintiffs are not seeking information that implicates the privacy concerns of any individual under the V PAA; and 3) Plaintiffs are not seeking attorney-client privileged or work product information, assuming such information was in fact covered by privilege and work product, although Plaintiffs believe a log is appropriate under the Federal Rules.

**d. Netflix's Response Argument**

*What Netflix Agreed to Produce.* During the meet-and-confer process, Netflix requested that Plaintiffs narrow the request to produce communications with *Plaintiffs* concerning captioning (provided Plaintiffs were not seeking information implicating privacy or privilege issues). Plaintiffs would not accept this compromise. (Netflix is perplexed by the statement that it did not offer "any other proposed narrowing," as it was Plaintiffs who were unwilling to discuss alternatives.)

*Relevance, Overbreadth, and Confidentiality.* Plaintiffs' request for "all" "communications or notes of communications with "any Person" relating to captioning is extraordinarily overbroad and would require Netflix to dig through every file, every email, and every note for any document that might have something to do with captioning.

Independent of burden of searching for these documents, Plaintiffs make no effort whatsoever to limit the scope of this request to narrower groups of relevant individuals—e.g., Plaintiffs or members of the Plaintiff associations (as Netflix suggested), individuals with disabilities, or any other smaller group of individuals with at least a colorable interest in this litigation.

In addition, Plaintiffs fail to tie these broad requests for all communications regarding to particular "claims and defenses" of a party. Fed. R. Civ. P. 26(b)(1). In essence, Plaintiffs show only that that these communications are relevant to the general subject matter of captioning, but the Federal Rules and First Circuit require Plaintiffs to show "good cause" to justify the extraordinarily broad request here. *Witzel*, 531 F.3d at 118 (declining to consider

discovery requests concerning only "subject matter" of litigation where, as here, Plaintiffs fail to address obligation to show good cause). They clearly fail to do so here.

This request is so broad in scope, moreover, as to encompass all internal communications and communications with third-parties involved in the process of preparing captioning and streaming video content—communications that are extremely competitively sensitive (particularly when dealing with technology and devices in pre-release stages) and prohibited from public disclosure. (McEntee Decl. ¶ 9–10.) Plaintiffs' platitudes that these broad communications are relevant to "[a]nalysis of the requested communications will provide Plaintiffs further information about the merits of Netflix's defenses and about the nature of injunctive relief Plaintiffs will require to ensure accessibility" does not explain why narrower populations that avoid the pitfalls described would not provide the same information to Plaintiffs. Without more, Plaintiffs do not come close to justifying the broad scope of information the seek here.. *See Gee*, 112 F.R.D. at 172 (balancing risk of competitive injury against need for information); *see Ares-Serono, Inc.*, 151 F.R.D. at 219–220 (same).

Even if Plaintiffs made a sufficient showing, Netflix cannot divulge its own highly confidential information, much less that of third-parties, without ample protections. (McEntee Decl. ¶¶ 26–35.) Netflix's proposal—documents sufficient to show challenges to providing captions or subtitles, upon entry of a two-tier protective order—is more than sufficient to show difficulties in captioning.

*Plaintiffs' Comment Regarding "Waived."* Netflix clearly listed its many objections above.

*Ambiguity*. Netflix accepts Plaintiffs' general proposal that Netflix may construe Plaintiffs' requests consistent with Netflix's general understanding.

*Time Period.* Netflix welcomes Plaintiffs' narrowing of the general time period to June 2007 to the present, but Netflix does not agree that all documents since that time are relevant to this action for injunctive relief to regarding Netflix's current captioning efforts. This particularly true here, where Plaintiffs seek all communications with anyone for what amounts to a five-year period.

*Privacy and Privilege*. Netflix accepts Plaintiffs' previous proposal that Plaintiffs will not seek documents implicating privacy concerns or seek privileged documents.

**3. Request No. 11**

**a. Text of Request**

> All agreements with providers of streaming content to Netflix, whether referring to the provision of caption files or not.

**b. Text of Response and Objections to Request**

> Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix objects to the term "streaming content" and "caption[] files" as vague, ambiguous, and indefinite for the reason explained in General Objections ¶¶ 5(d) & (e). Netflix further objects to this request because the phrase "agreements with providers of streaming content to Netflix" and "whether referring to the provision of caption files or not" is vague, ambiguous, overly broad, and unduly burdensome. Netflix Further objects to this Request as overly broad, unduly burdensome, and not likely to lead to the discovery of admissible evidence because it seeks unlimited and unspecified "agreements' with any "provider of streaming content"—regardless whether they relate to "provision of caption files." Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or competitively sensitive information.
>
> Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection. Netflix objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA,

> federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix objects that the Request is grossly overbroad and unduly burdensome because it is not limited to a discrete time period. Netflix further objects to this request as, at least partially, cumulative and duplicative of Request No. 12.

**c. Plaintiffs' Argument**

> In the parties' discovery conference, Netflix said that it would respond to this Request if it were narrowed to seeking agreements between Netflix and providers of captioned content, only. *See* Exh. G. Plaintiffs cannot agree to this proposed narrowing because the gravamen of their complaint is that Netflix has failed to caption all of its streaming content. The agreements with providers of all streaming movies and television programs are relevant to Plaintiffs' claim, particularly where such content is not captioned. Netflix has defended itself by contending that it does not have the right to caption the content that third parties provide without captions.[4] The agreements would shed light on this issue, and on other factors that may constrain or facilitate captioning arising from the relationships between content providers and Netflix. Publicly, Netflix has announced that it "continue[s] to require captions or subtitles from our providers for all new content where it is available, and we continue to author captions or subtitles for significant new content where it is missing." http://blog.netflix.com/2012/02/update-on-captioning-for-our-members.html. Plaintiffs are entitled to test this public assertion and the information sought is relevant to establishing liability, defenses, and remedy.

**d. Netflix's Response Argument**

*What Netflix Offered.* To correct Plaintiffs, Netflix agreed to consider the request if Plaintiffs would narrow it further from all third-party agreements "regarding the use or display of [] content on Watch Instantly," as they admit to stating during the June 4, 2012 discovery conference. (Worthman Decl. Ex. F.) Netflix would consider narrowing the request to *portions* of third-party agreements concerning captioning only, but Plaintiffs would not agree to narrow the request further.

[4] *See*, *e.g.*, Plaintiffs' Surreply in Opposition to Netflix's Motion for Judgment on the Pleadings, ECF No. 48 at 7-9 (discussing and contesting Netflix's contentions as to copyright and control).

*Relevance and Confidentiality*. Plaintiffs seek the entirety of all agreements with all third-parties concerning the provision of all video programming provided on Watch Instantly. Only a tiny portion of any of those contracts—terms governing captioning—are conceivably relevant to justification provided by Plaintiffs above; the remainder of the contracts have no relevance to the "claims and defenses" of a party and do not support Plaintiffs' overbroad request. Fed. R. Civ. P. 26(b)(1). As with many of Plaintiffs' requests, portions of third-party agreements that do not concern captioning are irrelevant to the claims and defenses asserted herein. While they may be tangentially related to the *subject matter* of Netflix's streaming business, but Plaintiffs make no showing, let alone a showing of "good cause," to justify seeking expansive discovery into this broad subject matter, as they must. *Witzel*, 531 F.3d at 118 (declining to consider discovery requests concerning only "subject matter" of litigation where, as here, Plaintiffs fail to address obligation to show good cause).

This concern is particularly acute with respect to the third-party agreements Plaintiffs seek here, which all contain highly confidential information whose disclosure is "strictly prohibited" and would cause competitive harm to Netflix and third parties. (McEntee Decl. ¶¶ 9–10, 26–35); *Gee*, 112 F.R.D. at 172 (balancing risk of competitive injury against need for information); *see Ares-Serono, Inc.*, 151 F.R.D. at 219–220 (noting that court "must exercise its discretion in order to avoid unnecessary disclosure of trade secrets or other confidential business information").

*If* the Court finds these highly confidential agreements the proper subject of discovery, Plaintiffs should be compelled to narrow this Request, as Netflix suggests, to only those portions of agreements that concern "captioning," which is Plaintiffs' sole justification for this request. Plaintiffs make no showing to justify all agreements "whether referring to the provision of captions *or not.*"

In addition, Netflix cannot produce these documents without a protective order offering it the highest levels of protection to ensure the extremely sensitive information contained within them will be protected from disclosure, as required by Netflix's agreements with third-parties.

*Ambiguity.* Although Netflix accepts Plaintiffs' proposal that Netflix may construe Plaintiffs' requests consistent with Netflix's general understanding.

*Time Period.* Netflix does not agree that agreements in place before the present have any bearing on this action for injunctive relief to regarding Netflix's current captioning efforts.

*Privacy and Privilege.* Netflix accepts Plaintiffs' general proposal discussed elsewhere that will not seek documents implicating privacy concerns or privileged documents.

**4. Request No. 12**

**a. Text of Request**

> All documents referring to efforts to obtain caption files from film and television studios, and/or from any other provider of streaming content to Netflix, including but not limited to documents referring to instances where caption files were not provided with streaming content, and Netflix has subsequently sought to obtain caption files, whether successfully or unsuccessfully.

**b. Text of Response and Objections to Request**

> Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix specifically objects to the defined terms "documents," "referring to" and "streaming content" as vague, ambiguous, and indefinite for the reasons explained in General Objections ¶¶ 5 (e), (i), (k). Netflix further objects to the Request because the phrases "efforts to obtain caption files from film and television studios," "other provider of streaming content to Netflix," "instances where caption files were not provided with streaming content," and "subsequently sought to obtain caption files, whether successfully or unsuccessfully" are vague, ambiguous, and unintelligible. Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or

competitively sensitive information. Netflix objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection. Netflix objects that the Request is grossly overbroad and unduly burdensome because it is not limited to a discrete time period. Netflix objects to the Request because, as a whole, it is compound and unintelligible. Netflix further objects to this request as, at least partially, cumulative and duplicative of Request No. 11.

**c. Plaintiffs' Argument**

Netflix has stated that it would narrow this Request to provide only information that it will be producing in its initial disclosures. Worthman Decl. ¶ 11. Netflix has further stated that it does not know whether there would be additional documents withheld from this request on the basis of such a narrowing or not. *Id.*

This Request is not overbroad, and should not necessarily be limited to the documents Netflix will produce in its initial disclosures, unless its response to this request would be co-extensive with its initial disclosures, and there are no additional documents. Plaintiffs clarified this request in their May 22, 2012 letter stating that

> Plaintiffs request seeks all documents in Netflix's possession, custody, or control, that reflect Netflix's efforts, if any, to obtain captions or subtitles from providers of content to Netflix, such as those identified in this blog posting [referring to attempts to acquire captions from providers]. Without limiting their request, Plaintiffs specifically seek documents that refer to instances, if any, where Netflix sought to obtain caption files from "providers" who did not originally provide caption files. Plaintiffs seek these documents regardless of whether Netflix's attempts to follow up and obtain caption files, if there were any such attempts, were successful or unsuccessful.

> *See* Exh. G. Netflix has represented publicly that it "continues to require[s] captions or subtitles from our providers for all new content where it[sic] is available." http://blog.netflix.com/2012/02/update-on-captioning-for-our-members.html, that it captions to the extent economically and technologically feasible, and that it is unable to "control" captioning. The information requested is relevant to these assertions, which in turn, is relevant to liability and remedies. Additionally, Netflix is required to maintain accessible features under the ADA, including, for example, captioning where provided by the television and film studios, and the information requested is relevant to this requirement, as well. *See* 28 C.F.R. § 36.211.

**d. Netflix's Response Argument**

*What Netflix Offered.* During the discovery conference, Netflix stated that documents documents sufficient to show, *inter alia*, Netflix's "challenges to providing captions or subtitles" and "documents regarding third parties involved in the distribution of videos, or the rendering of closed captioning of streaming videos," would suffice here (provided a sufficient protective order is entered). Netflix believes this offers the appropriate compromise for this Request. Plaintiffs did not agree.

*Relevance and Confidentiality.* This Request is objectionable for largely the same reasons as Request No. 11, except that this Request appears broader in that it seeks all documents concerning "efforts" to obtain captions—a request that appears to encompass all contract negotiations with third-parties. There, as here, unly a tiny portion of any of these interactions—governing captioning—are conceivably relevant to justification provided by Plaintiffs above; the remainder of the contracts have no relevance to the "claims and defenses" of a party and do not support Plaintiffs' overbroad request. Fed. R. Civ. P. 26(b)(1). Interactions with third-parties that do not concern captioning are irrelevant to the claims and defenses asserted herein. While they may be tangentially related to the *subject matter* of Netflix's streaming business, but Plaintiffs make no showing, let alone a showing of "good

cause," to justify seeking expansive discovery into this broad subject matter, as they must. *Witzel*, 531 F.3d at 118 (declining to consider discovery requests concerning only "subject matter" of litigation where, as here, Plaintiffs fail to address obligation to show good cause).

Similar concerns regarding interactions with third-parties are present here, given the highly confidential nature of the Netflix's interactions with third parties and the fact that disclosure of such communications is "strictly prohibited" and would cause competitive harm to Netflix and third parties. (McEntee Decl. ¶¶ 6–10, ); *Gee*, 112 F.R.D. at 172 (balancing risk of competitive injury against need for information); *see Ares-Serono, Inc.*, 151 F.R.D. at 219–220 (noting that court "must exercise its discretion in order to avoid unnecessary disclosure of trade secrets or other confidential business information"). These concerns are especially acute given that Plaintiffs seek the disclosure of contract negotiations.

In addition, Netflix has its own proprietary interests regarding its interactions with these third-parties, as discussed extensively in the Declaration of Kevin McEntee (¶¶ 6–25).

Even if the Court orders disclosure, Netflix cannot produce such documents without a protective order offering it the highest levels of protection to ensure the extremely sensitive information contained within them will be protected from disclosure, as required by Netflix's agreements with third-parties.

*Ambiguity*. Netflix accepts Plaintiffs' proposal that Netflix may construe Plaintiffs' requests consistent with Netflix's general understanding.

*Time Period.* Netflix does not agree that agreements in place before the present have any bearing on this action for injunctive relief to regarding Netflix's current captioning efforts.

*Privacy and Privilege*. Netflix accepts Plaintiffs' general proposal discussed elsewhere that will not seek documents implicating privacy concerns or privileged documents.

**5. Request No. 16**

**a. Text of Request**

All studies or analyses referring to captioning, including but not limited to studies or analyses referring to captioning technology, costs of captioning, business and finance issues related to captioning, marketing studies related to captioning, and/or use of captions by audience, whether created by Netflix or by a third-party.

**b. Text of Response and Objections to Request**

Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix specifically objects to the defined terms "documents," "captioning," "streaming content," "referring to," and "Netflix" as vague, ambiguous, and indefinite for the reasons explained in General Objections ¶¶ 5(c), (d), (i), (k) & (l). Netflix further objects to this Request because the phrases "studies or analyses referring to captioning," "captioning technology," "costs of captioning," "business and finance issues related to captioning," "marketing studies related to captioning," "use of captions by audience," and "a third-party" are vague, ambiguous, and indefinite, and render this Request overly broad and unduly burdensome. Netflix further objects to this Request because it seeks "studies or analyses" concerning an amorphous topic whose scope extends far beyond the issues relating to deaf and hard-of-hearing subscribers at issue. Netflix objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection. Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or competitively sensitive information. Netflix objects that the Request is grossly overbroad and unduly burdensome because it is not limited to a discrete time period. Netflix further objects to this request as, at least partially, cumulative and duplicative of Request Nos. 6, 7, and 32.

Subject to and without waiving these objections, Netflix will produce or make available for inspection relevant non-privileged documents sufficient to show results of reports, surveys, and analyses concerning deaf and hard-of-hearing Netflix subscribers' demand for closed captioning on Netflix's Internet-based streaming

> videos from between January 1, 2008 and June 16, 2011, if any exist, in Netflix's possession, custody, or control that can be located through a diligent search and reasonable inquiry. Given the highly confidential nature of the documents this request potentially encompasses, Netflix will produce confidential or private information only under the terms of an appropriate stipulated protective order if and when such order is entered by the Court in this case.

**c. Plaintiffs' Argument**

> Plaintiffs do not accept Netflix's narrowing of their request to "reports, surveys, and analyses concerning deaf and hard-of hearing Netflix subscribers' demand for closed captioning on Netflix's Internet-based streaming videos." (The relevant time period has already been redefined from June 2007 to the present, as described above.)
>
> Plaintiffs' broader request is for studies or analyses concerning captioning, including but not limited to studies or analyses referring to captioning technology, costs of captioning, business and finance issues related to captioning, marketing studies related to captioning, and/or use of captions by audience, whether created by Netflix or by a third-party. The requested information is relevant to Netflix's contention that it has captioned to the extent technologically and economically feasible, and should not be limited to analysis of demand by disabled individuals. The information requested is also relevant to Netflix's undue burden defense, as described above, supra page 8.

**d. Netflix's Response Argument**

*What Netflix Offered.* As noted, Netflix offered to produce "relevant non-privileged documents sufficient to show results of reports, surveys, and analyses concerning deaf and hard-of-hearing Netflix subscribers' demand for closed captioning on Netflix's Internet-based streaming videos" for the relevant time period, provided a protective order is entered. Plaintiffs again refused to accept this compromise. It is worth noting that Netflix has elsewhere agreed to produce "documents sufficient to show plans, policies, and costs related to the closed captioning of Netflix's Watch Instantly Internet-based streaming videos." (*See, e.g.,* Netflix's Response to Request No. 23.) These documents are more than sufficient to address Plaintiffs' issues.

*Relevance, Overbreadth, and Confidentiality*. Like Request No. 7, Plaintiffs' request for "all studies or evaluations" regarding captioning, costs of captioning, finance, business, and related issues is extraordinarily overbroad and does not get Plaintiffs any more relevant information that what Netflix offered to provide.

This Request is even broader (and more objectionable) than Request No. 7 because the information it seeks—regarding captioning, business issues, and the like—are obviously competitively sensitive proprietary documents of either Netflix or "third-parties." (McEntee Decl. ¶¶ 6–25.) Thus, Plaintiffs' burden to show the relevance of these materials is particularly high, but Plaintiffs' statement that these documents—as opposed to Netflix's proposed narrowing—are relevant to show technological feasibility is insufficient. *Gee*, 112 F.R.D. at 172 (balancing risk of competitive injury against need for information); *see Ares-Serono, Inc.*, 151 F.R.D. at 219–220 (same).

In addition, Plaintiffs do not explain how documents beyond those offered by Netflix—"concerning deaf and hard-of-hearing Netflix subscribers' demand for closed captioning on Netflix's Internet-based streaming videos"—are any more relevant or appropriate to Plaintiffs' claims.

Even if Plaintiffs made a sufficient showing, Netflix cannot divulge its own highly confidential information, much less that of third-parties, without ample protections. (McEntee Decl. ¶¶ 9–10, 26–35.)

*Ambiguity*. Netflix accepts Plaintiffs' proposal that Netflix may construe Plaintiffs' requests consistent with Netflix's general understanding.

*Time Period.* Netflix welcomes Plaintiffs' narrowing of the general time period to June 2007 to the present, but Netflix does not agree that all documents since that time are relevant to this action for injunctive relief to regarding Netflix's current captioning efforts.

*Privacy and Privilege*. Netflix accepts Plaintiffs' previous proposal that Plaintiffs will not seek documents implicating privacy concerns. Plaintiffs also stated that they would not seek privileged documents. Plaintiffs notably do not address these objections.

**6. Request No. 23**

**a. Text of Request**

> All documents that refer to cost and management issues related to captioning, including but not limited to documents referring to the nature and cost of captions for Netflix's streaming content; the impact of captioning on Netflix's operations; the financial resources of Netflix and Netflix's type of operations.

**b. Text of Response and Objections to Request**

> Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix specifically objects to the defined terms "documents," "referring to," "captioning," "streaming content," and "Netflix" as vague, ambiguous, and indefinite for the reasons explained in General Objection ¶¶ 5(c), (d), (e), (i), (k), and (l). Netflix further objects on because the phrases "cost and management issues related to captioning," "the nature and cost of captions," "the impact of captioning on Netflix's operations" and "the financial resources of Netflix and Netflix's type of operations" are vague, ambiguous, and indefinite, and render this Request overly broad and unduly burdensome. Netflix further objects that this Request is overly broad and unduly burdensome because it seeks irrelevant documents, and is not reasonably tailored to lead to the discovery of admissible evidence. Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or competitively sensitive information. Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection. Netflix objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix objects that the Request is grossly overbroad and unduly burdensome because it is not limited to a discrete time period. Netflix further objects to this request as, at least partially, cumulative and duplicative of Request No. 24.

> Subject to and without waiving these objections, Netflix will produce or make available for inspection relevant non-privileged documents sufficient to show plans, policies, and costs related to the closed captioning of Netflix's Watch Instantly Internet-based streaming videos from between January 1, 2008 and June 16, 2011, if any exist, in Netflix's possession, custody, or control that can be located through a diligent search and reasonable inquiry. Given the highly confidential nature of the documents this Request potentially encompasses, Netflix will produce confidential or private information only under the terms of an appropriate stipulated protective order if and when such order is entered by the Court in this case.

**c. Plaintiffs' Argument**

> Plaintiffs do not accept Netflix's proposed narrowing, which is limited to documents "sufficient to show plans, policies, and costs" and would not provide other documents concerning cost and management issues related to captioning, such as documents concerning the purported impact of captioning on Netflix's operations and its finances. The information Plaintiffs have requested is relevant to Netflix's asserted defenses, including the undue burden defense and the defense that the captioning sought by Plaintiffs would require a fundamental alteration in its business model, as well as Netflix's statement that economic and technological feasibility issues prevent its further captioning of its streaming content, as discussed supra pages 7 and 19.

**d. Netflix's Response Argument**

*What Netflix Offered.* As noted, Netflix agreed to produce "documents sufficient to show plans, policies, and costs related to the closed captioning of Netflix's Watch Instantly Internet-based streaming videos."

*Relevance, Overbreadth, and Confidentiality.* Plaintiffs contend Netflix's offer is insufficient because it does not address the "purported impact of captioning on Netflix's operations and its finances." Plaintiffs say this is relevant to the "the defense that captioning sought by Plaintiffs would require a fundamental alteration in Netflix's *business model*." This claim is disingenuous, as Netflix's affirmative defense concerns the "fundamental alteration of *activities*—i.e., provision of streaming videos to subscribers—not its "business model." (ECF No. 34, Tenth Aff. Def.) This Request also has nothing to do with undue burden,

concerns the ability or inability to provide captions. Plaintiffs do not show, as they must, how any of the documents beyond what Netflix offered to produce proves and “claims or defenses.” Fed. R. Civ. P. 26(b)(1). Nor do Plaintiffs show good cause for seeking discovery beyond those relevant to a claim or defense. *Witzel*, 531 F.3d at 118.

In addition, the information Plaintiffs seek—regarding captioning, business issues, and the like—are obviously competitively sensitive proprietary documents of either Netflix or “third-parties.” (McEntee Decl. ¶¶ 6–25.) Thus, Plaintiffs’ burden to show the relevance of these materials is particularly high, but Plaintiffs’ statement that these documents—as opposed to Netflix’s proposed narrowing—are relevant to show technological feasibility is insufficient. *Gee*, 112 F.R.D. at 172 (balancing risk of competitive injury against need for information); *see Ares-Serono, Inc.*, 151 F.R.D. at 219–220 (same).

And again, even if Plaintiffs made a sufficient showing, Netflix cannot divulge its own highly confidential information, much less that of third-parties, without ample protections. (McEntee Decl. ¶¶ 9–10, 26–35.)

*Ambiguity*. Netflix accepts Plaintiffs’ proposal that Netflix may construe Plaintiffs’ requests consistent with Netflix’s general understanding.

*Time Period.* Netflix welcomes Plaintiffs’ narrowing of the general time period to June 2007 to the present, but Netflix does not agree that all documents since that time are relevant to this action for injunctive relief to regarding Netflix’s current captioning efforts.

*Privacy and Privilege*. Netflix accepts Plaintiffs’ previous proposal that Plaintiffs will not seek documents implicating privacy concerns. Plaintiffs also stated that they would not seek privileged documents. Plaintiffs notably do not address these objections.

**7. Request No. 29**

**a. Text of Request**

Documents identifying all persons whose responsibilities include captioning streaming content.

**b. Text of Response and Objections to Request**

Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix specifically objects to the defined terms "documents," "referring to," "captioning," "streaming content," and "person" as vague, ambiguous, and indefinite for the reasons explained in General Objection ¶¶ 5(c), (d), (e) & (j). Netflix further objects because the phrase "all persons whose responsibilities include captioning streaming content" is vague, ambiguous, and indefinite, and renders the Request overly broad and unduly burdensome. Netflix further objects that the Request is overly broad, unduly burdensome, and harassing because it seeks documents concerning, without limitation, "all persons" with any "responsibility" for a vague action, and is not limited to any "person" affiliated in any way with Netflix. Netflix objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or competitively sensitive information. Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection. Netflix objects that the Request is grossly overbroad and unduly burdensome because it is not limited to a discrete time period.

Subject to and without waiving these objections, Netflix will produce or make available for inspection relevant non-privileged documents sufficient to show current employees who were employed by Netflix between January 1, 2008 and June 16, 2011, and who, during that period, maintained a supervisory role in providing closed captioning on Netflix's Watch Instantly Internet-based streaming videos, if any exist, in Netflix's possession, custody, or control that can be located through a diligent search and reasonable inquiry. Given the highly

confidential nature of the documents this Request potentially encompasses, Netflix will produce confidential or private information only under the terms of an appropriate stipulated protective order if and when such order is entered by the Court in this case.

**c. Plaintiffs' Argument**

Plaintiffs have agreed with Netflix's proposed narrowing to identify only supervisory employees with responsibility for captioning, rather than all employees. However, Plaintiffs are unaware of any justification for narrowing this Request to *current* rather than *former* employees, so long as those employees had supervisory responsibility over captioning during the relevant time period, as they may possess relevant information concerning Netflix's captioning efforts or lack thereof, and may also have information relevant to Netflix's asserted defenses including those of economic and technological infeasibility. *See In re Bank of Am. Wage & Hour Employment Practices Litig.*, 275 F.R.D. 534, 539 (D. Kan. 2011) (granting discovery as to names of former supervisory employees where they were likely to have information related to challenged policies and procedures).

**d. Netflix's Response Argument**

*The Narrow Dispute Here, Regarding Past Employees.* Plaintiffs concede that they agree to Netflix's proposed narrowing—"relevant non-privileged documents sufficient to show current employees who were employed by Netflix between January 1, 2008 and June 16, 2011, and who, during that period, maintained a supervisory role in providing closed captioning on Netflix's Watch Instantly Internet-based streaming videos, if any exist, in Netflix's possession, custody, or control that can be located through a diligent search and reasonable inquiry," subject to a protective order—except that they seek information about Netflix's *past* supervisor employees.

Information about past employees is irrelevant. Plaintiffs maintain that this action is about forward-looking injunctive relief. As such, information regarding only current employees is relevant, as only they have a potential impact on Netflix's captioning. *See, e.g.*, *Jackson v. AFSCME Local 196*, 246 F.R.D. 410, 414 (D. Conn. 2007) (quashing request for

production of "records of other employees or former employees" as "overly broad"); *Schartz v. Unified Sch. Dist. No. 512*, 1996 U.S. Dist. LEXIS 19123, at *4 (D. Kan. Dec. 18, 1996) (sustaining objection to discovery seeking information about former employees as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence," and in violation of privacy rights).

In contrast, *In re Bank of Am. Wage & Hour Employment Practices Litig.*, 275 F.R.D. 534 (D. Kan. 2011), an employment class action in which information about former managers was permissible only "to the extent of the alleged nationwide policy or practice of the Bank [that] may help [plaintiffs] define the putative class"—is irrelevant to the non-class action seeking only prospective economic relief here. In addition, discovery in employment cases like that case is "more broad" than in non-employment cases. *Rivera v. DHL Global Forwarding*, 272 F.R.D. 50, 54 (D.P.R. 2011) (denying in part motion to compel in employment discrimination suit, even though in employment cases, "the discovery allowed is even more broad" than in cases not involving employment claims).

*Privacy*. Plaintiffs have no answer to Netflix's privacy objections relating to former employees, and, in any event, Netflix is in no position to waive third-parties' privacy claims. *See Schartz*, 1996 U.S. Dist. LEXIS 19123, at *4 (declining to permit discovery regarding former employees in part because of privacy concerns).

**8. Request No. 30**

**a. Text of Request**

> Documents identifying all persons with responsibility for acquiring captions from providers of streaming content.

**b. Text of Response and Objections to Request**

> Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix specifically objects to the defined terms "documents," "referring to," "captioning," "streaming content," and "person"

as vague, ambiguous, and indefinite for the reasons explained in General Objection ¶¶ 5(c), (d), (e) & (j). Netflix further objects because the phrase "all persons with responsibility for acquiring captions from providers of streaming content" is vague, ambiguous, and indefinite, and renders the Request overly broad, unduly burdensome, and harassing because it seeks information regarding any person with even a tangential participation in captioning. Netflix further objects that the Request is overly broad and unduly burdensome because it seeks documents concerning, without limitation, "all persons" with any "responsibility" for a vague action, and is not limited to any "person" affiliated in any way with Netflix. Netflix objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or competitively sensitive information. Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work –product protection doctrine, or any other statutory or common law privilege or protection. Netflix objects that the Request is grossly overbroad and unduly burdensome because it is not limited to a discrete time period.

Subject to and without waiving these objections, Netflix will produce or make available for inspection relevant non-privileged documents sufficient to show current employees who were employed by Netflix between January 1, 2008 and June 16, 2011, and who, during that period, maintained a supervisory role in providing closed captioning on Netflix's Watch Instantly Internet-based streaming videos, if any exist, in Netflix's possession, custody, or control that can be located through a diligent search and reasonable inquiry. Given the highly confidential nature of the documents this Request potentially encompasses, Netflix will produce confidential or private information only under the terms of an appropriate stipulated protective order if and when such order is entered by the Court in this case.

**c. Plaintiffs' Argument**

This response should not be limited to *current* employees for the reasons set forth above in Plaintiffs' Argument re: Request No. 29

**d. Netflix's Response Argument**

(Plaintiffs appear to agree with Netflix's proposal except that they seek information regarding *former* employees. The argument addressing Request No. 29 applies with full force here.)

**9. Request No. 34**

**a. Text of Request**

All documents referring to the percent of Watch Instantly subscribers who elect to use captions when they are available.

**b. Text of Response and Objections to Request**

Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix specifically objects to the defined terms "documents," "referring to," and "captions" as vague, ambiguous, and indefinite for the reason explained in General Objection ¶¶ 5(d), (i), (k) & (l). Netflix further objects because the phrase "percent of Watch Instantly subscribers who elect to use captions when they are available" is vague, ambiguous, and indefinite, and renders the Request overly broad and unduly burdensome. Netflix further objects to this Request because it presupposes Netflix can read the minds of subscribers and document whether they "elect" to act in a prescribed manner. Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or competitively sensitive information. Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection. Netflix further objects to this Request to the extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix objects that the Request is grossly overbroad and unduly burdensome because it is not limited to a discrete time period.

Subject to and without waiving these objections, Netflix will produce or make available for inspection relevant non-privileged documents sufficient to show results of reports,

surveys, and analyses concerning deaf and hard-of-hearing Netflix subscribers' demand for closed captioning on Netflix's Internet-based streaming videos from between January 1, 2008 and June 16, 2011, if any exist, in Netflix's possession, custody, or control that can be located through a diligent search and reasonable inquiry. Given the highly confidential nature of the documents this request potentially encompasses, Netflix will produce confidential or private information only under the terms of an appropriate stipulated protective order if and when such order is entered by the Court in this case.

**c. Plaintiffs' Argument**

As is also true of Request No. 16, above, Plaintiffs do not accept Netflix's narrowing of their Request to "reports, surveys, and analyses concerning deaf and hard-of hearing Netflix subscribers' demand for closed captioning on Netflix's Internet-based streaming videos." (The relevant time period has already been redefined from June 2007 to the present, as described above.)

Plaintiffs have requested specific information concerning documents, if any, concerning the percent of Watch Instantly subscribers who elect to use captions when they are available, not limited to demand by deaf and hard-of-hearing subscribers. The requested information is relevant to Netflix's contention that it has captioned to the extent technologically and economically feasible. Demand for captioning by all viewers is relevant to the calculation of not only the economic costs but also the potential benefits of captioning for Netflix. The requested information is also relevant to assess Netflix's contentions that it has captioned or will caption certain percentages of "most popular" or "most often viewed" content and to designing remedies for Plaintiffs' claim. *See* FAC ¶ 5 (stating Netflix's goal to provide captions on 80% of its "most popular" programming); Netflix's Official Blog, February 29, 2012, http://blog.netflix.com/2012/02/update-on-captioning-for-our-members.html (stating that Netflix is prioritizing titles that are more often watched). Netflix has failed to justify its objections.

**d. Netflix's Response Argument**

*What Netflix Offered*. Netflix offered to produce "relevant non-privileged documents sufficient to show results of reports, surveys, and analyses concerning deaf and hard-of-hearing Netflix subscribers' demand for closed captioning on Netflix's Internet-based

streaming videos" for the applicable time period, and provided a protective order sufficiently protects the confidential information this Request seeks.

*Objections.* To the extent Plaintiffs seek documents beyond what Netflix has offered, Request No. 34 is essentially identical to Request No. 33, so argument concerning No. 33—regarding *Relevance and Confidentiality*; *Other Objections Were Not "Dropped"*; *Ambiguity*; *Time Period*; and *Privacy and Privilege*—apply with full force here. In addition, the Request is overbroad to the extent it presupposes Netflix can read the minds of subscribers and document whether they "elect" to act in a prescribed manner. In addition, although Plaintiffs say they do not seek information protected by the VPPA, information about subscribers' video selection preferences falls squarely within that statute's ambit and may not be disclosed. *See* 18 U.S.C. § 2710(a)(3), (b)(1) (precluding disclosure of information about individual "as having requested or obtained . . . services from a video tape provider).

**10. Request No. 37**

**a. Text of Request**

> All documents referring to use or contemplated use of the recommendation engine for captioned content, if any.

**b. Text of Response and Objections to Request**

> Netflix incorporates by reference its Preliminary Statement and General Objections as if fully set forth herein. Netflix specifically objects to the defined terms "documents" and "captioned" as vague, ambiguous, and indefinite for the reasons explained in General Objection ¶¶ 5(c), (d), (i), and (l). Netflix further objects because the phrases "contemplated use," and "recommendations engine for captioned content" are vague, ambiguous, indefinite, and incomprehensible, and render the Request overly broad and unduly burdensome. Netflix further objects to this Request to the extent that it seeks the disclosure of proprietary, confidential or competitively sensitive information. Netflix further objects to this Request on the ground that it seeks information that is protected from disclosure by the attorney-client privilege, the attorney work-product protection doctrine, or any other statutory or common law privilege or protection. Netflix objects to this Request to the

extent it seeks private or confidential information, which, if disclosed, could constitute an unwarranted invasion into the privacy of any former or current Netflix employee, subscriber, or third-party, whose privacy and confidentiality may be protected by, for example, the VPPA, federal or state constitutions, the common law, custom, contract, or the reasonable expectations of such individuals. Netflix objects that the Request is grossly overbroad and unduly burdensome because it is not limited to a discrete time period.

Subject to and without waiving these objections, Netflix will produce or make available for inspection relevant non-privileged documents sufficient to show plans, policies, and costs related to the closed captioning of Netflix's Watch Instantly Internet-based streaming videos from between January 1, 2008 and June 16, 2011, if any exist, in Netflix's possession, custody, or control that can be located through a diligent search and reasonable inquiry. Given the highly confidential nature of the documents this Request potentially encompasses, Netflix will produce confidential or private information only under the terms of an appropriate stipulated protective order if and when such order is entered by the Court in this case.

**c. Plaintiffs' Argument**

As with numerous other requests, there are no grounds for Netflix to redefine Plaintiffs' request to state that it will provide only "plans, policies, and costs related to closed captioning," rather than responding to the Request as drafted, and Netflix has provided no justification for that limitation. The request as drafted is relevant, as Plaintiffs have alleged that Netflix fails to make its recommendation engine fully accessible to the deaf and hard of hearing. *See* FAC ¶ 49 (alleging that Netflix does not make its recommendation system available to deaf and hard of hearing customers because the system does not have a filter for captions).

**d. Netflix's Response Argument**

*What Netflix Offered.* Netflix offered to produce "relevant non-privileged documents sufficient to show plans, policies, and costs related to the closed captioning of Netflix's Watch Instantly Internet-based streaming videos" upon entry of a sufficient protective order. Netflix's offer avoids the several problems with Plaintiffs' request.

*Relevance and Confidentiality*. Plaintiffs do not state how documents concerning Netflix's "contemplated use" of a recommendation engine are relevant to the "claims and defenses" of a party. Fed. R. Civ. P. 26(b)(1). Plaintiffs assert only that it is relevant to the a single allegation that Netflix does not have a "filter" for captions, but discovery into the subject matter of a recommendation system is not permissible absent a showing of good cause, which Plaintiffs do not make. *Witzel*, 531 F.3d at 118 (declining to consider discovery requests concerning only "subject matter" of litigation where, as here, Plaintiffs fail to address obligation to show good cause).

In any event, information regarding Netflix's internal use of certain technology is clearly sensitive information (McEntee Decl. ¶¶ 14–19), and Plaintiffs fail to make any additional showing justifying access to this information. *Gee*, 112 F.R.D. at 172; *see Ares-Serono, Inc.*, 151 F.R.D. at 219–220. Plaintiffs do not challenge the highly confidential nature of "business model" information. This information is not relevant.

Even if it were, it should not be ordered disclosed without a sufficient protective order.

*Other Objections*. Plaintiffs do not address Netflix's other objections. As to ambiguity, although Netflix accepts Plaintiffs' proposal that Netflix may construe Plaintiffs' requests consistent with Netflix's general understanding, Netflix's "contemplated use" of a recommendation system remains nebulous. As to time period, Netflix does not agree that documents concerning Netflix's "use" of a recommendation system before the present has any bearing on this action for injunctive relief to regarding Netflix's current captioning efforts. As to privacy and privilege, Netflix assumes Plaintiffs do not seek private or privileged information

### C. Response to Plaintiffs' Request for Attorneys' Fees.

If Netflix is successful on Plaintiffs' motion to compel, Netflix is entitled to reasonable attorneys' fees. Fed. R. Civ. P. 37(a)(4)(A). Even if Netflix is not successful, no award of fees against it is proper where, as here, Netflix's "nondisclosure, response, or objection was substantially justified." *Id.* Plaintiffs' statement that Netflix "fail[ed] to respond" to Plaintiffs' discovery is obviously nonsense, and all its objections have been substantially justified by good faith objections. Plaintiffs' request for fees, therefore, should be denied.

July 3, 2012

NETFLIX, INC., by its counsel,

By: /s/ Jacob Harper

MORRISON & FOERSTER LLP
David F. McDowell (CA Bar No. 125806) (*pro hac vice*)
Jacob M. Harper (CA Bar No. 259463) (*pro hac vice*)
555 West Fifth Street, Suite 3500
Los Angeles, California 90013-1024

**CERTIFICATE OF SERVICE**

I, Jacob M. Harper, hereby certify that a copy of the foregoing documents has been served upon all opposing counsel of record by ECF on this 3rd day of July, 2012.

By: /s/ Jacob M. Harper
Jacob M. Harper

1174455