# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

## SPRINGFIELD DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF THE DEAF, WESTERN MASSACHUSETTS ASSOCIATION OF THE DEAF AND HEARING IMPAIRED, and LEE NETTLES,<br><br>                    Plaintiffs,<br><br>          v.<br><br>NETFLIX, INC.,<br><br>                    Defendant. | Civil Action No. 3:11-cv-30168 |

**NETFLIX, INC.'S NOTICE OF MOTION AND MOTION FOR ENTRY OF PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES**

**[ORAL ARGUMENT REQUESTED]**

# <u>TABLE OF CONTENTS</u>

**Page**

NOTICE OF MOTION AND MOTION .................................................................................... III

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1................................................IV

REQUEST FOR ORAL ARGUMENT ..................................................................................... V

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.      INTRODUCTION ........................................................................................................ 1

II.     BRIEF FACTUAL BACKGROUND............................................................................. 3

III.    THE COURT SHOULD ADOPT THE NORTHERN DISTRICT OF
CALIFORNIA'S SENSITIVE INFORMATION EXEMPLAR IN FULL...................... 5

        A.    Applicable Law ................................................................................................ 5

        B.    The Parties Agree to Most of the Terms of the Protective Order ......................... 6

        C.    The Court Should Enter the Protective Order Adopting the Three
Provisions With Which Plaintiffs Disagree .......................................................... 7

                1.    The Protective Order Should Provide Protection for the Wide
Range of Information Netflix Protects as Highly Confidential ................ 8

                2.    The Protective Order Should Limit Access of Highly Confidential
Information Only to Authorized Individuals .......................................... 10

                3.    The Protective Order Should Not Require Netflix to Disclose All
Individuals that Have Access to Its Own Information............................. 14

IV.    CONCLUSION........................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ares-Serono, Inc. v. Organon Int'l B.V.,*
151 F.R.D. 215 (D. Mass. 1993) ............................................................................6

*Aventis Pharma Deutschland Gmbh v. Cobalt Pharms., Inc.,*
2003 U.S. Dist. LEXIS 27236 (D. Mass. 2003) ...................................................15

*Brown Bag Software v. Symantec Corp,*
960 F.2d 1465 (9th Cir. 1991) ..............................................................................14

*Burlington N.R. Co. v. Omaha Public Power Dist.,*
888 F.2d 1228 (8th Cir. 1989) .........................................................................11, 15

*Culp v. Teksystems, Inc.,*
2009 U.S. Dist. LEXIS 31641 (S.D. Cal. Apr. 13, 2009) .....................................15

*Cullen v. Netflic, Inc.,*
N.D. Cal. No. 5:11-cv-01199 (filed Mar. 16, 2011) ....................................1, 2, 15

*Evans v. Univ. Medial Ctr.,*
2012 U.S. Dist. LEXIS 76791 (D. Nev. June 4, 2012) ..........................................15

*Gerffert Co. v. Dean,*
2012 U.S. Dist. LEXIS 78824 (E.D.N.Y. June 6, 2012) .......................................15

*In re Adobe Systems, Inc. Sec. Litigation,*
141 F.R.D. 155 (N.D. Cal. 1992) .......................................................................6, 15

*In re Remington Arms Co.,*
952 F.2d 1029 (8th Cir. 1991) .........................................................................7, 14

*Massachusetts v. Mylan Labs., Inc.,*
246 F.R.D. 87 (D. Mass. 2007 ) ......................................................................13, 14

*McDonnell Douglas Corp. v. NASA,*
180 F.3d 303 (D.C. Cir. 1999) .......................................................................11, 15

*Micro Motion, Inc. v. Kane Steel Co.,*
894 F.2d 1318 (Fed. Cir. 1990) ...........................................................................14

*Simonelli v. Fitzgerald,*
2007 U.S. Dist. LEXIS 49068 (W.D. Tex. July 2, 2007) ......................................15

*Smith & Wesson v. United States,*
782 F.2d 1074 (1st Cir. 1986) ...............................................................................6

*Smithkline Beecham Corp. v. Synthon Pharms., Ltd.*,
  210 F.R.D. 163 (M.D.N.C. 2002) ...................................................................................11, 15

*Standard & Poor's Corp. v. Commodity Exchange, Inc.*,
  541 F. Supp. 1273 (S.D.N.Y. 1982).........................................................................................7

*U.S. Steel Corp. v. United States and U.S. Int'l Trade Comm'n*,
  730 F.2d 1465 (Fed. Cir. 1984)..............................................................................................14

*UARCO, Inc. v. Lam*,
  18 F. Supp. 2d 1116 (D. Haw. 1998) ....................................................................................11

*Union Pac. R.R. Co. v. Mike's Train House, Inc.*,
  2006 U.S. Dist. LEXIS 37373 (D. Neb. May 2, 2006)..........................................................15

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure
  Rule 26 (c)(1)...........................................................................................................................7
  Rule 26(c)(1)(G) .......................................................................................................................6
  (Former) Rule 26(c)(7) .............................................................................................................6
  Rule 26(f)...................................................................................................................................3

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 31, 2012, at 10:00 a.m., or as soon thereafter as this matter may be heard before The Honorable Michael A. Ponsor in the Hampden Courtroom, located at 300 State Street, Springfield, Massachusetts 01105, defendant Netflix, Inc. ("Netflix") will, and hereby does, move for a protective order pursuant to Federal Rules of Civil Procedure 26(c) on the following grounds:

Plaintiffs served Requests for Production of Documents, Interrogatories, and a Deposition Notice broadly seeking disclosure of commercially sensitive information; disclosure of that information would prove competitively harmful to Netflix and third-party business partners; and while Netflix and Plaintiffs previously agreed that a model protective order based on those offered by the Northern District of California is appropriate for this case, Plaintiffs have refused to accept standard terms from the Northern District of California's order governing highly confidential / competitively sensitive information.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Kevin McEntee and Jacob Harper filed herewith, all pleadings and papers on file herein, and such argument and evidence as may be presented.

July 10, 2012

NETFLIX, INC., by its counsel,

By: _____/s/ Jacob M. Harper_____

MORRISON & FOERSTER LLP
David F. McDowell (CA Bar No. 125806) (*pro hac vice*)
Jacob M. Harper (CA Bar No. 259463) (*pro hac vice*)
555 West Fifth Street, Suite 3500
Los Angeles, California  90013-1024
Telephone:     213-892-5200
Facsimile:      213-892-5454

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

Pursuant to Federal Rule of Civil Procedure 26(c)(1) and Local Rule 7.1(a)(2), counsel

met and conferred through correspondence dated May 4, 9, 14, 15, 18, 22 and 29, and call on

June 4, 5, and 7, in a good faith attempt to resolve or narrow the issues raised in this Motion.

July 10, 2012                          NETFLIX, INC., by its counsel,

By:  _____ /s/ Jacob M. Harper _____

MORRISON & FOERSTER LLP
David F. McDowell (CA Bar No. 125806) (*pro hac vice*)
Jacob M. Harper (CA Bar No. 259463) (*pro hac vice*)
555 West Fifth Street, Suite 3500
Los Angeles, California  90013-1024
Telephone:    213-892-5200
Facsimile:     213-892-5454

## **REQUEST FOR ORAL ARGUMENT**

Netflix hereby requests oral argument on the Motion submitted herewith.

July 10, 2012

NETFLIX, INC., by its counsel,

By: _____ /s/ Jacob M. Harper _____

MORRISON & FOERSTER LLP
David F. McDowell (CA Bar No. 125806) (*pro hac vice*)
Jacob M. Harper (CA Bar No. 259463) (*pro hac vice*)
555 West Fifth Street, Suite 3500
Los Angeles, California  90013-1024
Telephone:    213-892-5200
Facsimile:    213-892-5454

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION.**

You can't unscramble an egg.  Once confidential information is disclosed, people don't forget, the information is outside of the original party's control, and its disclosure may not be reversed.  Technology companies like defendant Netflix, Inc., the ubiquitous provider of subscription-based streaming video content, whose businesses can rise and fall with the ability to keep information secret, are well aware of this, as are the courts in the Northern District of California, where many of those companies are based.

Accounting for the common disclosure issues faced by these companies, the Northern District of California provides two standard protective orders that serve as models for courts around the country:  one (the "Low-Level Protection Exemplar") with minimal protections that requires individuals reviewing confidential information to sign a statement that they will not disclose that information; and a second, two-tier order (the "Sensitive Information Exemplar"), incorporating the standard lower level protections for normal "confidential" information, but also imposing additional prohibitions on disclosure of "highly confidential" information to individuals not authorized to view it because of potential conflicts of interest.

For the designating party, the Sensitive Information Exemplar's second layer of protection allows the designating party to preempt conflicts of interest, ensures the highly confidential information does not fall into the wrong hands, and makes the individuals receiving the information accountable to the designating party.  These protections reduce the risk of unauthorized disclosure.  For the party receiving the information, discovery may commence efficiently without the hang-ups inherent in fear of disclosure.  For these reasons, the court in *Cullen v. Netflix, Inc.*, N.D. Cal. No. 5:11-cv-01199—which makes similar allegations that Netflix's closed captioning of streaming video programming violates anti-discrimination laws,

and involves the same types of information—entered a stipulated protective order based on the Sensitive Information Exemplar.  (*see* Supplemental Declaration of Jacob M. Harper [Harper Supp. Decl."] Ex. A, Stipulated and Entered Protective Order.)

In this case, as in *Cullen*, Plaintiffs have sought broad-ranging documents and information about Netflix's streaming video business, including business models, technology, future projections, analyses, information regarding Netflix's relationships with third-party business partners, and proprietary non-public financial information—all types of highly confidential, competitively sensitive information (as detailed thoroughly in the Declaration of Kevin McEntee, Netflix's Vice President of Digital Supply Chain ["McEntee Decl."]) that fall squarely within the intended ambit of the Sensitive Information Exemplar.

The Plaintiffs previously agreed that a protective order is appropriate and agreed, at a minimum, to the protections first-level protections of the Low-Level Protection Exemplar.

At issue here, however, is whether the Court should also adopt the higher-level protections of the Sensitive Information Exemplar.  Unlike in *Cullen*, Plaintiffs here will not agree to it because the parties differ on three discrete issues:  (1) the scope of information qualifying as "highly confidential" and worthy of the Sensitive Information Exemplar's additional protections; (2) whether the Court should enter the additional limits on the individuals viewing "highly confidential" information; and (3) whether the Court should accept Plaintiffs' proposed modifications to create additional burdens on the party designating the information as "highly confidential."

Netflix respectfully requests the Court find in Netflix's favor on all three issues and enter the Sensitive Information Exemplar submitted herewith.  Plaintiffs would obtain documents if

appropriate, while Netflix would enjoy the protections necessary to limit the chances of

irreparably harm from disclosure of sensitive information.

## II.     BRIEF FACTUAL BACKGROUND.

This action concerns Plaintiffs' allegations that Netflix fails to provide sufficient closed

captioning on its "Watch Instantly" streaming video programming website, and thereby violates

Title III of the Americans with Disabilities Act ("ADA").  (ECF No. 19, FAC ¶ 1.)

On September 26, 2011, the parties participated in their Rule 26(f) conference.

(Declaration of Jacob M. Harper in Support of Opposition to Plaintiffs' Motion to Compel and

Netflix's Motion for Protective Order, dated July 3, 2012 ["Harper Decl."] ¶ 2 & Ex. A.)  During

that conference, the parties agreed they would stipulate to entry of a protective order based on an

exemplar from the Northern District of California.  (*Id.* ¶ 2.)  The parties did not agree on which

exemplar to adopt.

Meanwhile, on February 2, 2012, the court in *Cullen v. Netflix, Inc.* entered a stipulated

protective order based on (and with only nonsubstantive changes to) the Northern District of

California's two-tier order for protection of trade secrets and highly confidential information.

(Harper Supp. Decl. ¶ 2 & Ex. A.)

On March 22, 2012, following an approximately four-month Court-imposed stay,

Plaintiffs served its first set of discovery requests, including Requests for Production of

Documents, Interrogatories, and a Notice of Deposition.  (Harper Decl. ¶ 4 & Exs. B-1, B-2, B-

3.)

Plaintiffs' documents requests broadly sought disclosure of information about, *e.g.*,

"Netflix's business model for streaming"; proprietary analyses of viewership; measures of

captioning and streaming costs; "all documents referring to the technology for creating or

processing captioning"; Netflix's relationships with third-party business partners; "technology

studies and evaluations" about streaming video programming and captioning; and details about its streaming video and captioning technologies.  (Harper Decl. Ex. B-1.)

Plaintiffs' proposed deposition topics seek information about, *inter alia*, the "design, development, coordination, implementation, capabilities, and limitations of any and all computer software, hardware, servers or other systems relating to Netflix's Watch Instantly streaming service"; the "processes and methods for acquiring content for Watch Instantly"; "[i]nformation about Netflix's long term goals, policy, and its business model"; and "[i]nformation relating to Netflix's finances, expenses, and budget, including budget and costs of captioning, and the projected cost of similar project."  (Harper Decl. Ex. B-2.)

Likewise, Plaintiffs' interrogatories request that Netflix identify all individuals involved with streaming and captioning, state "goals for captioning during the relevant time period," and "state the budget" for providing captions.  (Harper Decl. Ex. B-3.)

On May 1, 2012, Netflix served its responses and objections, which explained (among other things) that, given the highly confidential nature of the documents Plaintiffs requested, Netflix would produce documents in response to certain discovery requests upon entry of a protective order. (Harper Decl. ¶ 5 & Ex. C.)

The parties then entered a series correspondence regarding the terms of a stipulated protective order.  On May 4, Plaintiffs proposed that Netflix enter into the Northern District of California's Low-Level Protection Exemplar.  (Harper Decl. ¶ 7 & Ex. D.)  On May 9, Netflix proposed the use Northern District of California's Sensitive Information Exemplar, attached specific examples of other orders based on it, and requested that Plaintiffs respond whether that order was acceptable.  (*Id.* ¶ 8  & Ex. E.)  On May 14, having received no response, Netflix sent Plaintiffs a redline of the Sensitive Information Exemplar.  (*Id.* ¶ 9 & Ex. F.)  Plaintiffs replied

that they would agree to the lower level protections of the standard confidentiality provisions, but not to the two-tier protections of the standard order Netflix proposed.  (*Id*. ¶ 10 & Ex. G.)  On May 18, Netflix sent Plaintiffs a four-page letter detailing the necessity of the protections afforded by the Sensitive Information Exemplar.  (*Id.*. ¶ 11 & Ex. H.)  On May 22, Plaintiffs sent a letter concerning Plaintiffs Requests for Production, and a separate letter stating that Plaintiffs "will not agree" to entry of the Sensitive Information Exemplar.  (*Id.* ¶ 12 & Ex. I.)  Netflix responded on May 29.  (*Id.* ¶ 13 & Ex. J.)

At the conclusion of that correspondence, it became clear that the parties agreed generally that the first-level of protection (regarding standard "confidential" information) was necessary, but Plaintiffs would not agree to the additional protections of the Sensitive Information Exemplar (Harper Decl. ¶ 14.)  Netflix, however, explained that it could not produce information sought by Plaintiffs without those protections.  (*Id.*)

Counsel for Plaintiffs and Netflix participated in calls on June 4, June 5, and June 7. During those calls, Plaintiffs confirmed they would not agree to terms for a protective order. (Harper Decl. ¶ 15.)  On June 7, Plaintiffs sent a final redlined proposal making changes to the Sensitive Information Exemplar.  (*Id.*)

On June 11, Plaintiffs filed a motion to compel production of documents.  (ECF No. 49.) Following another short stay ordered by the Court, Netflix filed its opposition on June 3, explaining again (among other things) that the discovery requests on which Plaintiffs' motion was based seek disclosure of highly confidential information that Netflix cannot disclose without sufficient protections.  (ECF No. 58.)[1]

---

[1] Plaintiffs' requests are also overbroad and seek irrelevant and privileged material, among other things, as detailed in Netflix's opposition.

Netflix has attempted in good faith to negotiate a mutually agreeable protective order, but the parties' disagreements as to these three areas apparently leave further compromise impossible.  Netflix seeks, therefore, the Court's assistance in entering a protective order that appropriately limits disclosure of Netflix's and third-parties' competitively sensitive information.

### III.   THE COURT SHOULD ADOPT THE NORTHERN DISTRICT OF CALIFORNIA'S SENSITIVE INFORMATION EXEMPLAR IN FULL

####    A.    Applicable Law.

"[T]o protect a party from annoyance, embarrassment, oppression, or undue burden or expense," the Federal Rules of Civil Procedure ("Rules") authorize a court to enter a protective order "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way."   Fed. R. Civ. P. 26(c)(1)(G) (formerly Rule 26(c)(7)); *Smith & Wesson v. United States*, 782 F.2d 1074, 1082 (1st Cir. 1986) (applying Rule 26(c)(7); affirming district court's decision not to require production of confidential information).

"Protective orders and filings under seal are the primary means by which the courts ensure full disclosure of relevant information, while still preserving the parties' (and third parties') legitimate expectation that confidential business information, proprietary technology and trade secrets will not be publicly disseminated."  *In re Adobe Systems, Inc. Sec. Litigation*, 141 F.R.D. 155, 161–162 (N.D. Cal. 1992).

"[T]he enforcement or the effectiveness of a protective order is somewhat problematic" because "after the fact" protections—such as contempt citations from violation of promises not to disclose—do not redress irreparable harm resulting from disclose of secret information.  *Ares-Serono, Inc. v. Organon Int'l B.V.*, 151 F.R.D. 215, 220 (D. Mass. 1993) (finding protective order that provides two-tier protections for "confidential" and "restricted confidential"

documents helps protect defendant's competitively sensitive information) (*citing In re Remington Arms Co.*, 952 F.2d 1029, 1033 (8th Cir. 1991)).  As the court in *In re Remington Arms* explained:

> In drafting a protective order for the discovery of trade secrets, the district court may take into account the following considerations. First, use of the discovered information should be limited to the particular lawsuit in which it has been shown to be both relevant and necessary to the prosecution of the case. [] Second, the protective order should limit the persons who are given access to the trade secrets. Id. Third, the protective order should limit, or prohibit entirely, the reproduction of all confidential documents.  [] Fourth, the protective order may require a bond to protect against the risk of injury from the disclosure of the trade secrets. Finally, the protective order may designate an attorney to serve as a custodian for all confidential documents.

*In re Remington Arms Co.*, 952 F.2d at 1033 (citations omitted).  Without a protective order, the potential damage from the release of trade secrets is a legitimate basis for denying discovery or modifying a demand. Fed. R. Civ. P. 26 (c)(1); *see also Standard & Poor's Corp. v. Commodity Exchange, Inc.*, 541 F. Supp. 1273, 1277 (S.D.N.Y. 1982) ("Unyielding preservation of the public trial right would in such cases present trade secret owners with the Hobson's choice of suffering an unprosecuted theft of their secrets, or allowing a prosecuted thief to broadcast the same secrets at trial.") (citation and quotation omitted).

**B.      The Parties Agree to Most of the Terms of the Protective Order.**

It is important to note what is *not* at issue:

The parties agree that a protective order is necessary in this case.  (Harper Decl. Ex. A.)

The parties also agree that the Northern District of California's model protective order exemplar should be the basis for protection in this matter.  (Harper Decl. Ex. A.)

In addition, the parties agree to most of the terms of the protective order, including that any information deemed "confidential" (in any form) may not be disclosed without a signed

agreement by individuals viewing that information that they will not disclose to others. (*Compare* Harper Decl. Ex. K.)  Most of the terms of the protective order, therefore, are not in dispute.

### C. The Court Should Enter the Protective Order Adopting the Three Provisions With Which Plaintiffs Disagree.

In meet-and-confer correspondence, however, Plaintiffs have made essentially three suggested revisions that effectively eviscerate the primary additional protections for "highly confidential" information, which changes are reflected in the redline sent to counsel for Netflix during meet-and-confer correspondence.  (Harper Decl. ¶ 17 & Ex. K.)  Those changes highlight the differences remaining between Netflix and Plaintiffs:

- *First*, limiting the scope of the "Highly Confidential—Attorneys' Eyes Only" designation to categories of documents more limited than the scope of actual requests (*Id.* Ex. K at ¶ 2.3);

- *Second*, removing restrictions on individuals permitted to view highly confidential, competitively sensitive documents and information, including by:
  - Defining a "Party" broadly to include any of the thousands of Plaintiff associations the National Association of the Deaf and Western Massachusetts Association of the Deaf and Hearing Impaired, and thereby permitting access to highly confidential documents to any of those members (*id.* Ex. K at ¶ 2.1);

  - Opening access to documents to any "officers, directors, [or] employees" of the receiving party, without permitting the designating party to limit vet those individuals for conflicts (*id.* Ex. K at  ¶¶ 7.3(b), 7.4(a)(1));

  - Removing requirements that protected may be shared only with the "express written permission" of the designating party (*id.* Ex. K at ¶ 7.1, 7.4);

  - Permitting any individual in deposition to view the information without permitting the designating party to review their names or vet them for conflicts (*id.* Ex. K at ¶ 7.3 (e)–(f)); and

- *Third*, imposing unreasonably burdensome restrictions on the party designating documents as confidential, including by:

    o   Requiring a *designating party*—the owner of the information—to disclose the name of individuals reviewing that information to the *receiving* party (*id.* Ex. K at ¶ 7.4(d));

    o   Requiring the parties to agree that they will not seek *any* discovery of any individual that reviews the information whom the party decides not to use, regardless of whether that individual may have access to information independent of her review of the "highly confidential" information (*id.* Ex. K at ¶ 7.4(d).)

For the reasons explained below, these deviations are unacceptable.

**1.**    **The Protective Order Should Provide Protection for the Wide Range of Information Netflix Protects as Highly Confidential.**

As Plaintiffs' redline reflects, Plaintiffs intend to limit the scope of information subject to "highly confidential" designation to certain narrow categories of information. Those narrow categories do not sufficiently cover all the competitively sensitive information requiring protection of a protective order.

As thoroughly discussed in the Declaration of Kevin McEntee, Netflix's Vice President of Digital Supply Chain, the information Plaintiffs seek constitutes highly confidential, competitively sensitive information. Streaming video programming involves sharp competition from a number of competitors. (McEntee Decl. ¶ 2.) Getting video programming content from content owners to Netflix subscribers is an "extremely complicated process" requiring the cooperation and know-how of Netflix and its third-party content owners, as well as their mutual confidence that the competitively sensitive information required for these partnerships will not be disclosed. (*Id.* ¶¶ 2–7.)

The nature and competitiveness of the industry requires that Netflix maintain the highest levels of confidentiality respecting its technology, as well as the information of its third-party business partners, all of whom have similar competitive interests that Netflix may not disclose. (McEntee Decl. ¶¶ 4–5.) As Mr. McEntee explains,

9

> Netflix's ability to work with third-parties and to develop
> proprietary technologies for providing streaming content depends
> critically on the ability to keep the strictest levels of secrecy. If, for
> example, competitors obtained Netflix's proprietary strategic plans
> and technology for providing streaming content, Netflix could
> obviously lose the competitive advantages it now holds over them.
> The same is true of Netflix's third-party partners, each of which
> has similar concerns about their own competitors. Thus, Netflix,
> third-party content owners, third-party device manufacturers and
> suppliers, and other third-parties with whom Netflix works to offer
> streaming content to Netflix subscribers all have a keen
> competitive interest in maintaining the secrecy of that information.

(*Id.* ¶ 6.)   Indeed, "[t]he ability to keep close control of information along the supply chain—

from the types of video programming Netflix wishes to provide, to the terms of the contracts, to

the technology necessary to enable streaming of that programming, to getting that streaming

programming onto any of the myriad devices accessible to Netflix subscribers—is itself one of

Netflix's greatest competitive assets."  (*Id.* ¶ 7.)

For these reasons, a number of broad categories of information require the highest levels

of protection, including:

- Information about third-party content owners, device manufacturers, and service
  providers (including, inter alia, contract terms, pricing information, budget
  information, and technology) (McEntee Decl. ¶¶ 9–10);

- Business plans and competitive analyses (*id.* ¶¶ 11–13);

- Technical information, quality control measures, and statistics about streaming video
  programming (including subscriber information and captioning costs) (*id.* ¶¶ 14–19);

- Data organization structure and methods (*id.*  ¶¶ 20–24); and

- Non-public breakdowns of financial information (*id.*  ¶ 25).

In the regular course of business, Netflix institutes a number of protections both to

prevent disclosure of this information to outside personnel and to limit the individuals with

access to it.  (McEntee Decl. ¶ 26.)  These anti-disclosure measures include a comprehensive

10

"External Communications Policy" that prohibits employees from sharing confidential information with unauthorized personnel (*id.* ¶ 27); non-disclosure provisions in agreements with third-party business partners that preclude disclosure of information (*id.* ¶ 28); the use of Netflix-secure service for storage of electronic documents, to which only Netflix personnel have access (*id.* ¶ 29); and prohibitions on individuals discussing confidential information without authorization (*id.* ¶ 30).

In addition, Netflix and third parties are expressly prohibited from disclosing highly confidential information regarding streaming video programming.  (McEntee Decl. ¶ 9.)

While Mr. McEntee's declaration alone provides sufficient justification for the highest levels of protection, numerous cases also support the notion that such information is entitled to that protection.  *See, e.g.*, *McDonnell Douglas Corp. v. NASA*, 180 F.3d 303, 306-07 (D.C. Cir. 1999) (pricing and other contract terms fell under the protection of the Trade Secrets Act, and thus, protected from disclosure under FOIA); *Burlington N.R. Co. v. Omaha Public Power Dist.*, 888 F.2d 1228, 1231-33 (8th Cir. 1989) (contract terms, including pricing information, constituted a trade secret); *Smithkline Beecham Corp. v. Synthon Pharms., Ltd.*, 210 F.R.D. 163, 168 (M.D.N.C. 2002) ("The information in question involves confidential scientific and commercial information--the exact type the protective order is intended to cover.); *UARCO, Inc. v. Lam*, 18 F. Supp. 2d 1116, 1125 (D. Haw. 1998) (contract terms tailored to individual customers and business partners is confidential); *accord* Restatement (Third) of Unfair Competition § 39 (1995) (defining trade secret as "any formula, pattern, device or compilation of information which is used in one's business, and which give him an opportunity to obtain an advantage over competitors who do not know or use it.").

These broad categories of information clearly qualify for extra protection from disclosure and should be included in the protective order.

### 2.      The Protective Order Should Limit Access of Highly Confidential Information Only to Authorized Individuals.

The Sensitive Information Exemplar limits the individuals with access to information containing information designated "highly confidential" to (1) outside counsel of the receiving party, (2) designated individuals affiliated with the receiving party, and (3) designated "experts" with whom the receiving party chooses to share the information for purposes of litigation only. Under the order, the parties must agree to the individuals reviewing the documents, subject to the designating party's approval (to prevent disclosure of information to individuals that, *e.g.*, work for or are aligned with competitors, or have other interests adverse to the designating party).

These procedures are particularly critical given the expansive scope of the ill-defined plaintiff groups in this lawsuit, filed by two Plaintiff associations—National Organization and the Deaf, and the Massachusetts Association of the Deaf and Hearing Impaired—whose membership purportedly includes unknown numbers of "individuals and associations from all fifty states and Washington, D.C.," and who allegedly represent "36 million" deaf and hard of hearing individuals.  (FAC ¶¶ 4, 10.)  Plaintiffs similarly leave unclear the non-party individuals to whom they intend to disclose the information, any one of whom may work for a Netflix competitor or other entity with interests adverse to Netflix or one of its third-party affiliates.

Plaintiffs will not agree to these disclosures, instead stating that the promise not to disclose low-level "confidential" information is sufficient.  Plaintiffs' limits are not sufficient.

The protections standard in the Sensitive Information Exemplar, however, are necessary to preserve the highly confidential nature of the materials Plaintiffs seek or may seek in discovery, and best emulate the sorts of protections Netflix already requires of this information.

(*See* McEntee Decl. ¶¶ 36–30, discussing Netflix's efforts to maintain confidential information.)

As Mr. McEntee explains,

> The overall purpose of Netflix's efforts to maintain confidentiality is to limit the scope of individuals with access to this information. Netflix does not and cannot rely on promises by non-Netflix personnel that they will not share this information or not use it to Netflix's competitive disadvantage. To these ends, Netflix requires procedural protections that ensure that the information described above remains secret. Netflix knows individuals with access to each type of information discussed above, and can deter violations by punishing violators with various forms of appropriate employee discipline, termination, legal action, or other consequences. This ensures that Netflix's and third-parties' confidential information remains secret.

(McEntee Decl. ¶ 31.) Disclosure of Netflix's and third-parties' confidential information removes the control Netflix has over its personnel. To disclose information to outside parties, Netflix requires similar protections that ensure the scope of access is limited. The protections afforded by the Sensitive Information Exemplar do this.

The written promises not to disclose that Plaintiffs propose do not provide similar protections. As Mr. McEntee states, Netflix "does not believe signed promises not to disclose information (of the type proposed by Plaintiffs in this action) are sufficient to limit the disclosure of the highly valuable information described above. The process of monetary benefit from access to this valuable information far outweighs the deterrent effect of vague promises not to disclose information, even under threat of a contempt citation." (McEntee Decl. ¶ 32.) Netflix requires the names of these individuals to deter them from disclosing the information. (*Id.* ¶¶ 33–34.)

Many courts agree, noting that extra procedural protections limiting access are necessary to limit the potentially devastating consequences of disclosure. One obvious advantage of these extra protections is to limit the number of individuals with access. *See, e.g.*, *Massachusetts v.*

*Mylan Labs., Inc.*, 246 F.R.D. 87, 91 (D. Mass. 2007) ("The defendants' well-taken fear here is that such broad disclosure would eviscerate the effectiveness of the protective order. And from the Court's vantage point, expansive sharing of confidential information would do nothing to advance the present litigation.").

It may be also be impossible to "lock-up trade secrets in [reviewing individuals'] mind[s]," thereby requiring further precautions to ensure only certain qualified individuals can review the information. *Brown Bag Software v. Symantec Corp*, 960 F.2d 1465, 1471 (9th Cir. 1991) (citing *U.S. Steel Corp. v. United States and U.S. Int'l Trade Comm'n*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)

Even if Plaintiffs or their experts do not intend to disclose information, accidental disclosure—which would not be punishable under Plaintiffs' proposal—is no less harmful than intentional disclosure. "Inadvertence, like the thief-in-the-night, is no respecter of its victims." *U.S. Steel*, 730 F.2d at 1468; *see also Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990) (recognizing that "[I]t would be divorced from reality to believe that either party [to the litigation] would serve as champion of its [opponents] to either maintain the confidentiality designation or to limit public disclosure as much as possible during trial.").

While the preventative measures Netflix proposes would go far in reducing the risk of improper disclosure, the after-the-fact remedy of contempt Plaintiffs propose does nothing to resolve the irreparable harm that would result from disclosure. *See In re Remington Arms Co.*, 952 F.2d at 1033 ("Such an after-the-fact remedy is largely ineffectual in [a case involving trade secrets or other competitively sensitive information], however, for once the information is wrongfully released, the trade secret is lost forever and no sanction imposed on the violator can retrieve it.").

Plaintiffs stated their position during the meet-and-confer process that that these protections are inappropriate here because they apply only to competitors. Not so. Courts have imposed these protections as to parties who are not direct business competitors. *E.g.*, *In re Adobe Systems, Inc. Sec. Litigation*, 141 F.R.D. at 161–162 (two-tier protective order appropriate by non-competitor share-holders); *Culp v. Teksystems, Inc.*, 2009 U.S. Dist. LEXIS 31641, at *15 (S.D. Cal. Apr. 13, 2009) (providing two-tier protective order as between class plaintiff and technology company defendant).

For all these reasons, courts in this district and elsewhere have approved exactly the types of limitations Netflix seeks here. *See, e.g.*, *Aventis Pharma Deutschland Gmbh v. Cobalt Pharms., Inc.*, 2003 U.S. Dist. LEXIS 27236, at *8–9 (D. Mass. 2003) (requiring, for disclosure of documents designated "Highly Confidential—Attorneys' Eyes Only" to individuals not specifically permitted in protective order, that receiving party first give disclosing party written notice of the person's name, resume, and statement of past or current relationships with any party; and opportunity to disclosing party to object); *Gerffert Co. v. Dean*, 2012 U.S. Dist. LEXIS 78824 (E.D.N.Y. June 6, 2012) (same; "information may be given to a specific expert does not reveal much in the way of case preparation. . . . simply providing advance notice that this type of highly sensitive and confidential information is being provided to a specific expert or consultant seems appropriate under the circumstances."); *Evans v. Univ. Medial Ctr.*, 2012 U.S. Dist. LEXIS 76791, at *17–20 (D. Nev. June 4, 2012) (same); *Culp v. Teksystems, Inc.*, 2009 U.S. Dist. LEXIS 31641, at *15 (S.D. Cal. Apr. 13, 2009) (same); *Simonelli v. Fitzgerald*, 2007 U.S. Dist. LEXIS 49068, at *16 (W.D. Tex. July 2, 2007) (same); *Union Pac. R.R. Co. v. Mike's Train House, Inc.,* 2006 U.S. Dist. LEXIS 37373 (D. Neb. May 2, 2006) (same); *see also* Harper

Decl. Ex. A, Protective Order in *Cullen v. Netflic, Inc.*, N.D. Cal. No, 5:11-cv-01199 (adopting

protective order proposed herein with limited modifications).

**3.      The Protective Order Should Not Require Netflix to Disclose
All Individuals that Have Access to Its Own Information.**

Plaintiffs have stated that they would agree outside experts reviewing Netflix's highly

confidential information only if (1) the *designating* party discloses the names of all individuals

who have viewed the information (even though the designating party owns the information), and

(2) if the approved expert's testimony ultimately is not used, the opposing party may not seek

discovery from that individual (even if that individual has relevant knowledge independent of her

review of the highly confidential material).  The Court should not accept either condition.

Plaintiffs' first condition—requiring the designating party to disclose all individuals that

have viewed the information—serves no purpose other than to impose a lopsided burden on the

designating party, Netflix.  While the *receiving* party's disclosure of individuals viewing the

highly confidential information permits the owner to limit its accessibility, the receiving party

has no reciprocal interest in limiting the information's disclosure.  Yet, Plaintiffs' condition

would give the receiving party veto power over the designating party's ability to use its own

witnesses to view its own information.  In addition, because many individuals may have viewed

the confidential information in the normal course of business, the designating party would have

to disclose many more names than the receiving party.  And, if nothing else, it is absurd to

preclude the owner of information from sharing that information simply because Plaintiffs have

brought suit against it and served discovery that potentially implicates certain highly confidential

information.  The fact that Plaintiffs may have to disclose one or two expert that may view

Netflix's highly confidential information is a small and nonprejudicial price to pay for their

ability to view Netflix's extremely sensitive and valuable information.  At bottom, Plaintiffs'

16

condition smacks of discovery gamesmanship aimed at crippling Netflix's ability to control its

own information.  It is therefore no surprise that Netflix is unaware of any model protective

order that imposes such a term.

Plaintiffs' second condition—precluding discovery of individuals first designated to view

confidential information, but ultimately not used as a "testifying expert"—is also aimed at

crippling Netflix's ability to defend its case.  Such individuals may well have knowledge of the

case independent of their review of the documents, yet Plaintiffs' condition would preclude

Netflix from obtaining discovery from them.  Plus, nothing in their proposal would bar Plaintiffs

from designating *all* individuals with potential information, retract their position as a "testifying

expert," and thereby preclude Netflix from obtaining any discovery from their witnesses.  If

Plaintiffs were truly worried about discovery into non-testifying experts, they could have

suggested that discovery is limited only to the extent of the witness's review of the confidential

information, but the parties may engage in discovery regarding relevant information they have

independent of that review.  Plaintiffs would not do so.

## IV.    CONCLUSION.

For the foregoing reasons, Netflix respectfully requests the Court enter the protective

order submitted herewith.

July 10, 2012                    NETFLIX, INC., by its counsel,

                               By: _____/s/ Jacob M. Harper_____

1175823                         MORRISON & FOERSTER LLP
                               David F. McDowell (CA Bar No. 125806) (*pro hac vice*)
                               Jacob M. Harper (CA Bar No. 259463) (*pro hac vice*)
                               555 West Fifth Street, Suite 3500
                               Los Angeles, California  90013-1024
                               Telephone:    213-892-5200
                               Facsimile:    213-892-5454

## <u>CERTIFICATE OF SERVICE</u>

I, Jacob M. Harper, hereby certify that a copy of the foregoing documents has been served upon all opposing counsel of record by ECF on this 10th day of July, 2012.

/s/ Jacob M. Harper
Jacob M. Harper