# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

## WESTERN DIVISON

| | |
|---|---|
| NATIONAL ASSOCIATION OF THE DEAF, WESTERN MASSACHUSETTS ASSOCIATION OF THE DEAF AND HEARING IMPAIRED AND LEE NETTLES,<br>Plaintiffs,<br><br>v.<br><br>NETFLIX, INC., a corporation,<br>Defendant. | CIVIL ACTION NO. 11-30168-MAP<br><br>Court:    Hon. Michael A. Ponsor<br>           U.S. District Court<br>           Third Floor<br>           300 State Street<br>           Springfield, MA |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NETFLIX'S MOTION FOR A PROTECTIVE ORDER

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ............................................................................................. 1

II.   BACKGROUND FACTS ................................................................................. 3

    A.    Initial Discussions of Protective Order and Scheduling ......................... 3

    B.    Plaintiffs' Proposed Protective Order:  The Standard Order ................... 4

    C.    Netflix's Proposed Protective Order:  The Highly Sensitive Order ....... 6

    D.    Plaintiffs' Multiple Proposed Compromises ........................................... 8

III.  APPLICABLE LEGAL STANDARDS ......................................................... 11

IV.   ARGUMENT .................................................................................................. 12

    A.    Netflix Has Failed to Justify the Burdensome Protective Order it Seeks. ............ 12

    B.    Netflix's Proposed Restrictions on Plaintiffs' Attorneys' Communications with their Clients Are Unwarranted. .............................. 15

    C.    Netflix's Proposed Expert Disclosure Provisions Would Intrude on Plaintiffs' Litigation Strategy, and Would Provide Netflix with an Unfair Advantage. ....... 18

    D.    Netflix's Proposed Restrictions on Questioning Party Witnesses Are Unjustified. ............................................................................................... 19

V.    CONCLUSION ............................................................................................... 20

## TABLE OF AUTHORITIES

**Page No.**

**FEDERAL CASES**

*Adobe Systems Inc. Securities Litig.*,
    141 F.R.D. 155 (N.D. Cal. 1992) ..................................................................................... 13

*Aventis Pharma Deutschland Gmbh v. Cobalt Pharms., Inc.*,
    2003 U.S. Dist. LEXIS 27236 (D. Mass. 2003) ............................................................ 13

*Culp v. Teksystems, Inc.*,
    2009 U.S. Dist. LEXIS 31641 (S.D. Cal. Apr. 13, 2009) ................................................ 13

*Dr. Sys., Inc. v. Fujifilm Med. Sys. USA, Inc.*,
    70 Fed. R. Serv. 3d 348 (S.D. Cal. 2008) ...................................................................... 15

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003) ....................................................................................... 11

*Gerffert Co. v. Dean*,
    2012 U.S. Dist. LEXIS 78824 (E.D.N.Y. June 6, 2012) ................................................ 13

*Gill v. Gulfstream Park Racing Ass'n Inc.*,
    399 F.3d 391 (1st Cir. 2005) ............................................................................ 2, 11, 13, 20

*Moulay v. Ragingwire Enter. Solutions, Inc.*,
    2:09-CV-03213 GEB, 2010 WL 4628076 (E.D. Cal. Nov. 4, 2010) ........................... 1, 15

*Phase Four Indus., Inc. v. Marathon Coach, Inc.*,
    04-4801 JW, 2006 WL 1465313 (N.D. Cal. May 24, 2006) ........................................ 15

*Simonelli v. Fitzgerald*,
    2007 U.S. Dist. LEXIS 49068 (W.D. Tex. July 2, 2007) ................................................ 13

*Union Pac. R.R. Co. v. Mike's Train House, Inc.*,
    2006 U.S. Dist. LEXIS 37373 (D. Neb. May 2, 2006) ................................................... 13

*United States v. Microsoft Corp.*,
    165 F.3d 952 (D.C. Cir. 1999) ....................................................................................... 11

**FEDERAL RULES**

Fed. R. Civ. P. 26(a)(1) ...................................................................................................... 3, 20

Fed. R. Civ. P. 26(a)(2)(B) ................................................................................................... 18

Fed. R. Civ. P. 26(b)(1) ........................................................................................................ 11

Fed. R. Civ. P. 26(b)(4)(D) ........................................................................................... 18

Fed. R. Civ. P. 26(b)(5) ................................................................................................. 18

Fed. R. Civ. P. 30(b)(1) ................................................................................................. 20

Fed. R. Civ. P. 30(b)(6) ................................................................................................... 1

Fed. R. Civ. P. 26 (c) ........................................................................................... 5, 11, 12

## OTHER AUTHORITIES

Cal. R. Prof. C. 3-500 ................................................................................................... 17

Mass. R. Prof. C. 1.4 .................................................................................................... 17

# I.     INTRODUCTION

Plaintiffs' case is, as the United States Department of Justice has stated, a "garden variety ADA case," in which the National Association of the Deaf ("NAD"), the Western Massachusetts Association of the Deaf and Hearing Impaired ("WMAD/HI"), and Springfield resident Lee Nettles seek injunctive relief requiring Netflix's Watch Instantly service to close caption its streaming video, and thus to make it fully accessible to the deaf and hard of hearing.[1]  As the Court has denied Netflix's Motion to Dismiss and its Motion for Judgment on the Pleadings, and has held that Netflix is subject to the requirements of the Americans with Disabilities Act ("ADA") as a place of public accommodation, it is past time for discovery to proceed.  (*See* ECF Nos. 32, 52.)  Although the agreed-upon and court-approved fact discovery deadline of August 20, 2012 is fast approaching, discovery has stalled because of the obstacles Netflix has imposed, some of which are discussed separately in Plaintiffs' earlier filed Motion to Compel.  (*See* ECF Nos. 49, 51.)  Indeed, to date Netflix has produced just 1,621 pages of documents, nearly all publicly available material including advertisements and promotions, and it has refused to answer interrogatories, or to identify dates or witnesses for Rule 30(b)(6) depositions first noticed March 22, 2012.  (ECF No. 51; Worthman Decl. ¶¶ 6, 7, 19.)[2]

One of the reasons Netflix has given for refusing to produce further information is the need for a protective order.  (*See* ECF No. 62; Motion at 4, 5.)[3]  This justification is unacceptable, as much of the information Plaintiffs seek would not be entitled to any confidentiality protections.  *See Moulay v. Ragingwire Enter. Solutions, Inc.*, 2:09-CV-03213 GEB, 2010 WL 4628076 (E.D. Cal. Nov. 4, 2010) (granting motion to compel where defendant had "inexplicably" withheld production of nonconfidential documents pending resolution of a

---

[1] *See* ECF No. 19 (First Amended Complaint, "FAC")); ECF No. 33 at 31 (Tr., Nov. 14, 2011).
[2] The Declaration of Catha Worthman ("Worthman Decl."), filed concurrently with this brief.
[3] Netflix Inc.'s Motion for Entry of Protective Order referred to herein as "Motion."

motion for a protective order).  Netflix's Motion seeks to impose a further unjustified obstacle to moving this case forward, as it seeks a complicated and burdensome protective order taken from the model Northern District of California protective order for litigation involving patents, highly sensitive confidential information and/or trade secrets.  (*See* ECF No. 62; 62-4.)  Netflix's proposed order imposes restrictions that may be appropriate in cases between business competitors involving trade secrets, but are entirely unnecessary in this straightforward ADA case brought by two non-profits, including the preeminent national organization of the deaf and hearing impaired, a Western Massachusetts advocacy and service organization, and an individual.

Plaintiffs recognize that Netflix has grounds to protect some of the information sought in discovery from disclosure to the general public, and thus agree that some form of a protective order is called for.  Under the standard governing protective orders in the First Circuit, however, it is appropriate to balance the parties' interests in confidentiality with the public interest in determining the scope of a protective order.  *Gill v. Gulfstream Park Racing Ass'n Inc*., 399 F.3d 391, 402 (1st Cir. 2005) (interpreting Fed. R. Civ. Proc. 26 (c)) Under that standard, the typical protective order limiting the disclosure of information to a few individuals from the parties and their retained expert(s) is sufficient, as those individuals would sign an "Acknowledgment and Agreement to be Bound" that they will maintain the confidentiality of protected information and use it only in the litigation, under pain of contempt.  *See infra* sections II.B; IV.A.

None of the reasons Netflix offers for further restrictions has merit.  Netflix errs wildly by stating that without Netflix's version of the protective order in place, Plaintiffs' counsel would be able to share protected confidential material with "thousands" of NAD's and WMAD/HI's members and other associations.  (Motion at 8.)  Rather, Plaintiffs' counsel seek to

ensure that they have the ability to share with their clients (and thus with a few individuals from

NAD and WMAD/HI) the information produced in discovery, as required to involve their clients

in strategic decision-making about their own case.  *See infra* section IV.B.  Second, there are no

grounds to require Plaintiffs to provide early expert disclosure, or to require greater expert

disclosure than is required by the Federal Rules of Civil Procedure, particularly where Netflix

has refused to reciprocate.  *See infra* section IV.C.  Also unavailing is Netflix's contention that it

needs a protective order in advance of depositions to prevent witnesses for any party from being

questioned about confidential material.  Plaintiffs doubt that any witness to the litigation would

threaten Netflix's competitive business interests, but if Netflix were concerned about limiting

access to confidential documents for any particular witness, it would have the ability to do so.

Plaintiffs are required under Rule 26(a)(1) to disclose their witnesses as part of their initial

disclosures, and under Rule 30 (b)(1) no deposition can occur without reasonable notice.  Thus,

in advance of any deposition, Netflix would be able to raise any concerns about the use of any

information marked confidential, and if necessary could object and/or file a motion for a

protective order particular to that witness.  *See infra* section IV.D.

In sum, Netflix's Motion seeks unjustified constraints on Plaintiffs' ability to move their

case forward.  As less restrictive means are available to protect Netflix's confidential

information, Plaintiffs respectfully request that the Court deny Netflix's Motion.

## II.    BACKGROUND FACTS

### A.    Initial Discussions of Protective Order and Scheduling

Plaintiffs have provided background on facts relevant to discovery in Plaintiffs' motion to

compel (ECF No. 51), while Netflix has summarized its point of view regarding the background

relevant to the protective order in its present Motion.  Plaintiffs note here a few additional

relevant background facts, including further comparison of the orders proposed by Netflix and by

Plaintiffs, and describe Plaintiffs' multiple attempts at compromise.

As Netflix notes, Plaintiffs and Netflix first discussed the terms of a possible protective

order in their Rule 26(f) conference held on September 26, 2011 when they discussed the

material that Plaintiffs would seek in discovery and the initial disclosures that Netflix and

Plaintiffs said they would provide.  (Motion at 3; Worthman Decl. at ¶ 2.)

Netflix does not mention, however, that in the extensive back and forth between the

parties over scheduling, Netflix never indicated that it would seek a protective order providing

for early expert disclosure from Plaintiffs, requiring disclosure of consulting as well as testifying

experts, and reserving to itself rights to vet Plaintiffs expert and to oppose use of that expert if

Netflix saw fit—all terms that appear in the protective order that Netflix has moved this Court to

adopt now.  (*See* Harper Decl. at Exh. I;[4] ECF No. 27 (26(f) Report); ECF No. 40 (Joint

Statement).)  In negotiating and setting dates for expert disclosures and reports, and in presenting

the parties' proposed schedules to the Court at the scheduling conference held April 25, 2012,

Plaintiffs assumed that expert disclosure would be limited by the Federal Rules of Civil

Procedure, as usual.  (ECF No. 42, Scheduling Order.)  Netflix, in presenting its proposed

schedule to the Court at the scheduling conference, did not mention that it intended to seek

additional expert disclosures or that motion practice might be necessary for Plaintiffs to be able

to share information with their expert.  (Worthman Decl. at ¶ 5.)  The Scheduling Order itself

makes no mention of such disclosures or possible motion practice.  (ECF No. 42.)

**B.**     **Plaintiffs' Proposed Protective Order:  The Standard Order**

On May 4, 2012, following the scheduling conference and Netflix's service of its

---

[4] Declaration of Jacob Harper in Support of Defendant Netflix, Inc.'s Opposition to Motion to
Compel and Motion for Protective Order ("Harper Decl."), filed twice, at ECF Nos. 59 and 62-2.

objections (but no information) in response to Plaintiffs' discovery requests, Plaintiffs proposed

that the parties use the Northern District of California model protective order governing standard

litigation.  (Motion at 4; Harper Decl. Exh. D; http://www.cand.uscourts.gov/stipprotectorder.)

This "Standard Order" requires limited disclosure of designated confidential material, defined as

"information . . . or tangible things that qualify for protection under Federal Rule of Civil

Procedure 26(c)."  (*See* Worthman Decl., Exh. 1 at § 2.2.)  The Standard Order provides that

"[t]he parties acknowledge that this Order does not confer blanket protections on all disclosures

or responses to discovery and that the protection it affords from public disclosure and use

extends only to the limited information or items that are entitled to confidential treatment under

the applicable legal principles."  (Exh. 1 at 1.)

      The Standard Order provides further that appropriately-designated confidential material

may be used only for prosecuting, defending, or attempting to settle *this* litigation and may not

be used outside this case.  (Exh. 1 at § 7.1.)  Further, disclosure of confidential material is limited

to those individuals "to whom it is reasonably necessary to disclose the information for this

litigation," who have signed the "Acknowledgment and Agreement to be Bound," and who fall

within one of the following categories:

- A party's outside counsel of record, officers, directors, and employees, including in-house counsel (if any).  (Exh. 1 at § 7.2(b).)  (Contrary to Netflix's Motion at 8, the Standard Order would not permit Plaintiffs to indiscriminately share confidential material with all of NAD's affiliates, or with all its members.)[5]

---

[5] Netflix contends that Plaintiffs compromise order, discussed below, would allow such indiscriminate dissemination of information.  (ECF No. 62-2, Exh. K.)  The language Plaintiffs proposed in their compromise is the same as used in the Standard Order, and neither would permit such disclosure.  (*Compare* ECF No. 62-2, Exh. K at § 2.1, § 7.2(b) *with* Exh. A at § 2.1,

- Experts, defined to include "a person with specialized knowledge or experience in a manner pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action." (Exh. 1 at § 7.2(c).)

- The court and its personnel, court reports and their staff, professional jury or trial consultants, mock jurors, and professional vendors; during their depositions, to witnesses in the action; as well as to the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.  (Exh. 1 at § 7.2(d)-(g).)

The Standard Order thus prevents disclosing confidential information to a non-party except in one of a few enumerated narrow exceptions.  It also imposes further restrictions on those to whom information is disclosed:  The Acknowledgment and Agreement to be Bound that any reviewer of confidential information must sign declares under penalty of perjury that the signatory has read the order, agrees to comply and be bound, and "understand[s] and acknowledges that failure to so comply could expose me to sanctions and punishment in the nature of contempt." (Exh. 1 at 12.)  The signatory also agrees to submit to the jurisdiction of the Court for enforcement, and to designate an agent for service of process.  (*Id.*)

## C.    Netflix's Proposed Protective Order:  The Highly Sensitive Order

The protective order first proposed by Netflix on May 14, 2012 is modeled after the Northern District of California order for "litigation involving patents, highly sensitive confidential information and/or trade secrets."  (ECF No. 62-4 at § 2.3); http://www.cand.uscourts.gov/stipprotectorder.  This "Highly Sensitive Order" imposes an additional layer of protection on "Highly Confidential–Attorneys' Eyes Only" material, defined

---

§ 7.2(b).)  As explained *infra*, section IV.B, Plaintiffs do not understand Netflix's persistent misinterpretation of this provision, despite Plaintiffs repeated attempts at reassurance.

as material "disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means."  Under that order,

- Attorneys Eyes Only material may *not* be shared with party Plaintiffs other than their in-house counsel (if any, and, even then, only after certain procedures are followed).  (ECF No. 62-4 at § 7.3.)  Rather, such material may only be shared with (1) outside counsel of record; (2) designated in-house counsel with no involvement in "competitive decision-making," after specific procedures are followed (as discussed below); (3) experts, but only after following those same specific procedures discussed below; (4) the Court and its personnel; (5) court reporters and their staff, (6) professional jury or trial consultants, and professional vendors; and (7) the author or recipient of a document containing the information or a custodian who otherwise possessed or knew the information.  As with the Standard Order, for all of the above categories, disclosure is limited to those individuals "to whom disclosure is reasonably necessary for the litigation," and who have signed the "Acknowledgment and Agreement to be Bound."  (Doc. 62-4 at § 7.3.)

- Under the Highly Sensitive Order, before sharing material designated Attorneys' Eyes Only with either in-house counsel or with an expert, Plaintiffs would be required to take the following steps:

  1) In the case of House Counsel, Plaintiffs must "make a written request to the Designating Party that sets forth the full name of the Designated House Counsel and the city and state of his or her residence, and describes the city and state of his or her residence and (2) describes the Designated House Counsel's current and reasonably foreseeable primary job duties and responsibilities in sufficient detail to determine if House Counsel is involved, or may become involved, in any competitive decision-

making." (Doc. 62-4 at § 7.4(a)(1).)

2)   In the case of an Expert, Plaintiffs must make a written request disclosing (a) the categories of information Plaintiffs wish the expert to review; (b) the expert's full name and the city and state of his primary residence; (c) a copy of the expert's current resume; (d) the expert's current employer; (e) each person or entity from whom the expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has rendered professional services, including in connection with a litigation, at any time during the last five years; and (f) a list of litigation (with name and number of the case, filing date, and location of the court) in which the expert has offered expert testimony during the past five years; while (f) verifying in writing that the expert "will not undertake work prior to the termination of the litigation that would foreseeably result in an improper use of the protected information."  (ECF No. 62-4, at § 7.4 (a).)

- Once those steps are taken, Netflix would have 21 days to object to Plaintiffs' proposed expert disclosure.  If Netflix objects, the Highly Sensitive Order provides for a meet and confer process lasting 14 days.  Then, if no resolution is reached, Plaintiffs would be required to file a motion seeking permission from the Court to disclose the information to the party's expert.  (ECF No. 62-4, at § 7.4(b).)

**D.**      **Plaintiffs' Multiple Proposed Compromises**

Although Plaintiffs do not agree an additional layer of protection is required here, in an effort at reaching agreement without assistance from the Court, Plaintiffs have proposed several compromises, all of which Netflix rejected.

First, and without success, Plaintiffs sought a list of the specific material that Netflix

believed required additional protections beyond the standard protections for confidential business information.  (*See*, *e.g*., Harper Decl. Exh. G; Worthman Decl. ¶¶ 14, 16; Exh. 2 at 5.)  The first time that Netflix provided detailed and specific information to Plaintiffs about the nature of its concerns with confidentiality was in the Declaration of Kevin McEntee, filed with this Court as part of Netflix's opposition to Plaintiffs' motion to compel.  (ECF No. 60, 62-2.)  In pre-filing discussions, Netflix provided only general categories of information that it viewed as being subject to the higher levels of protection.  (*E.g*., Harper Decl., Exh. H.)

Second, Plaintiffs proposed that the parties agree to use of the Standard Order as an interim measure, while reserving the right to seek further protections if necessary.  (Harper Decl., Exh. I.)  Plaintiffs made this proposal because it was not clear to them that information Netflix would designate as Attorneys' Eyes Only was even information that Plaintiffs needed—for example, Plaintiffs agreed that they did not need source code at this point.  (Worthman Decl., ¶ 13.)  Netflix rejected this proposal.  (*Id.*, ¶ 17.)  Plaintiffs also proposed that Netflix begin production of non-confidential documents.  (Harper Decl., Exh. I.)  Although Netflix agreed to produce documents on June 20, 2012, it did not do so until June 26, 2012, and then it produced just over 1,600 pages, principally consisting of publicly available material such as advertisements and promotions, as well as repetitive lists of programming titles.  (Worthman Decl., ¶ 21.)

Finally, on June 7, 2012, Plaintiffs proposed a compromise protective order in the form of a redline of the Highly Sensitive Order.  (*See* ECF No. 62-2 at Exh. K.)  Netflix makes a number of misstatements and mischaracterizations as to Plaintiffs' proposed changes in that suggested compromise.  (Motion at 8.)  The major changes suggested by Plaintiffs to the Order included the following:

- In § 2.1, Plaintiffs changed the erroneous definition of Party, which Netflix had defined to include Donald Cullen—a plaintiff in a different lawsuit against Netflix—to include only Plaintiffs to this action, not, as Netflix contends, to include "thousands of Plaintiff associations" or "any of those members."

- In § 2.3, Plaintiffs modified the categories of information described as being subject to extra protections based on an email from counsel for Netflix, provided to Plaintiffs after they asked for clarification as to the material that Netflix contended required such extra protection.  (Worthman Decl. ¶ 16, Exh. 4; 5.)

- In §§ 7.3(b) and 7.4(a)(1), Plaintiffs' counsel indicated that their clients should be among those with access to all documents in the case, presuming they signed the Agreement and Acknowledgement to be Bound and disclosure to them was "reasonably necessary for the litigation."

- In § 7.1, Plaintiffs made a non-substantive change eliminating a reference to the ability to share information with parties to other litigation with "express written permission," to instead refer to compliance with all conditions in the proposed protective order before such information could be shared.

- In § 7.3, Plaintiffs indicated that counsel should be free to share protected material with their clients' officers, directors, and employees, and with witnesses in depositions, when such disclosure was reasonably necessary and subject to such individuals signing the Acknowledgment and Agreement to be Bound.

- In § 7.4, Plaintiffs proposed that if Netflix wanted to require early expert disclosure from Plaintiffs, and disclosure of consulting as well as testifying experts, that Netflix similarly agree to such disclosure.  Plaintiffs further proposed limitations protecting non-testifying

experts from discovery in § 7.4, presuming that the purpose of the proposed protective

order was not to expand expert discovery, but to ensure that Netflix had no concerns

about its competitive business interests based on the experts Plaintiffs chose.

### III.    APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 26 allows discovery of "any nonprivileged matter that is

relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  For good cause, a court may

grant a protective order limiting or restricting discovery under Rule 26(c).  *Anderson v. Cryovac,*

*Inc.*, 805 F.2d 1, 7 (1st Cir. 1986). "A finding of good cause must be based on a particular factual

demonstration of potential harm, not on conclusory statements." *Id*; *see also Public Citizen v.*

*Liggett Group, Inc.*, 858 F.2d 775, 789 (1st Cir.1988).  Thus, "broad allegations of harm,

unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."

*Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (citation and

quotation marks omitted).

The First Circuit has interpreted Rule 26(c) to require the court to balance the particular

interests in the case in determining whether good cause exists to support a protective order.  *Gill*,

399 F.3d at 402.  "'Rule 26(c) is highly flexible, having been designed to accommodate all

relevant interests as they arise . . . .  [T]he 'good cause' standard in the Rule is a flexible one that

requires an individualized balancing of the many interests that may be present in a particular

case.'"  *Id.* (quoting *United States v. Microsoft Corp.*, 165 F.3d 952, 959-60 (D.C. Cir. 1999)).

Among the interests for the court to balance are "considerations of the public interest, the need

for confidentiality, and privacy interests." *Id.*

//

//

## IV.     ARGUMENT

### A.     Netflix Has Failed to Justify the Burdensome Protective Order it Seeks.

Netflix's motion for a protective order should be denied based on the balance of interests under Rule 26(c), including the interests of the litigants and the public interest.  The First Circuit has stated that "Rule 26(c)'s good cause requirement means that '[a]s a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings."  *Pub. Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 789-90 (1st Cir. 1988).  The public interest is in general served by access, and this is a case of significant public interest as it is brought by leading advocates for the deaf and hard of hearing and would affect accessibility for the over 36 million deaf and hard of hearing individuals in this country.[6] Thus, even the Standard Order proposed by Plaintiffs should be viewed cautiously by the Court, and is far from the "Low Level" order that Netflix labels it.

Plaintiffs respect the need to protect confidential business or personal information despite the strong presumption in favor of disclosure and agree that some of the information that Netflix will be required to produce in discovery would be confidential.  Netflix has not, however, met its burden to justify the use of the restrictive protective order it would impose.  *See Pub. Citizen*, 858 F.2d at 789 (explaining that the burden is on the party seeking to withhold disclosure).

As Plaintiffs pointed out, and as reflected in the cases on which Netflix principally relies, terms like those in the Highly Sensitive Order are appropriate principally in litigation between competitors, or where parties have other, ongoing oppositional relationships.  (Harper Decl., Exh. G.)  Netflix argues that some courts have approved restrictions like those it proposes here in cases other than between direct competitors, but misreads *Adobe Systems Inc. Securities Litig.*,

---

[6] *See* FAC ¶ 4; *see also* Center for Disease Control, Summary Health Statistics for U.S. Adults, National Health Interview Survey (2010), http://www.cdc.gov/nchs/faststats (documenting that over 37 million people in the United States are hearing impaired).

141 F.R.D. 155 (N.D. Cal. 1992), in which there is no indication that the court approved

anything other than a standard confidentiality order.  The majority of cases cited by Netflix

involve suits between competitors, while a few others involve other situations where it would be

particularly damaging to release highly confidential information to the opposing party in

particular, such as in the employee-employer relationship.  (*See* Motion, cases cited at 15.)[7]

In any event, that some courts have approved restrictive protective orders in other

situations does not change the balance of interests in this particular case, which is the relevant

inquiry.  *See Gill*, 399 F.3d at 402.  That the court in *Cullen v. Netflix, Inc.*, N.D. Cal. No. 5:11-

cv-01199, has adopted the protective order herein, for example, is not persuasive when this Court

has already held that *Cullen*, as an unfair business practices case seeking damages under

California law, is a substantially different case than Plaintiffs' ADA case.  (ECF No. 32; ECF

No. 33 at 41:8-14.)

Moreover, the Highly Sensitive Order's text reflects that it is meant to apply between

competitors, as it refers to whether or not an individual is involved in "competitive decision-

making" in establishing whether or not that individual can access Attorneys' Eyes Only

material—but no Plaintiff in this case is involved in competitive decision-making.  The Highly

Sensitive Order defines materials appropriate for protection with the Attorneys' Eyes Only

provision as that material "disclosure of which to another Party or Non-Party would create a

substantial risk of serious harm that could not be avoided by less restrictive means."  (ECF No.

62-4 at § 2.8.)  Netflix has identified no risk of substantial or serious harm in disclosure to

---

[7] *See Aventis Pharma Deutschland Gmbh v. Cobalt Pharms., Inc*., 2003 U.S. Dist. LEXIS 27236, at *8–9 (D. Mass. 2003) (intellectual property suit between competitors); *Gerffert Co. v. Dean*, 2012 U.S. Dist. LEXIS 78824 (E.D.N.Y. June 6, 2012) (same); *Culp v. Teksystems, Inc.*, 2009 U.S. Dist. LEXIS 31641, at *15 (S.D. Cal. Apr. 13, 2009) (employment suit); *Simonelli v. Fitzgerald*, 2007 U.S. Dist. LEXIS 49068, at *16 (W.D. Tex. July 2, 2007) (employment suit involving confidential medical records); *Union Pac. R.R. Co. v. Mike's Train House, Inc*., 2006 U.S. Dist. LEXIS 37373 (D. Neb. May 2, 2006) (trademark infringement).

*Plaintiffs*, only to the public, and, as further discussed below, less restrictive measures are certainly available to protect the confidential information at issue here.

Netflix's discussion of the types of information it views as confidential, including in the Declaration of Kevin McEntee (ECF No. 62-1), does not change this analysis.  In addition to the fact that Mr. McEntee identifies no concern with sharing information with Plaintiffs in particular, the declaration gives the false impression that the information Plaintiffs seek is predominantly of trade secret quality.  In fact, much of the information Plaintiffs require to establish their straightforward case that Netflix fails to caption its content adequately (and to meet the defense that it would impose an undue burden on Netflix to do so) has been made available to the public and/or is the subject of public discussion by Netflix.  For example, although Mr. McEntee states that the terms of third-party contracts are highly confidential, Netflix has announced on its blog that its contracts with providers now require captioning, and has similarly made multiple announcements regarding its specific captioning goals and technological obstacles to further captioning.[8]  As a publicly traded company, Netflix provides regular disclosures regarding its finances and its current and future business plans through filings with the Securities and Exchange Commission and in communications to analysts and investors.[9]  Through its Application Programming Interface ("API"), Netflix makes data available regarding its streaming programming, which third parties can and have used to attempt to generate lists of captioned Netflix programs, and to develop Netflix applications.[10]  Nor do Plaintiffs seek private

---

[8] *See*, *e.g.*, http://blog.netflix.com/2012/02/update-on-captioning-for-our-members.html (referring to contracts with third parties and Netflix's captioning goals); http://www.hackingnetflix.com/2009/06/netflix-explains-the-streaming-closed-caption-problem.html (describing difficulties with captioning).
[9] *See*, *e.g.*, Netflix Investors' Relations Overview, at http://ir.netflix.com/sec.cfm.
[10] *See* http://developer.netflix.com/page/Resources (describing Netflix's API); http://josephsmarr.com/2008/10/01/using-netflixs-new-api-a-step-by-step-guide/ (Step-by-Step Guide to using Netflix's API); http://www.phlixie.com/netflix/ (using Netflix's API to identify subtitled programming).

identifying information about subscribers or employees, as Mr. McEntee states.  (ECF No. 62-1, at ¶ 14.)  It is long past time for Netflix to have produced the non-confidential information Plaintiffs seek, and it is "inexplicabl[e]" that it has not done so.  *Moulay*, 2010 WL 4628076, at *1.[11]

## B.    Netflix's Proposed Restrictions on Plaintiffs' Attorneys' Communications with their Clients Are Unwarranted.

Netflix perseverates in arguing that a two-tier protective order is needed to limit Plaintiffs' sharing confidential information with members of NAD and WMAD/HI, with Netflix falsely charging that these non-profit corporations are "ill-defined."  (Motion at 12, 18.)  Netflix further raises the specter, also without basis, that Plaintiffs will somehow share information marked confidential with the approximately 36 million deaf and hard of hearing individuals living in the United States, unless Plaintiffs' counsel are prevented from sharing this information with their clients in the first place.  (Motion at 12.)

Plaintiffs are mystified by the apparent concern that they would share Netflix's confidential information indiscriminately with NAD's and WMAD/HI's memberships where that information is subject to a protective order like the Standard Order, let alone with the roughly 16% of the general public that is deaf or hard of hearing.[12]  This accusation is as unfathomable as if Plaintiffs accused Netflix of intending to disseminate confidential information produced by Plaintiffs in discovery to Netflix's shareholders and customers.  Netflix appears to conflate the well-established doctrine of associational standing for organizations with the definition of a "party" for purposes of litigation rights and duties.

---

[11] *See also*, *e.g.*, *Phase Four Indus., Inc. v. Marathon Coach, Inc.*, 04-4801 JW, 2006 WL 1465313 (N.D. Cal. May 24, 2006) (granting motion to compel of publicly available financial documents); *Dr. Sys., Inc. v. Fujifilm Med. Sys. USA, Inc.*, 70 Fed. R. Serv. 3d 348 (S.D. Cal. 2008) (explaining why publicly available information must be produced in discovery).
[12] Center for Disease Control, Summary Health Statistics for U.S. Adults, National Health Interview Survey (2010), http://www.cdc.gov/nchs/faststats.

Netflix's argument is particularly perplexing because Plaintiffs have reassured Netflix several times that its stated concern is baseless.  In its responses to Plaintiffs' Request for Production of Documents, Netflix objected that the term "Plaintiffs" was "vague and ambiguous," and Plaintiffs pointed out that the term was specifically and narrowly defined in the requests, while also referring Netflix to the definition of "party" contained in the Court's local rules.  (Worthman Decl. ¶ 14; Exhs. 2, 3.)  Plaintiffs clarified in meeting and conferring with Netflix that the organizational Plaintiffs are themselves separate legal entities, and identified the few, key individuals from each organization relevant for discovery requests.  (Worthman Decl. ¶ 14; Exh. 3; *see also* FAC at 4 ¶¶ 10, 11, describing both NAD and WMAD/HI.)  In discussing the protective order, Plaintiffs reminded Netflix that under the standard protective order proposed by Plaintiffs, disclosure of genuinely confidential information was strictly limited to those individuals for whom disclosure was "reasonably necessary," a limitation that certainly would not include wholesale dissemination of confidential information to all of NAD's and WMAD/HI's members.  (*See* Harper Decl., Exh. I.)

The order proposed by Plaintiffs is sufficiently protective to meet Netflix's concerns, as it would limit sharing confidential information within a "Party."  (Exh. A at § 7.2(b).) As relevant here, under that order protected information may only be shared with "*the officers, directors, and employees (including House Counsel) of the Receiving Party*," and only to such individuals for whom "disclosure is reasonably necessary for this litigation and who have signed the Acknowledgment and Agreement to Be Bound."  *Id.*  No mention is made of *members* of a party in the case of non-profit corporations like NAD and WMAD/HI (or shareholders in the case of a for-profit corporation), and the officers, directors, and employees of NAD and WMAD/HI are a limited group.

Other than its apparent misapprehension about access by NAD's and WMAD/HI's members, Netflix offers no grounds to justify entry of its order, which would exclude Plaintiffs from access to confidential information produced by Netflix in the litigation other than access for house counsel, if any. Plaintiffs' counsel have an ethical duty to share "sufficient information" with their clients so that clients can "participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued." Mass. R. Prof. C. 1.4 [Comment] ; *see also* Cal. R. Prof. C. 3-500 (requiring providing information to a client to keep client up to date, including providing "significant documents"). As critical partners to Plaintiffs' counsel in the litigation, NAD and WMAD/HI (through the few key individuals who represent them) should not be prevented from access to an entire category of information, as that information may bear on their analysis of the strengths and weaknesses of their case, the desirability of particular approaches to the litigation, and/or of the remedies they wish to seek. Further, NAD offers technical expertise to Plaintiffs' counsel, arising from NAD's administration of the Described and Captioned Media Program ("DCMP"), which provides services to support the academic achievement of students who are blind, visually impaired, deaf, hard of hearing, or deaf-blind, with funding from the Department of Education. *See* http://dcmp.org (About Us). There can be no concern that NAD or WMAD/HI as non-profit service organizations are competitors of Netflix, however, and Netflix identifies none other than its vague and unsubstantiated fears. Netflix also identifies no concern about sharing information with individual Plaintiff Lee Nettles, nor can it.

The Court should reject Netflix's motion for an order prohibiting NAD, WMAD/HI, and Lee Nettles from *all* access to any category of information at issue in this litigation, as counsel's communication with their clients should not be limited solely to allay Netflix's groundless fears.

**C.**     **Netflix's Proposed Expert Disclosure Provisions Would Intrude on Plaintiffs' Litigation Strategy, and Would Provide Netflix with an Unfair Advantage.**

Netflix's proposed two-tier order would further impose onerous procedures limiting Plaintiffs' ability to communicate with their chosen expert(s), force Plaintiffs to reveal their expert(s) early, and blur the distinction between testifying and non-testifying experts, thereby intruding into the work product of Plaintiffs' attorneys.  Specifically, as noted above, the two-tier order would require Plaintiffs to seek permission from Netflix before sharing material marked Attorneys' Eyes Only.  *Supra* at section II.C.  To secure that permission, Plaintiffs would first have to provide Netflix with background on that expert, beyond that required by Fed. R. Civ. P. 26(a)(2)(B).  *Id.*  Netflix could then delay or thwart Plaintiffs' ability to communicate with their chosen expert by objecting to Plaintiffs' choice, and the ability to proceed would only be resolved with further motion practice.  *Id.*

The two-tier protective order thus results in significant litigation advantages to Netflix that are appropriate only in "exceptional circumstances" not present here.  *See* Fed. R. Civ. P. 26(b)(4)(D); 26(b)(5) (limiting disclosure as to experts hired for trial preparation only, and describing protection for trial preparation materials generally); *see also MGP Ingredients, Inc. v. Mars*, *Inc*., CIVA 06-2318 JWLDJW, 2007 WL 756645 (D. Kan. Mar. 8, 2007) (rejecting defendant's application for a two-tier protective order requiring permission and expert disclosure where the parties to the litigation were not competitors).  As stated by the court in *MGP Ingredients*, "forced disclosure of the identities of a party's non-testifying experts and consultants represents an unwarranted intrusion into the party's litigation strategy and would provide the opposing party with an unjust advantage," as well as "subvert[ing] the principle of fairness underlying Rule 26(b)(4)[D]."  2007 WL 756645, at *4.  Furthermore, much of the information sought to be disclosed about the expert "bears little or no relationship to whether the

expert/consultant poses the risk of divulging confidential information to a competitor." *Id.*

Despite their view that Netflix's proposed expert restrictions are unwarranted, Plaintiffs sought to mitigate Netflix's concerns with a compromise, in which both parties would engage in mutual expert disclosure and limitations on discovery for non-testifying experts would be maintained, thus equalizing the litigation advantages and disadvantages while, at the same time, providing Netflix the assurances it sought. *Supra* section II.D. Ironically, Netflix accuses Plaintiffs of "gamesmanship" although its counsel proposed the limitation on depositions of non-testifying experts as a possible modification of the Highly Sensitive Order, and Netflix is seeking an entirely one-sided burden on Plaintiffs for additional expert disclosure, without reciprocity. Worthman Decl. ¶ 17. Netflix's proposed Highly Sensitive Order allows for sharing information with jury and trial consultants, suggesting, perhaps, that Netflix is not genuinely concerned about exposure of the information to third parties. (Exh. 62-4 at § 7.3(e).) Netflix's accusation is not well-taken.

**D.** **Netflix's Proposed Restrictions on Questioning Party Witnesses Are Unjustified.**

Finally, the Highly Sensitive Order Netflix proposes would prevent witnesses from being shown Attorneys' Eyes Only material under any circumstances, other than the author or recipient of a document containing the information. *Supra* section II.D. Again, this is unduly restrictive.

Plaintiffs' proposal would allow for material to be shown to witnesses for any party *during their depositions*. (Exh. A at § 7.2(f).) While Netflix protests that this would result in unpredictable chaos since it would not know who was going to be shown the material, its purported concern is belied by the requirements of the Federal Rules and the discovery process.

Netflix would always know who Plaintiffs' witnesses are going to be well ahead of any deposition, and could object and seek a further protective order if necessary if Plaintiffs' witness

is one whom Netflix has legitimate grounds for excluding from viewing the protected material. Rule 30 requires that depositions be scheduled only with "reasonable notice."  Fed. R. Civ. P. 30(b)(1).

Moreover, the names of the witnesses Plaintiffs will depose cannot be a surprise for Netflix, since Plaintiffs are required to disclose the names of the witnesses they expect will support them in their Initial Disclosures.  Fed. R. Civ. P. 26(a)(1)(A)(i).  Yet, Netflix did not identify any specific individuals in its Motion about whom it has concerns, demonstrating that its proposed restriction is not based on any particular concerns, and thus is inappropriate as a basis for the protective order it seeks.  *See Gill*, 399 F.3d at 402 (requiring balancing of particular interests in evaluating a protective order); *Anderson*, 805 F.2d at 7 (same).

## V.      CONCLUSION

For all the above stated reasons, Plaintiffs respectfully request that the Court deny Netflix's Motion.

Date:   July 24, 2012                       Respectfully Submitted,

                                            ATTORNEYS FOR PLAINTIFFS

                                            By:      __/s/ Catha Worthman_____

                                                     Bill Lann Lee, pro hac vice
                                                     Catha Worthman, pro hac vice
                                                     Joshua Davidson, pro hac vice
                                                     LEWIS, FEINBERG, LEE, RENAKER &
                                                     JACKSON, P.C.
                                                     476 9th Street
                                                     Oakland, CA  94607-4048
                                                     Telephone: (510) 839-6824
                                                     bseligman@lewisfeinberg.com
                                                     blee@lewisfeinberg.com
                                                     cworthman@lewisfeinberg.com
                                                     jdavidson@lewisfeinberg.com

                                                     Arlene Mayerson, pro hac vice
                                                     Charlotte Lanvers, pro hac vice
                                                     Shira Wakschlag, pro hac vice
                                                     DISABILITY RIGHTS EDUCATION AND
                                                     DEFENSE FUND, INC.
                                                     3075 Adeline Street, Suite 210
                                                     Berkeley, CA  94703
                                                     Telephone: (510) 644-2555
                                                     amayerson@dredf.org
                                                     clanvers@dredf.org
                                                     swakschlag@dredf.org

                                                     Christine M. Netski, BBO #546936
                                                     SUGARMAN, ROGERS, BARSHAK &
                                                     COHEN, P.C.
                                                     101 Merrimac Street
                                                     Boston, MA  02114-4737
                                                     Telephone:  (617) 227-3030
                                                     netski@srbc.com

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Plaintiffs hereby request a hearing on Defendant Netflix,

Inc.'s Motion for a Protective Order, filed with the Court on July 10, 2012, as ECF No. 62.

Respectfully Submitted,

Date:   July 24, 2012                     ATTORNEYS FOR PLAINTIFFS

                                          By:      _/s/ Catha Worthman_____

                                          Bill Lann Lee (pro hac vice)
                                          Catha Worthman (pro hac vice)
                                          Joshua Davidson (pro hac vice)
                                          LEWIS, FEINBERG, LEE, RENAKER &
                                          JACKSON, P.C.
                                          476 9th Street
                                          Oakland, CA  94607-4048
                                          Telephone: (510) 839-6824
                                          bseligman@lewisfeinberg.com
                                          blee@lewisfeinberg.com
                                          cworthman@lewisfeinberg.com
                                          jdavidson@lewisfeinberg.com

                                          Arlene Mayerson (pro hac vice)
                                          Charlotte Lanvers (pro hac vice)
                                          Shira Wakschlag (pro hac vice)
                                          DISABILITY RIGHTS EDUCATION AND
                                          DEFENSE FUND, INC.
                                          3075 Adeline Street, Suite 210
                                          Berkeley, CA  94703
                                          Telephone: (510) 644-2555
                                          amayerson@dredf.org
                                          clanvers@dredf.org
                                          swakschlag@dredf.org

                                          Christine M. Netski, BBO #546936
                                          SUGARMAN, ROGERS, BARSHAK &
                                          COHEN, P.C.
                                          101 Merrimac Street
                                          Boston, MA  02114-4737
                                          Telephone:  (617) 227-3030
                                          netski@srbc.com

**CERTIFICATE OF SERVICE**

I, Catha Worthman, hereby certify that a copy of the foregoing document has been served upon all opposing counsel of record, by ECF on this 24th day of July, 2012.

_____/s/ Catha Worthman_____

Catha Worthman