**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

**SPRINGFIELD DIVISION**

| | |
|---|---|
| NATIONAL ASSOCIATION OF THE DEAF, WESTERN MASSACHUSETTS ASSOCIATION OF THE DEAF AND HEARING IMPAIRED, and LEE NETTLES, <br><br> Plaintiffs, <br><br> v. <br><br> NETFLIX, INC., <br><br> Defendant. | Civil Action No. 3:11-cv-30168 |

**NETFLIX, INC.'S NOTICE OF MOTION AND
MOTION FOR AMENDMENT OF JUNE 19, 2012, ORDER
TO CERTIFY FOR INTERLOCUTORY REVIEW**

**[ORAL ARGUMENT REQUESTED]**

# <u>TABLE OF CONTENTS</u>

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.      INTRODUCTION ..................................................................................................... 1

II.     THE COURT'S DECISION EASILY SATISFIES THE
THREE FACTORS WARRANTING INTERLOCUTORY APPEAL
UNDER 28 U.S.C ..................................................................................................... 4

        A.     The Court's Decision Involves a Controlling Question of Law. ........................... 4

        B.     The Court's Decision Involves Issues as to Which There
Are Substantial Grounds for Differences of Opinion ........................................... 7

                1.     Whether the regulatory scope of the ADA's provisions
governing places of "public" accommodation should
be expanded to regulate the private residential sphere .............................. 7

                2.     Whether the ADA should be applied to the Internet.................................. 9

                3.     Whether the broad and general ADA may apply to
conduct expressly governed by the CVAA, and
whether streaming video programming providers
can comply with both the  ADA and CVAA ........................................... 11

                4.     Whether the CVAA, by its terms, applies to all
video programming, or only certain forms of
video programming formerly displayed on television ............................. 14

        C.     An Immediate Appeal From the Order Would Materially
Advance the Ultimate Termination of This Litigation. ...................................... 16

III.    AN IMMEDIATE APPEAL WILL AVOID UNCERTAINTY IN THE
STREAMING VIDEO PROGRAMMING INDUSTRY ................................................. 17

IV.    A STAY SHOULD BE ENTERED PENDING DETERMINATION
OF THE APPEAL......................................................................................................... 18

V.     PLAINTIFFS' SUGGESTION THIS MOTION IS  UNTIMELY LACKS MERIT ...... 18

VI.    CONCLUSION.......................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

Cases

*APCC Servs. v. Sprint Commc'ns. Co.*,
  297 F. Supp. 2d 90 (D.D.C. 2003) ........................................................................5

*Analog Devices, Inc. v. Linear Tech. Corp.*,
  479 F. Supp. 2d 202 (D. Mass. 2007) ...................................................................15

*Ass'n of Irritated Residents v. Fred Schakel Dairy*,
  634 F. Supp. 2d 1081 (E.D. Cal. 2008)................................................................17

*Bates v. Dura Auto. Sys., Inc.*, No. 1:08-0029,
  2009 U.S. Dist. LEXIS 67301,
  2009 WL 2356546 (M.D. Tenn. July 29, 2009) ............................................18, 19

*Bobrowsky v. Curran*,
  333 F. Supp. 2d 159 (S.D.N.Y. 2004).....................................................................8

*Boyer v. Gildea*,
  378 B.R. 238 (N.D. Ind. 2007) ............................................................................19

*Camacho v. P.R. Ports Auth.*,
  267 F. Supp. 2d 174, D.P.R. 2003) ......................................................................19

*Carparts Distribution Center v. Auto Wholesaler's Association*,
  37 F.3d 12 (1st Cir. 1994)............................................................................10, 11

*Cullen v. Netflix, Inc.*,
  No. 5:11-cv-01199,
  2012 U.S. Dist. LEXIS 97884,
  2012 WL 2906245 (N.D. Cal. July 13, 2012)................................................11, 19

*Genentech, Inc. v. Novo Nordisk A/S*,
  907 F. Supp. 97 (S.D.N.Y. 1995).........................................................................17

*Giddes v. Glens Falls Ins. Co.*,
  No. 2:02-CV-282-FTM-29NF,
  2003 U.S. Dist. LEXIS 25109,
   2003 WL 23486911 (M.D. Fla. Aug. 5, 2003) ....................................................19

*Greater Los Angeles Agency on Deafness, Inc., et al. v. Time Warner, Inc.*,
  No. 3:11-cv-03458 (N.D. Cal. filed June 15, 2011) .............................................13

*Greenwood Trust Co. v. Commonwealth of Mass.*,
  971 F.2d 818 (1st Cir. 1992).................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Independent Hous. Servs. v. Fillmore Ctr. Assocs.*,
   840 F. Supp. 1328 (N.D. Cal. 1993) ..................................................................................9

*Johnson v. Apple Inc.*,
   Case No. 1-11CV-212284 (Cal. Super. Ct., County of Santa Clara)................................12, 19

*Johnson v. Burken*,
   930 F.2d 1202 (7th Cir. 1991) ..................................................................................5

*Klinghoffer v. S.N.C. Achille Lauro*,
   921 F.2d 21 (2d Cir. 1990)..................................................................................17

*Lampi Corp. v. Am. Power Prods.*,
   228 F.3d 1365 (Fed. Cir. 2000)..................................................................................15

*Marriott Int'l Resorts, L.P. v. United States*,
   63 Fed. Cl. 144 (Fed. Cl. 2004) ..................................................................................19

*Mattioni, Mattioni & Mattioni, Ltd. v. Ecological Shipping Corp.*,
   530 F. Supp. 910 (E.D. Pa. 1981) ..................................................................................17

*McGillicuddy v. Clements*,
   746 F.2d 76 (1st Cir. 1984)..................................................................................7

*McLaurin v. United States*,
   No. 2:06cv169KS,
   2008 U.S. Dist. LEXIS 30481
   2008 WL 782487 (S.D. Miss. Mar. 24, 2008) ..................................................................................19

*Miara v. First Allmerica Fin. Life Ins. Co.*,
   379 F. Supp. 2d 20 (D. Mass. 2005) ................................................................. *passim*

*Mitchell v. Walters*,
   No. 10-1061,
   2010 U.S. Dist. LEXIS 93265,
   2010 WL 3614210 (D.N.J. Sept. 8, 2010) ..................................................................................9

*Mueller v. First Nat'l Bank of the Quad Cities*,
   797 F. Supp. 656 (C.D. Ill. 1992) ..................................................................................18

*Nat'l Fed'n of the Blind v. Target Corp.*,
   452 F. Supp. 2d 946 (N.D. Cal. 2006) ..................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Palmer v. Liggett Group, Inc.*,
    825 F.2d 620 (1st Cir. 1987) .................................................................................................11

*Philip Morris Inc. v. Harshbarger*,
    957 F. Supp. 327 (D. Mass. 1997) ................................................................................. passim

*Powell v. Houtsma*, No. 04-4831,
    2005 U.S. Dist. LEXIS 44528,
    2005 WL 464687 (N.D. Ill. Feb. 25, 2005) .............................................................................9

*Public Interest Research Group v. Hercules, Inc.*,
    830 F. Supp. 1549 (D.N.J. 1993) ..........................................................................................16

*RadLAX Gateway Hotel LLC v. Amalgamated Bank*,
    __ U.S. __, 132 S. Ct. 2065, 182 L.Ed.2d 967 (2012) ...........................................................13

*Rathbun v. Autozone, Inc.*,
    361 F.3d 62 (1st Cir. 2004) .....................................................................................................12

*Resolution Trust Corp. v. Gallagher*,
    No. 92 C 1091,
    1992 U.S. Dist. LEXIS 16226,
    1992 WL 315218 (N.D. Ill. Oct. 23, 1992) ............................................................................16

*Rissetto v. Plumbers & Steamfitters Local 343*,
    94 F.3d 597 (9th Cir. 1996) ....................................................................................................15

*Stark v. Advanced Magnetics, Inc.*,
    894 F. Supp. 555 (D. Mass. 1995) ...........................................................................................5

*Torres v. AT&T Broadband, LLC*,
    158 F. Supp. 2d 1035 (N.D. Cal. 2001) ...................................................................................8

*United States v. Abrahams*,
    493 F. Supp. 296 (S.D.N.Y. 1980) .........................................................................................12

*United States v. Sampson*, No. 01-10384,
    2012 U.S. Dist. LEXIS 65256,
    2012 WL 1633296 (D. Mass. May 10, 2012) ..........................................................................7

*Wells Fargo Bank v. Bourns*, *Inc.*,
    860 F. Supp. 709 (N.D. Cal. 1994) ..........................................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Welsh v. Boy Scouts of America*,
    993 F.2d 1267 (7th Cir. 1993) ................................................................8

*Zulauf v. Kentucky Educational Television*,
    28 F. Supp. 2d 1022 (E.D. Ky. 1998) ..................................................13


STATUTES & REGULATIONS

Fed. R. App. P.
    Rule 5(a)......................................................................................1, 18, 19
    Rule 5(a)–(d) ...........................................................................................18

28 U.S.C.
    § 1292(b) ......................................................................................... passim

47 U.S.C.
    § 613(b).....................................................................................................14

47 C.F.R.
    § 79.4(a)(1) .............................................................................................14


OTHER AUTHORITIES

19 James Wm. Moore, *Moore's Federal Prac.*
    § 203.31[2] (3d ed. 2012) ........................................................................4

16 Miller, Cooper, & Wright, *Federal Practice & Procedure* (2d ed. 1996)
    § 3930....................................................................................................4, 5, 6

*Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations*,
    75 Fed. Reg. 43,460, 43,466 (July 26, 2010).........................................10

Fed. Reg. Unified Agenda 1190-AA63,
    http://federalregister.gov/r/1190-AA63 (Fall 2011) ............................10

S. Rep. No. 111-386..........................................................................................15

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on August 20, 2012, at 10:00 a.m., or as soon thereafter as this matter may be heard before The Honorable Michael A. Ponsor in the Hampden Courtroom, located at 300 State Street, Springfield, Massachusetts 01105, defendant Netflix, Inc. ("Netflix") will, and hereby does, move for an order pursuant to 28 U.S.C. § 1292(b) amending the Court's June 19, 2012, Order on the following grounds:   That the Order involves controlling questions of law as to which there are substantial grounds for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all pleadings and papers on file herein, and such argument and evidence as may be presented.

July 27, 2012

NETFLIX, INC., by its counsel,

By:  _____/s/ David F. McDowell_____

MORRISON & FOERSTER LLP
David F. McDowell (CA Bar No. 125806) (*pro hac vice*)
Jacob M. Harper (CA Bar No. 259463) (*pro hac vice*)
555 West Fifth Street, Suite 3500
Los Angeles, California  90013-1024
Telephone:     213-892-5200
Facsimile:     213-892-5454

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

Pursuant to Local Rule 7.1(a)(2), counsel met and conferred on July 24 and 25, in a good faith attempt to resolve or narrow the issues raised in this Motion.

July 27, 2012            NETFLIX, INC., by its counsel,

By:  _____/s/ David F. McDowell_____

MORRISON & FOERSTER LLP
David F. McDowell (CA Bar No. 125806) (*pro hac vice*)
Jacob M. Harper (CA Bar No. 259463) (*pro hac vice*)
555 West Fifth Street, Suite 3500
Los Angeles, California  90013-1024
Telephone:     213-892-5200
Facsimile:     213-892-5454

## REQUEST FOR ORAL ARGUMENT

Netflix hereby requests oral argument on the Motion submitted herewith.

July 27, 2012        NETFLIX, INC., by its counsel,

By:        /s/ David F. McDowell

        MORRISON & FOERSTER LLP
        David F. McDowell (CA Bar No. 125806) (*pro hac vice*)
        Jacob M. Harper (CA Bar No. 259463) (*pro hac vice*)
        555 West Fifth Street, Suite 3500
        Los Angeles, California  90013-1024
        Telephone:     213-892-5200
        Facsimile:       213-892-5454

## MEMORANDUM OF POINTS AND AUTHORITIES

Netflix moves for an amendment to the Court's June 19, 2012, order to certify it for interlocutory appeal.  28 U.S.C. § 1292(b); *see* Fed. R. App. P. 5(a)(3) ("the district court may amend its order . . . to include the required permission or statement").  Upon certification, Netflix would also request a stay of the action while it seeks permission, from the First Circuit, to take an appeal from the Court's Order, and, if an appeal is permitted, until the appeal is determined.

## I.     INTRODUCTION

In its June 19, 2012, order denying Netflix's motion for judgment on the pleadings, the Court issued the first-ever decision holding, as a matter of law, that the Americans with Disabilities Act of 1990 ("ADA")[1] applies to web-only streaming video programming providers, such as Netflix, so as to require closed captioning in a manner governed by the ADA.  In so holding, the Court established the broadest-ever extension of the ADA's scope, thereby opening the door to amorphous and seemingly limitless regulation of the Internet in a way Congress did not envision and no other court has accepted.

The Court further ruled, also in the first decision addressing the issue, that the ADA applies despite potential conflicts with the more recent Twenty-First Century Communications and Video Accessibility Act of 2010 ("CVAA"),[2] which created a comprehensive regulatory scheme specially tailored to providing closed captioning on streaming video content.  The ruling upends settled expectations in the streaming video programming industry that closed captioning is governed by the CVAA's specific regulatory guidance, not amorphous standards of the ADA that have been legitimized by this Order.

---

[1] ADA, Pub. L. No. 101-336, 104 Stat. 327, enacted July 26, 1990 (codified in relevant part at 42 U.S.C. § 12181–12189).

[2] CVAA, Pub. L. No. 111-260, 124 Stat. 2751, enacted October 9, 2010 (codified in part at 47 U.S.C. § 613).

In addition to these troubling consequences for Internet providers, this ruling now opens this case to broad-ranging litigation into every detail of, in particular, Netflix's streaming video business—from the technology it invents to make streaming possible, to its relationships with third parties in the complex supply-chain ranging from upstream video content owners to downstream manufacturers of end-user devices.

Interlocutory review, to allow either confirmation or reversal of the Court's decision by the First Circuit, would help settle many of the questions raised by this case—not to mention reduce the spiraling costs of this case, which, as Plaintiffs' recent filings make clear, seeks to open Netflix's entire streaming business to scrutiny and litigation.

For the reasons stated herein, Netflix respectfully requests that the Court amend its Order of June 19, 2012, to state that it "involves controlling questions of law as to which there are substantial grounds for differences of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation."

Certification for interlocutory review is plainly warranted here.

*First*, the Order clearly addresses *the* "controlling question" in this matter:  whether the Plaintiffs' sole cause of action for violation of the ADA can survive in these circumstances as a matter of law.  If, after certification, the First Circuit reverses the Court's decision, that would be the end of this litigation.  Even if the First Circuit reverses only part or affirms in whole, the First Circuit's guidance in this unsettled area of law would provide guidance to the parties and the Court in this litigation and reduce the high costs of uncertainty.

*Second*, the Order presents "substantial ground[s] for difference of opinion," as the Court's ruling addresses a number of purely legal questions of first impression—any one of which warrants certification for interlocutory review.  The Order answers these questions in

ways that are at odds with the plain text (or at least reasonable interpretations) of applicable statutes, with decisions of other Courts that have addressed similar issues in analogous contexts, and with the realities of the entire streaming video programming industry.  These issues include:

- Whether the regulatory scope of the ADA's provisions governing places of "public" accommodation should be expanded, as it is here, to regulate the *private* residential sphere, through regulation of goods and services whose use is restricted exclusively to private personal use in those residences;

- Whether the ADA should be applied to the Internet, even though the ADA did not envision such a broad scope and the Department of Justice ("DOJ") has officially declined to finalize regulations that would apply the ADA to the Internet because of the very same economic and technical concerns at issue here;

- Whether the broad and general ADA may apply to conduct expressly governed by the CVAA, and whether streaming video programming providers can comply with both the ADA and CVAA; and

- Whether the statutory scope of CVAA, by its terms, applies to all video programming, or only to certain forms of video programming formerly displayed on television (as the current but incomplete FCC regulations provide).

*Third*, immediate appeal would "materially advance the ultimate termination" of this litigation.  As noted, full reversal would obviously end the litigation (while avoiding already-mounting costs), but even partial reversal would at least limit the scope of the claims.  Even affirmance would advance litigation by clarifying answers to the questions noted above.  It would also advance the broader interest of reducing the regulatory uncertainty inherent in the Order.

In addition, the national import of this widely watched case further merits interlocutory review.

Finally, if the Court certifies the question for interlocutory review, a stay is appropriate pending the outcome of the appeal.

## II.     THE COURT'S DECISION EASILY SATISFIES THE THREE FACTORS WARRANTING INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b).

Appeal from an interlocutory order should be permitted when (1) the order involves "a controlling question of law;" (2) the order decides an issue as to which there is a "substantial ground for difference of opinion;" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *Miara v. First Allmerica Fin. Life Ins. Co.*, 379 F. Supp. 2d 20, 68 (D. Mass. 2005) (certifying question under section 1292(b) where, as here, "[t]he Court [] may be fairly described as grappling with an important and unsettled question of controlling law") (quotations and citations omitted). All three conditions are present here.

### A.     The Court's Decision Involves a Controlling Question of Law.

The Court's interpretation of the ADA's scope, including the impact of the CVAA on the ADA, is, by definition, a decision involving "a controlling question of law."

"'[A] question of law is 'controlling' if reversal of the district court's order would terminate the action.'" *Philip Morris Inc. v. Harshbarger*, 957 F. Supp. 327, 330 (D. Mass. 1997) (*quoting Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990); *see also* 19 James Wm. Moore, *Moore's Federal Prac.* § 203.31[2] (3d ed. 2012) (certification is appropriate if review would settle "whether a claim exists as a matter of law [or] the question of whether a defense that will defeat the claim is available"); 16 Miller, Cooper, & Wright, *Federal Practice & Procedure* § 3930 (2d ed. 1996) ("There is no doubt that a question is 'controlling' if its

incorrect disposition would require reversal of a final judgment . . . for a dismissal that might have been ordered without the ensuing district court proceedings.").

The prospect of complete termination, however, is not necessary to merit certification. "A steadily growing number of decisions . . . have accepted the better view that a question is 'controlling' . . . if interlocutory reversal might save time for the district court, and time and expense for the litigants." 16 Miller, Wright & Cooper, Fed. Prac. & Proc. (2d ed. 1996) § 3930 (noting, moreover, that this is true "even though its disposition might not lead to reversal on appeal"); *see, e.g.*, *Miara*, 379 F. Supp. 2d at 68 (certifying question where "this litigation would certainly benefit from prompt resolution of the unsettled question") (citation and quotation omitted); *Stark v. Advanced Magnetics, Inc.*, 894 F. Supp. 555, 560 (D. Mass. 1995) (certifying matter to Federal Circuit in case involving a controlling legal question as to which substantial costs and resources would have been saved by confirmation of this Court's analysis), *rev'd on other grounds*, 119 F.3d 1551 (Fed. Cir. 1997); *see also Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991) (a question of law can be controlling if it determines the outcome "or even the future course of the litigation"); *APCC Servs. v. Sprint Commc'ns. Co.*, 297 F. Supp. 2d 90, 95–96 (D.D.C. 2003) ("a controlling question of law is one that would require reversal if decided incorrectly or that could materially affect the course of litigation with resulting savings of the court's or the parties' resources") (citations and quotations omitted).

The Court's Order easily meets these tests. Broadly stated, the Court decided that the Plaintiffs' ADA claim survives as a matter of law. If the First Circuit reverses the Court's Order, Plaintiffs' entire case—premised on their single cause of action for violation of the ADA—ends.

That conclusion is buttressed by the fact that the Court based its decision on purely legal issues, including the text of the statutes and applicable regulations, its implicit determination that

the ADA narrows the scope of the FCC's delegated power, and its view that the CVAA is meant only to complement the ADA, not supplant it.

Even if, moreover, the First Circuit reverses only a portion of the Order and affirms the rest of the Court's reasoning, "the scope of the case would be so significantly altered that it would still be appropriate to call the question 'controlling.'"  *Harshbarger*, 957 F. Supp. at 330 (finding that certification is appropriate even if reversal "would leave something of the case" pending).  If, for example, the First Circuit agrees that the CVAA applies only to "programming that is (1) shown on television, (2) with captions, and (3) after the effective date of the FCC regulations" (ECF No. 52, at 24) but determines that the CVAA "carves out" those limited portions of video programming from the ADA's scope, the scope of the cases would be "significantly altered."

Partial reversal would also reduce the already-mounting litigation costs for the parties. As it is, Plaintiffs have served broad-ranging discovery into the details of Netflix's video programming business, its business model, its technology, its relationships with third parties, and other wide-ranging issues better addressed by the FCC than the Court.  Netflix has moved for entry of a protective order to protect the confidentiality of the broad range of sensitive information Plaintiffs seek.  And both parties are preparing for costly summary judgment proceedings.  Full or partial reversal would confer broad cost savings.  16 Miller, Wright & Cooper, Federal Practice & Procedure § 3930 at 426 (certification appropriate "if interlocutory reversal might save time for the district court, and time and expense for the litigants").

The Court's Order therefore meets the first prong of the test under section 1292(b).

### B.   The Court's Decision Involves Issues as to Which There Are Substantial Grounds for Differences of Opinion.

The Court's decision also involves issues "as to which there is a substantial ground for difference of opinion."  28 U.S.C. § 1292(b).  A decision meets this test if it involves at least one issue that "constitutes an open question," the resolution of which remains uncertain.  *Miara*, 379 F. Supp. 2d at 68; *Harshbarger*, 957 F. Supp. at 330 ("there is a 'substantial ground for difference of opinion' about an issue when the matter involves 'one or more difficult and pivotal questions of law not settled by controlling authority.'") (*quoting McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984)).

"'The level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case.'  In certain circumstances, 'certification may be justified at a relatively low threshold of doubt.'" *United States v. Sampson*, No. 01-10384, 2012 U.S. Dist. LEXIS 65256, at *36–37, 2012 WL 1633296, at *12 (D. Mass. May 10, 2012) (quoting 16 Wright, Miller & Cooper, Federal Practice and Procedure § 3930, at 422); *see also Wells Fargo Bank v. Bourns, Inc.*, 860 F. Supp. 709, 717 (N.D. Cal. 1994) (interlocutory appeal allowed where legal issues "have not been squarely addressed" by controlling authority).

Here, the Court's Order involves several issues warranting the First Circuit's review.

### 1.   Whether the regulatory scope of the ADA's provisions governing places of "public" accommodation should be expanded to regulate the *private* residential sphere.

The Court's Order expands the scope of the ADA to regulate goods and services meant exclusively for private use—a ruling that contradicts a fair reading of the statutory text and abundant case law.

According to the Order, Title III of the ADA, which governs places of "public" accommodation, applies to Netflix streaming video even though it is for use only within a *private* residence.  (*See* Order [ECF No. 52] at 11 ["while the home is not itself a place of public accommodation, entities that provide services in the home may qualify as places of public accommodation"].)  Relying on a decision from the Northern District of California, the Court found that the ADA "'applies to the services *of* a place of public accommodation, not services *in* a place of public accommodation.'"  (*Id.* at 10–11, quoting *Nat'l Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 953 (N.D. Cal. 2006).)  The Court reasoned that, under Netflix's contrary reading, "businesses that provide services to a customer's home—such as plumbers, pizza delivery services, or moving companies—would be exempt from the ADA."  (Order [ECF No. 52] at 11.)  Substantial grounds for difference of opinion exist on this issue.

*First*, the weight of authority tilts heavily against the Court's interpretation of the ADA. Indeed, except for the single case the Court cites, virtually every other court addressing whether the ADA (or similar the Civil Rights Act) applies within private residences uniformly has held that it does not.  *See, e.g.*, *Torres v. AT&T Broadband, LLC*, 158 F. Supp. 2d 1035, 1037–38 (N.D. Cal. 2001) ("The plaintiff argues that when he uses the defendants' digital cable channel menu, his television set becomes a place of exhibition or entertainment.  However, the plaintiff's home cannot reasonably be classified as a place of *public* exhibition or entertainment.  Thus, neither the digital cable system nor its on-screen channel menu can be considered a place of public accommodation within the meaning of the ADA."); *see also Welsh v. Boy Scouts of America*, 993 F.2d 1267, 1274–75 (7th Cir. 1993) (scouting troop not subject to civil rights laws governing places of public accommodation when meeting in private home because "[a] private home is not the type of facility governed under ['place of public accommodation']"); *Bobrowsky*

*v. Curran*, 333 F. Supp. 2d 159, 163 (S.D.N.Y. 2004) (dismissing complaint; barrier located on

"public residence" not in "place of public accommodation"); *Independent Hous. Servs. v.*

*Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 (N.D. Cal. 1993) (same); *Mitchell v. Walters*,

No. 10-1061, 2010 U.S. Dist. LEXIS 93265, at *11–14, 2010 WL 3614210, at *3–5 (D.N.J.

Sept. 8, 2010) (same); *Powell v. Houtsma*, No. 04-4831, 2005 U.S. Dist. LEXIS 44528, at *8–9,

2005 WL 464687, at *3 (N.D. Ill. Feb. 25, 2005) (same).

These contrary decisions alone are sufficient to demonstrate a substantial ground for

difference of opinion.

*Second*, Netflix's reading does not preclude the ADA from applying to moving

companies, plumbers, and other companies that provide services to the home.  Netflix's

interpretation merely reflects the unremarkable conclusion that the ADA does not regulate the

actions of businesses while they are providing their services within a private residence.  Indeed,

if anything, it is the implications resulting from the *Court's* interpretation—that plumbers must,

*e.g.*, provide access ramps to residents within their homes during service calls—that are

untenable, not anything resulting from Netflix's reading.

At the very least, the Order presents substantial ground for difference of opinion here.

**2.      Whether the ADA should be applied to the Internet.**

The Court's Order also vastly expands the ADA's scope to include web-only businesses

and their websites (Order [ECF No. 52] at 5–8), but a substantial question exists as to whether

Congress intended the ADA to apply to the Internet in the first place.

In fact, the Order acknowledges that web-only businesses "could not have been explicitly

included in the [ADA]" (Order at 8)—while the CVAA expressly addresses both web-only video

programming and precisely the captioning remedy Plaintiffs seek.  Yet the Court accepted

Plaintiffs' invitation to apply the ADA broadly to the new technology, and to do so notwithstanding the CVAA.

One major open issue is the impact of *Carparts Distribution Center v. Auto Wholesaler's Association*, 37 F.3d 12, 19 (1st Cir. 1994). The Court relied heavily on dicta in *Carparts* to conclude that it would be "irrational" if ADA did not apply to the Internet. But the Order does not consider that *Carparts*'s interpretation of the "ambiguous" ADA was expressly premised on the status of the ADA, agency regulations, and policy considerations as they existed in 1994. *Id.* at 19 ("This ambiguity, considered together with agency regulations and public policy concerns, persuades us that the phrase is not limited to actual physical structures."). The anti-discrimination statutes of 1994 are vastly different from those of today, which—unlike the 1994 iterations addressed in *Carparts*—have the added benefit of the CVAA, agency regulations, and new policy considerations regarding technology and the economic viability of regulation.

A further ground for substantial difference of opinion is the significance of DOJ's decision *not* to regulate here. DOJ, officially charged with interpreting the scope of the ADA, made the affirmative decision not to regulate websites or mandate closed captioning based on precisely the sort of sound technological and economic policy reasons implicit in *Carparts*, their contrary statements in briefing notwithstanding. *See* DOJ, Proposed Rule, *Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations*, 75 Fed. Reg. 43,460, 43,466 (July 26, 2010) (affirmatively calling for delay in regulating websites under ADA, which may require "complete redesign of the entire site" and other burdens); Fed. Reg. Unified Agenda 1190-AA63, http://federalregister.gov/r/1190-AA63 (Fall 2011) (affirmatively declining to regulate closed captioning because complicated "technical questions" remain about their application, and "the

United States' economy, and the profitability of many public accommodations, experienced

significant setbacks" that would render regulation imprudent); (MJOP Reply [ECF No. 47] at

11–12).

In addition, this Court's Order is at odds with cases similar to this (including the parallel

case against Netflix in the Northern District of California), which have granted motions to

dismiss on the grounds that state discrimination statutes—which are *broader* than the ADA—do

*not* reach closed captioning of Internet-based streaming content. *E.g.*, *Cullen v. Netflix, Inc.*, No.

5:11-cv-01199, 2012 U.S. Dist. LEXIS 97884, 2012 WL 2906245 (N.D. Cal. July 13, 2012),

attached as Exhibit A to the Request for Judicial Notice ("RJN") submitted herewith.

At a minimum, substantial room for disagreement therefore exists as to this issue as well,

and the First Circuit's guidance is needed, particularly concerning the impact of *Carparts* on this

case.

> **3.      Whether the broad and general ADA may apply to conduct expressly governed by the CVAA, and whether streaming video programming providers can comply with both the ADA and CVAA.**

The Court concluded that the impact of the ADA vis-à-vis captioning regulations under

the CVAA does not create irreconcilable conflict between the statutes.  (Order [ECF No. 52] at

17 ["The two statutes can coexist even though they cover overlapping subject matter"].)

The Court so concluded even though applying the ADA here (1) foists upon distributors

like Netflix captioning responsibilities the FCC determined are better addressed exclusively by

owners, (2) accelerates captioning deadlines of the CVAA so as to render them a nullity,

(3) bypasses exclusive administrative complaint procedures, and (4) requires captioning even

where the FCC would or must exempt it.  Without rehashing all the reasons the Court's

interpretation undermines the CVAA, suffice it to say that substantial grounds for a difference of opinion exist that warrant the First Circuit's review.

To start, no decision is directly on point. The Court relies on *Rathbun v. Autozone, Inc.*, 361 F.3d 62, 70 (1st Cir. 2004), for the proposition that two statutes should be interpreted in harmony where possible—there, in the case of two statutes of limitations—but that case says nothing about conflicts between entire regulatory schemes, as is the case here.

The Order is, in fact, at odds with recent decisions that have addressed the interaction between the CVAA and other disability discrimination statutes purporting to require captioning on streaming video programming. One court recently concluded, for example, that the CVAA's broad and comprehensive scope preempted all state law discrimination claims concerning closed captioning of streaming video content. *See Johnson v. Apple Inc.*, Case No. 1-11CV-212284 (Cal. Super. Ct., County of Santa Clara), attached as Exhibit B to the RJN submitted herewith. In language quite applicable here, that court found:

> The legislative history of the [CVAA] states that the purpose of the act is to "update the communications laws to help ensure that individuals with visual, auditory, or speech disabilities are able to fully utilize [*sic*] communications services and equipment and better access video programming." (Sen. Rep. No. 111-386, 2d Sess., p.2 (2010).) The [CVAA] is comprehensive in its scope, covering services and equipment like VoIP-based service providers, manufacturers of advanced communications services equipment, and technical issues related to closed captioning and video description, as well as access to equipment user interfaces, programming guides and menus, and emergency information provided on video programming. [] To implement the provisions of the 21st Century Act, the FCC promulgated certain regulations and rules… .
>
> Here, it is clear that the FCC has intended to preempt state law regarding closed captioning of internet delivered video and that its actions are within the scope of the federal agency's delegated authority. Moreover, the rules and orders make clear that the FCC has exclusive jurisdiction regarding such matters.

*Id.*, Slip Op. at 3–5.  That reasoning applies with great force to this case.  *See, e.g.*, *United States v. Abrahams*, 493 F. Supp. 296, 301 & n.10 (S.D.N.Y. 1980) ("where the Commission's jurisdiction is exclusive, the jurisdiction of other regulatory agencies, state and federal, is preempted."); *cf. Harshbarger*, 957 F. Supp. at 330 (noting that closely related issue of preemption is "an issue that is appropriate for early appellate decision") (*citing Palmer v. Liggett Group, Inc.*, 825 F.2d 620 (1st Cir. 1987); *Greenwood Trust Co. v. Commonwealth of Mass.*, 971 F.2d 818 (1st Cir. 1992)).

Similar reasons compelled at least one court to grant a motion to dismiss an ADA claim where the CVAA's predecessor (the Telecommunications Act of 1996) precluded application of ADA to require captioning outside the bounds of that statute, *see Zulauf v. Kentucky Educational Television*, 28 F. Supp. 2d 1022 (E.D. Ky. 1998), but this Court declined to follow that decision.

Other cases, including one regarding the impact of the CVAA on discrimination claims concerning captioning of CNN's streaming video content, remain unresolved.  *E.g.*, *Greater Los Angeles Agency on Deafness, Inc., et al. v. Time Warner, Inc.*, No. 3:11-cv-03458 (N.D. Cal. filed June 15, 2011), the complaint for which is attached as Exhibit C to the RJN submitted herewith.

More generally, the Court's Order is contrary to the well-established rule of statutory construction that a specific statutory provision governs over a general one.  As the Supreme Court just reaffirmed, this principle "is particularly true where … Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *RadLAX Gateway Hotel LLC v. Amalgamated Bank*, __ U.S. __, 132 S. Ct. 2065, 2071, 182 L.Ed.2d 967 (2012) (internal quotation omitted).  That principle governs here; at the very least, there is substantial ground for difference of opinion as to whether it does.

The Order also places the Court in the precarious position of essentially shifting an entire area of regulation (closed captioning of streaming video content) from the "delegated authority" of one agency (the FCC) to another (DOJ)—but the power to delegate lies exclusively with Congress, not the courts.

Even without all these legal issues, the Order places Netflix and all other streaming video programming providers in the practical conundrum of having to comply with two competing—in the case of the ADA, undefined—regulatory schemes with respect to *how* they would provide closed captioning.

The Order therefore also raises significant grounds for difference of opinion as to this issue, and the Court should allow the First Circuit to weigh in on these important questions.

### 4. Whether the CVAA, by its terms, applies to all video programming, or only certain forms of video programming formerly displayed on television.

The Court also found that the CVAA's statutory scope applies, at most only "to programming that is (1) shown on television, (2) with captions, and (3) after the effective date of the FCC regulations." (Order [ECF No. 52] at 24)—not, as the plain language of the statute and regulations expressly state, more broadly to *any* programming "*generally considered comparable to programming provided by, a television broadcast station,*" 47 C.F.R. § 79.4(a)(1); 47 U.S.C. § 613(b) (expressly incorporated by the CVAA, and requiring the FCC to promulgate regulations for any programming that may be "published . . . after . . . [or] prior to" the effective date of regulations).  Substantial grounds for disagreement exist as to this issue, too.

Indeed, as the Order acknowledges, Plaintiffs themselves took the position before the FCC that the CVAA broadly applies to *all* video programming, not just programming displayed on television before the effective date of regulations.  (MJOP [ECF No. 43] at 18–19 & MJOP

Reply [ECF No. 47] at 17–18.)  The fact that Plaintiffs previously took that position (before reversing course here) underscores that legitimate differences of opinion exist on this issue.[3]

The Order also has troubling consequences for regulation under the CVAA of future streaming content.  The Order concludes that because the current regulations may be limited to programming provided on television, the entire *statute* applies only to that "subset" of programming.  The Order implies, therefore, that the CVAA does not confer on the FCC authority to regulate programming not provided on television—a perverse consequence for a statute designed to increase access to streaming video content.

Overall, the Order's conclusion directly contradicts the CVAA's plain language (noted above), Congressional intent (to "update the communications laws to help ensure that individuals with visual, auditory, or speech disabilities are able to fully utilize [*sic*] communications services and equipment and better access video programming," S. Rep. No. 111-386, 2d Sess. 2010, at 2), and legislative history (which reserves power to regulate non-television programming under the CVAA in "subsequent rulemakings on these matters," *id.*, at 10).

For all of these reasons, the second prong of section 1292(b) is clearly met.

---

[3] It is settled, moreover, that a party's statements to a regulatory body are, in fact, subject to judicial estoppel—a point directly at odds with the Order's statements that "NAD's representations before the FCC in an administrative proceeding have no bearing on these judicial proceedings." (Order at [ECF No. 52] 25 n.3.)  *Compare, e.g., Analog Devices, Inc. v. Linear Tech. Corp.*, 479 F. Supp. 2d 202, 212 (D. Mass. 2007) (finding plaintiff "estopped from arguing" position respecting status of patents that contradicts plaintiff's "representations to the Patent Office"); *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 604 & n.4  (9th Cir. 1996) (noting that although the doctrine is often referred to as "judicial" estoppel, "we are not aware of any case refusing to apply the doctrine because the prior proceeding was administrative rather than judicial."); *Lampi Corp. v. Am. Power Prods.*, 228 F.3d 1365, 1377 (Fed. Cir. 2000) (recognizing that judicial estoppel "applies to administrative proceedings" and prevents a party from making one argument to the Patent Office and a contradictory argument in a subsequent judicial proceeding) (citation omitted).

### C.    An Immediate Appeal From the Order Would Materially Advance the Ultimate Termination of This Litigation.

Under the third prong of section 1292(b), an interlocutory appeal is proper if it may materially advance the ultimate termination of the litigation.

That is the situation here.  Plaintiffs' case rests on the theory that the ADA applies to Netflix's streaming video programming; Netflix's motion for judgment on the pleadings contended that it does not, which would have ended the case.

*First*, as previously noted, if the Order is reversed in full, that would end the case.

*Second*, even if the Order is reversed only in part, the First Circuit's guidance may help narrow the scope of the litigation and discovery and would advance the litigation by allowing the parties to focus on issues the First Circuit identifies as relevant.  *See Harshbarger*, 957 F. Supp. at 330 (even less than total reversal may mean "the scope of the case would be so significantly altered" that interlocutory appeal is appropriate"); *Public Interest Research Group v. Hercules, Inc.*, 830 F. Supp. 1549, 1555 (D.N.J. 1993) (citing interest in culling scope of litigation as strongly favoring interlocutory appeal of controlling issue).

*Third*, even if the Order is fully affirmed, the First Circuit's guidance would offer certainty as to how the litigation should proceed—particularly where, as here, the case offers so many open issues.

Overall, Plaintiffs' reliance on the Court's ruling may taint the entire case, from discovery to summary judgment to trial.  An immediate appeal will help avoid the prospect of the entire case having to be retried should the First Circuit ultimately reverse the Court's June 19, 2012, Order after a trial is concluded.  Indeed, courts consider the potential for a retrial as a factor favoring an immediate appeal as it will materially advance the ultimate resolution of the case. *See, e.g.*, *Resolution Trust Corp. v. Gallagher*, No. 92 C 1091, 1992 U.S. Dist. LEXIS 16226, at

*12–14, 1992 WL 315218, at *5 (N.D. Ill. Oct. 23, 1992) ("an immediate appeal would materially advance the ultimate termination of the litigation by reducing the need for a possible retrial after an appeal"); *Mattioni, Mattioni & Mattioni, Ltd. v. Ecological Shipping Corp.*, 530 F. Supp. 910, 917–18 (E.D. Pa. 1981) ("overall duration of this case could be reduced significantly" with immediate appeal "rather than waiting for an appeal from a final judgment and a possible reversal which would require a new trial").

The third factor under § 1292(b) also favors certification for interlocutory appeal.

### III.   AN IMMEDIATE APPEAL WILL AVOID UNCERTAINTY IN THE STREAMING VIDEO PROGRAMMING INDUSTRY.

"[T]he impact that an appeal will have on other cases" is another factor courts may take into account in deciding whether interlocutory review is appropriate. *Klinghoffer*, 921 F.2d at 24; *see also Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1093 (E.D. Cal. 2008) ("The opportunity to achieve appellate resolution of an issue important to other similarly situated dairies can provide an additional reason for certification"); *Genentech, Inc. v. Novo Nordisk A/S*, 907 F. Supp. 97, 99 (S.D.N.Y. 1995) (certification appropriate where interlocutory order in question "affects a large number of cases").

The Court's Order denying judgment on the pleadings has implications not only for Netflix, but for the entire streaming video programming industry.  While all streaming video providers previously had to comply with the clear standards of the CVAA, this Court has created authority holding that they now must satisfy whatever currently undefined standards that would apply under the ADA as well.

Because the Court's ruling also applies the ADA broadly—for the first time ever—to websites and to businesses conducting activities strictly within private residences, the Order has broad-reaching implications even beyond the streaming video programming industry.

17

The Court's ruling also disrupts the regulatory certainty that the CVAA was intended to provide this industry.

This uncertainty presents an important policy consideration weighing in favor of an immediate appeal. *See Mueller v. First Nat'l Bank of the Quad Cities,* 797 F. Supp. 656, 664 (C.D. Ill. 1992) (considering "substantial public policy considerations" in decision to certify under section 1292(b)).

IV.     **A STAY SHOULD BE ENTERED PENDING DETERMINATION OF THE APPEAL.**

If the Court determines to certify the issue for interlocutory appeal, it should stay proceedings at least until the First Circuit determines whether to permit the appeal. *See* 28 U.S.C. § 1292(b); Fed. R. App. P. 5(a)–(d). And, if the First Circuit takes the appeal, this Court should stay all proceedings until the appeal is determined, because an appellate decision on this issue may dramatically change the face of further proceedings in this case.

V.     **PLAINTIFFS' SUGGESTION THIS MOTION IS UNTIMELY LACKS MERIT.**

During a meet-and-confer call, Plaintiffs' counsel stated that it believed this motion was "too late" because it does not fall within the ten-day period between the order certifying the question and a petition to the court of appeal. 28 U.S.C. § 1292(b); Fed. R. App. P. 5(a). But as many courts have explained, the time limits of Fed. R. App. P. 5(a) and § 1292(b) do not apply to the district court's consideration of a request for certification, which is separate and distinct from filing a petition to the court of appeal after actual certification. Thus, "courts have found motions for certification of an interlocutory appeal to be appropriate *months* after a judgment, although courts suggest that the party seeking certification should act with 'diligence.'" *Bates v. Dura Auto. Sys., Inc.*, No. 1:08-0029, 2009 U.S. Dist. LEXIS 67301, at *16 n.8, 2009 WL 2356546, at *5 n.8 (M.D. Tenn. July 29, 2009) (collecting cases; holding three-month delay in filing request

to certify denial of motion to dismiss is timely) (emphasis added).[4]  This motion, filed barely one

month after the Court issued its June 19 Order, is plainly timely.

Certification would serve the significant overriding interest in, as noted, materially

advancing the termination of this litigation.  Plaintiffs' efforts to undermine these efforts—based,

ironically, on unsubstantiated theories of what they consider "too late"—are untenable.

Nor will Plaintiffs suffer undue prejudice as a result of the Court's consideration of this

order:  the case continues moving forward, the parties will be mediating next week, and Court

has suggested—without opposition from Plaintiffs—that the scheduling order could be amended

to extend deadlines in this case.  (*See* ECF No 53 [ordering that court "will have discretion to

modify the currently controlling discovery schedule to the extent he feels is appropriate"].)

And, several reasons militating in favor of interlocutory appeal did not even come to light

until only recently.  Netflix was not, for example, aware of two importing decisions highlighting

difference of opinion on issues discussed above—including *Cullen v. Netflix, Inc.* (RJN Ex. A)

---

[4] *See, e.g.*, *Camacho v. P.R. Ports Auth.*, 267 F. Supp. 2d 174, 176 (D.P.R. 2003)
granting motion to certify filed more than five weeks after underlying order); *Marriott Int'l
Resorts, L.P. v. United States*, 63 Fed. Cl. 144 (Fed. Cl. 2004) (granting motion to certify filed
four months after underlying order; applying analogous § 1292(d), which "is virtually identical
to the statutory standard of certification utilized by the United States district courts under 28
U.S.C. § 1292(b).") (citation omitted); *Boyer v. Gildea*, 378 B.R. 238, 240 (N.D. Ind. 2007)
(same, after 30-day delay); *Bates v. Dura Auto. Sys., Inc.*, No. 1:08-0029, 2009 U.S. Dist. LEXIS
67301, at *2, *13–16, 2009 WL 2356546, at *1, *4–5 (M.D. Tenn. July 29, 2009) (same, after
three month delay); *see also Giddes v. Glens Falls Ins. Co.*, No. 2:02-CV-282-FTM-29NF, 2003
U.S. Dist. LEXIS 25109, at *2–3, 2003 WL 23486911, at *1 (M.D. Fla. Aug. 5, 2003)
(defendant's motion is timely" even though filed two months later; "The time limits of Fed. R.
App. P. 5(a) and § 1292(b) do not apply to the district court's consideration of a request for
certification.").  As one court explains, "[s]ection 1292(b) imposes no statutory deadline for
certification in the district court, nor is there a requirement that certification be sought
'immediately' as suggested by the plaintiff. . . .   The time limits of Fed. R. App. P. 5(a) and
§ 1292(b) do not apply to the district court's consideration of a request for certification."
*McLaurin v. United States*, No. 2:06cv169KS, 2008 U.S. Dist. LEXIS 30481, *3-4, 2008 WL
782487, at *1 (S.D. Miss. Mar. 24, 2008) (finding motion timely even though "defendant waited
several months after entry of the order denying the motion to dismiss").

and *Johnson v. Apple, Inc.* (RJN Ex. B)—until well after the Court's order was issued.  And the

order dismissing *Cullen* was not even issued until July 13—three weeks after the Court issued

the Order here.  In addition, Netflix has been diligently moving the case along, including by

preparing in earnest for the upcoming Court-ordered mediation (*see* ECF Nos. 53, 63); and

diligently addressing several issues arising from Plaintiffs' decision not to agree to a sufficient

protective order.  (*See, e.g.*, Netflix's Opp'n to Mot. to Compel [ECF Nos. 58–60]; Netflix's

Mot. for Protective Order [ECF No. 62]).  This diligently filed motion should be granted.

## VI.    CONCLUSION

The Court's decision addressed a controlling issue of law and involves an issue as to

which there are substantial grounds for disagreement.  The Court should therefore amend its June

19, 2012, Order to certify the order for interlocutory appeal, and it should also stay the action

until the appeal is resolved.

July 27, 2012                NETFLIX, INC., by its counsel,

                             By:         /s/ David F. McDowell

                                   MORRISON & FOERSTER LLP
                                   David F. McDowell (CA Bar No. 125806) (*pro hac vice*)
                                   Jacob M. Harper (CA Bar No. 259463) (*pro hac vice*)
                                   555 West Fifth Street, Suite 3500
                                   Los Angeles, California  90013-1024
                                   Telephone:    213-892-5200
                                   Facsimile:    213-892-5454

**[PROPOSED] ORDER**

Defendant Netflix, Inc.'s Motion for Judgment on the Pleadings as to the First Amended Complaint of plaintiffs National Association of the Deaf; Western Massachusetts Association of the Deaf and Hearing Impaired; and Lee Nettles came on regularly for hearing on Tuesday, June 11, 2012, at 10:00 a.m. in the Hampden Courtroom of the above-entitled court.

Having considered defendant Netflix, Inc.'s Motion for Amendment of July 19, 2012 Order to Certify for Interlocutory Review, the papers submitted in support of and in opposition, arguments of counsel and all other matters presented to the Court, the motion is ALLOWED.

The Court will amend its Order of June 19, 2012, to state that it "involves controlling questions of law as to which there are substantial grounds for differences of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation."

The Court further orders that a stay will be imposed on this action until any appeal is resolved.

IT IS SO ORDERED.


By:  _____
         Hon. Michael A. Ponsor, U.S. District Judge

## **CERTIFICATE OF SERVICE**

I, Jacob M. Harper, hereby certify that a copy of the foregoing documents has been served upon all opposing counsel of record by ECF on this 27th day of July, 2012.

/s/ Jacob M. Harper
Jacob M. Harper

1176674