UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

WESTERN DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF THE DEAF, WESTERN MASSACHUSETTS ASSOCIATION OF THE DEAF AND HEARING IMPAIRED AND LEE NETTLES,<br><br>        Plaintiffs,<br><br>v.<br><br>NETFLIX, INC., a corporation,<br><br>        Defendant. | CIVIL ACTION NO. 11-30168-MAP<br><br>**CONSENT DECREE**<br><br>**OCTOBER 9, 2012** |

This action arose out of a complaint filed by plaintiffs National Association of the Deaf, Western Massachusetts Association of the Deaf and Hearing Impaired, and Lee Nettles alleging that defendant Netflix, Inc. ("Netflix") violated Title III of the Americans with Disabilities Act ("ADA") by failing to provide adequate closed captioning on "Watch Instantly" streaming video programming.

Netflix denies these allegations.

The parties have determined that there is no further need to litigate this action. With the mutual intent of increasing access to Netflix for the deaf and hard of hearing, the parties have jointly agreed to the final disposition of this action in its entirety by Consent Decree, the terms of which are as follows:

1. **Jurisdiction and Venue**

This Court has jurisdiction over the above-captioned action pursuant to 28 U.S.C. § 1331. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391 because Netflix operates its nationwide streaming business on the Internet in this District and has sufficient contacts to be subject to personal jurisdiction in this district.

2. **Defined Terms**

The following definitions apply to this Consent Decree:

a. "Applicable Devices" include devices that Netflix advertises as enabling On-demand Streaming Content for Netflix streaming subscribers.

b. "Closed Captions" refers to viewer activated equivalent text that is provided as an auxiliary aid for individuals who are deaf or hard of hearing to access the audio component of the programming.

c. "Conforming Captions" means, for English language-based video programming, the visual display of the audio portion of video programming that is (i) consistent with the DCMP-certified captioning house industry standards for completeness, accuracy, timing; (ii) complies with any finalized and applicable closed captioning regulations upon their effective date; and (iii) describe the audio content of programming such as, for example, speaker identification, sound effects, and music description.

d. Subtitles, means for non-English language-based video programming, English subtitles that are consistent with captioning house industry standards.

e. "Pre-existing Captioned Programming" means programming (i) with acceptable Conforming Captions that are available to Netflix by Video Programming Owners or other providers or (ii) for which Netflix is the Video Programming Owner or (iii) that could be available to Netflix through the use of good faith, diligent efforts to acquire such captions from Video Programming Owners or other providers.

f. "Consent Decree" means the terms set forth in this document, and ordered and decreed by the Court in this action.

g. "On-demand Streaming Content" means the streaming Internet protocol-based video programming available through Netflix subscriptions in the United States.

h. The "Parties" refers to the following:

   i. Plaintiffs herein, comprising National Association of the Deaf ("NAD"), Western Massachusetts Association of the Deaf and Hearing Impaired ("WMAD/HI"), and individual Lee Nettles; and

   ii. Defendant herein, Netflix, Inc., a corporation.

i. "Video Programming Owner" means any person or entity that either (i) licenses the video programming to a video programming distributor or provider that makes the video programming available directly to the end user through a distribution method that uses Internet protocol; or (ii) acts as the

video programming distributor or provider, and also possesses the right to license the video programming to a video programming distributor or provider that makes the video programming available directly to the end user through a distribution method that uses Internet protocol.

3. **Modifications to Netflix's On-demand Streaming Content**

   a. *Recommendations Interface*: Netflix will maintain on its website (www.netflix.com) a list or similar identification of On-demand Streaming Content with Conforming Captions and Subtitles. Netflix will provide an option to either sort or filter the list by title, year, maturity rating, and genre. Netflix's obligation to maintain this list will expire on October 1, 2014, by which point Conforming Captions or Subtitles will be available on 100% of On-demand Streaming Content, as provided in paragraph 3.b.i.3), below.)

   b. *Provision of Closed Captions on On-demand Streaming Content*: Netflix will provide Conforming Captions on On-demand Streaming Content under the following procedures and timelines:

   i. All Programming in Netflix's Library:

   1) Netflix avers that, as of the entry of this Consent Decree, 82% of hours streamed in the U.S. is On-demand Streaming Content with Conforming Captions or Subtitles available.

   2) By September 30, 2013, Netflix will ensure that Conforming Captions or English subtitles are available on at least 90% of hours streamed in the U.S. of On-demand Streaming Content.

   3) By September 30, 2014, Netflix will ensure that Conforming Captions or Subtitles are available on 100% of its On-demand Streaming Content in the U.S. on that date, as measured by total titles as of that date.

   ii. Pre-Existing Captioned Programming. Beginning no later than September 30, 2012, and continuing from that date, all On-demand Streaming Content that is Pre-existing Captioned Programming will be launched with Conforming Captions for On-demand Streaming Content customers.

   iii. Other Programming. In order to maintain 100% Conforming Captions or Subtitles, after September 30, 2014, for all On-demand Streaming Content that is not Pre-Existing Captioned Programming, Netflix will provide Conforming Captions for On-demand Streaming Content on Applicable Devices as follows:

       1) From September 30, 2014, to September 30, 2015, Netflix will ensure that Conforming Captions are available within an average of 30 days after such content's On-demand launch.

       2) By September 30, 2015, Netflix will ensure that Conforming Captions are available within an average of 15 days after such content's On-demand launch.

       3) By September 30, 2016 and thereafter, Netflix will ensure that Conforming Captions are available no later than 7 days after the launch without captions, and shall strive to reach a point at which Conforming Captions are provided simultaneously with launch at all times.

  iv. General Duties with Respect to Timelines and Procedures

       1) In meeting all of the above timelines, Netflix shall prioritize provision of Conforming Captions on the most highly-viewed programming (as measured by viewable hours).

       2) Netflix will exercise good faith, diligent efforts in meeting all of the above timelines.

c. *Subscriber Notification of Problems*

  i. Subscribers to Netflix On-demand Streaming Content may notify Netflix of problems with Closed Captions, including but not limited to Closed Captions that are missing, incomprehensible, inaccurately synced, or substantively inaccurate. Subscribers may provide such notification through any available customer service methods.

4. *Reporting*

Beginning 180 days after the entry of this Consent Decree, Netflix shall submit a confidential written report to Plaintiffs' counsel undersigned herein and the Court (under seal) concerning the implementation of this Consent Decree as follows:

  a. No more than quarterly upon Plaintiffs' written request, Netflix shall describe steps taken to comply with the Consent Decree, including the following:

    i. Compliance with the provision of Closed Captions in On-Demand Streaming Content pursuant to the terms of this Decree, particularly under the timelines in paragraph 3.

    ii. Factual reporting on any adjustments to the searchability for On-demand Streaming Content containing Conforming Captions.

    b. No more than semi-annually upon Plaintiffs' written request, Netflix shall provide a summary of any and all problems encountered during attempts to implement the Decree, including:

        i. Any failures to provide Closed Captions or Conforming Captions according to the timelines and the reason for such delays or failures.

        ii. Redacted copies of complaints, or summaries where copies are not available, about Closed Captions on streaming videos from subscribers and family members, and records of responses to specific complaints maintained by customer service at Netflix.

    c. If Netflix fails to meet the percentages set forth in paragraph 3 above, Netflix shall provide on a quarterly basis reports of:

        i. Percent of On-demand streaming content measured by viewable hours in 2013 and by titles in 2014 available with Conforming Captions;

        ii. Description of issues that prevented Netflix from meeting the percentages set forth in paragraph 3, above.

5. *Release and Dismissal*

The Parties agree that this Consent Decree applies to all unknown and unanticipated claims, damages, and expenses as of the date of execution of this Agreement, and they waive any rights that they might have under Section 1542 of the California Civil Code or under any similar statute or legal theory.

Upon entry of this Consent Decree, Plaintiffs (as specifically defined herein) hereby release and forever discharge Netflix, and each of its respective past, present, and future employees; its parent, subsidiary, predecessor, and affiliate corporations or other business entities; and its past, present and future shareholders, officers, directors, employees, agents, heirs, personal representatives, attorneys, and assigns from any and all claims, counterclaims, remedies, liabilities, debts, demands, costs, expenses, attorneys' fees, set-offs, and third-party actions of any kind or nature whatsoever, whether known or unknown, matured or unmatured, foreseen or unforeseen, suspected or unsuspected, accrued or unaccrued which they ever had, now have, or claim to have had, occurring up until the effective date of this Consent Decree against any entities or persons identified in this paragraph.

Plaintiffs acknowledge having been informed by an attorney of the provisions of Section 1542 of the Civil Code of the State of California, and hereby expressly waive and relinquish all rights and benefits that they may have under that Section or similar laws from other states, including Delaware or Massachusetts, which reads:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

In that connection, Plaintiffs realize and acknowledge that they may have sustained injury or losses within the scope of the releases, set forth above, that (or the severity and amount of which) are not now anticipated. Nevertheless, Plaintiffs acknowledge that this Consent Decree has been negotiated and agreed upon in light of this realization and, being fully aware of this situation, they nevertheless intend to release, acquit, and forever discharge the parties released from any and all such unknown claims, including damages which are unknown or unanticipated, relating to the released claims, occurring up until the effective date of this Consent Decree.

### 6. *Training*

Effective within 180 days of the entry of this Consent Decree, Netflix will provide customer service representatives with materials, including knowledge base content or similar documentation, regarding handling questions about captioning issues. Netflix agrees to consider Plaintiffs' proposals with respect to this issue.

### 7. *Attorneys' Fees and Costs*

Netflix will pay $ 755,000 for attorneys' fees and costs, including fees for administrative monitoring of the decree, within 15 days of entry of judgment.

### 8. *Miscellaneous*

#### a. *Enforcement*

This Consent Decree shall be in effect for four (4) years from entry by the Court, during which time the Court shall retain jurisdiction over this action for the purpose of ensuring compliance and enforcing the provisions of this Consent Decree.

Netflix will pay NAD $40,000 to assist in monitoring the decree within 15 days of entry of judgment.

The Court may grant declaratory and all other relief necessary to enforce this Consent Decree pursuant to 28 U.S.C. §§ 2201 and 2202.

Failure by any party to seek enforcement of this Consent Decree pursuant to its terms with respect to any instance or provision shall not be construed as a waiver to such enforcement with regard to other instances or provisions.

The Parties to this action and no one else shall have standing to seek enforcement of this Consent Decree.

Plaintiffs may seek reasonable attorney fees for any judicial action to enforce this decree.

### b. *Dispute Resolution; Changing Circumstances*

The Parties shall meet and confer in good faith to resolve any dispute relating to the interpretation or implementation of this Consent Decree before bringing the matter to the Court's attention.

The Parties understand and acknowledge that during the four years during which this Consent Decree will be in effect, changes in circumstances may affect compliance with this Consent Decree, such as, for example and without limitation, an increased or decreased availability of captioned content or developments in technology to assist or improve communications with persons who are deaf. The intent of this Agreement is to ensure equal access to Netflix for the deaf and hard of hearing, and the words of this Agreement shall be construed to fulfill that intent.

If Netflix or Plaintiffs determine that technological changes create opportunities for meeting the needs of deaf persons more efficiently or effectively than is provided for under this Decree, either Party may propose changes to this Decree by presenting written notice to the other. Absent consent of the Parties, no proposed changes will be accepted by the Court unless warranted by the evidence and principles of equity. Both Parties are required to meet and confer in good faith pursuant prior to proposing any changes to the Court.

### c. *Binding Effect*

This Consent Decree is final and binding on the Parties, including their principals, agents, executors, administrators, representatives, successors in interest, beneficiaries, and assigns.

### d. *No Warranty for Devices That Do Not Support Conforming Captions*

The Parties understand that certain devices—aside from Applicable Devices—may not support Conforming Captions. Such players' inability to support captioning standards provided herein will not be the basis for a claim for breach of this Consent Decree, however, Netflix will use good faith, diligent efforts to ensure that current software and all future software updates for Applicable Devices support caption functionality.

Netflix will maintain a list on its website indicating the Applicable Devices that support Conforming Captions.

### e. *Integration*

This Consent Decree embodies in full the terms of the agreement and understanding between the parties related to the subject matter of this action or this Consent Decree.

SO ORDERED and DECREED.    ATTORNEYS FOR PLAINTIFFS

By: *Arlene B. Mayerson*

Arlene Mayerson, *pro hac vice*
Charlotte Lanvers, *pro hac vice*
Shira Wakschlag, *pro hac vice*
DISABILITY RIGHTS EDUCATION AND DEFENSE FUND
3075 Adeline Street
Suite 210
Berkeley, CA 94703
Telephone: (510) 644-2555
amayerson@dredf.org
clanvers@dredf.org
swakschlag@dredf.org

Bill Lann Lee, *pro hac vice*
Brad Seligman, *pro hac vice*
Catha Worthman, *pro hac vice*
Joshua Davidson, *pro hac vice*
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
476 9th Street
Oakland, CA 94607-4048
Telephone: (510) 839-6824
blee@lewisfeinberg.com
bseligman@lewisfeinberg.com
cworthman@lewisfeinberg.com
jdavidson@lewisfeinberg.com

Christine M. Netski
SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
101 Merrimac Street
Boston, MA 02114
(617) 227-3030
netski@srbc.com

NETFLIX, INC., by its counsel,

By: _____

MORRISON & FOERSTER LLP
David F. McDowell, *pro hac vice*
Jacob M. Harper, *pro hac vice*
555 West Fifth Street, Suite 3500
Los Angeles, California 90013-1024
Telephone: 213-892-5200
Facsimile: 213-892-5454
dmcdowell@mofo.com;
jacobharper@mofo.com

_____  10/11/12
Hon. Michael A. Ponsor
United States District Court Judge

la-1187680